IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MURILLO, *et al.* | ) | |
| | ) | CIVIL ACTION NO 15-3641 |
| | ) | |
| *Plaintiffs*, | ) | JUDGE |
| v. | ) | HON. NANNETTE JOLIVETTE BROWN |
| | ) | |
| CORYELL COUNTY TRADESMEN, LLC | ) | MAG. JUDGE |
| *et al.* | ) | HON. SALLY SHUSHAN |
| | ) | |
| *Defendants*. | ) | |

---

## OPPOSITION OF RONALD FRANKS CONSTRUCTION CO., LLC
## TO PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION

---

MAY IT PLEASE THE COURT:

Defendant, Ronald Franks Construction Co., LLC ("RFC"), respectfully submits this memorandum in opposition to plaintiffs' motion for conditional class certification (Rec. Doc. 62).

### PRELIMINARY STATEMENT

The plaintiffs have not and cannot show that they are similarly situated with the putative collective action class. They also have not and cannot show that there existed a common scheme or policy to deprive them of wages. As such, and for the reasons set forth more fully below, the plaintiffs' motion for conditional certification should be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background and procedural history pertaining to this matter has previously been set forth in RFC's motion to dismiss (Rec. Doc. 69) -- which pleading RFC hereby reincorporates, as if copied *in extenso*.

A brief recitation of the relevant background and history is presented below for clarification purposes.

The plaintiffs initiated the captioned litigation on August 19, 2015, against Coryell County Tradesmen, LLC ("CCT"), CC Labor, LLC ("CC Labor"), Brandon Isaacks, Brent Isaaks, and Paul Isaaks (collectively, sometimes, "the CCT Defendants"). (Rec. Doc. 1).

On February 18, 2016, the plaintiffs filed a first amended collective action complaint (Rec. Doc. 19) adding RFC, Roy Anderson Corp. ("RAC"), and Travelers Casualty and Surety Company of America ("Travelers") as defendants (Rec. Doc. 19).

RAC and Travelers filed a consent motion to continue the applicable pre-trial deadlines and associated trial date on May 11, 2016 (Rec. Doc. 44).

Two days later, on May 13, 2016, the plaintiffs filed a second amended collective action complaint (Rec. Doc. 48).

That same day -- May 13, 2016 -- RAC's and Travelers' consent motion to continue was denied based, in part, on the fact that no class had been conditionally certified.  (Rec. Doc. 49).

A discovery conference was held before Magistrate Shushan on June 9, 2016, regarding the plaintiffs' desire to improperly limit the defendants' access to and scope of discovery despite having not moved this Court to conditionally certify the plaintiffs to proceed as a collective action.  A Minute Entry concerning the outcome of this discovery conference was issued that same day (Rec. Doc. 61).

After months of attempting to litigate this dispute as a collective action -- despite delaying nearly a year before filing a motion for conditional certification with the Court -- the plaintiffs moved for conditional certification on June 10, 2016 (the day after Magistrate Shushan's Minute Entry that reflected the Court's position that the plaintiffs were not entitled to

limit the defendants' scope or access to discovery and, instead, were required to individually response to a joint set of interrogatories).

As set forth more fully below, the plaintiffs have not and cannot show that they are similarly situated or the victims of a single decision, policy, or plan.  Therefore, the plaintiffs' motion for conditional certification should be denied.

## II.    LAW AND ARGUMENT

### a.    The plaintiffs' motion does not pass the *Shushan*[1] test.

Although the plaintiffs reference only the *Lisardi* test in their motion for conditional certification, the United States Fifth Circuit Court of Appeals has never expressly endorsed either the *Shushan* or the *Lisardi* test for determining the propriety of a collection action certification. *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995).

The plaintiffs have moved for collective action certification of individuals who have never been employed by RFC.  As the plaintiffs' own supporting affidavits show, the only entity or entities that may have kept any records related to the plaintiffs' employment on the Project were CCT and/or CC Labor, not RFC.  Despite the fact that the plaintiffs' own supporting affidavits make no mention whatsoever of RFC, RFC is being forced to defend this lawsuit (and incur substantial costs related thereto) based solely on conclusory and unsupported allegations by the plaintiffs.  In essence, the plaintiffs are seeking to hold multiple parties, including RFC, liable for alleged wrongdoing on the part of CCT and/or CC Labor, despite the fact that the plaintiffs' own statements fail to mention RFC.

As such, RFC respectfully submits that this matter should be analyzed under the *Shushan* test.  This is especially true since the absence of any relationship between RFC and the plaintiffs indicates that the plaintiffs may be engaged on an unwarranted fishing expedition or efforts to

---

[1]        *Shushan v. Univ. of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).

force corporate parties such as RFC to settle claims that are factually unsupported.  *See H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999).

Under the *Shushan* test, courts consider factors such as numerosity, commonality, typicality, and adequacy of representation to determination whether a class should be certified. *Id*.  The facts presented by plaintiffs in the underlying dispute fall directly into the category of claims that are appropriate to be analyzed under the *Shushan* test.  For example, the plaintiffs propose a collective action class of individuals who never directly worked for RFC based upon affidavits that fail to even mention RFC.  Based on this alone, the plaintiffs' should be required to offer actual evidentiary proof that RFC was aware of or engaged in any wrongdoing whatsoever.  *See Shushan*, 132 F.R.D. at 268 (collective action plaintiffs should not be permitted to file a complaint that claims to represent a class and "by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of that class").

To date, the various defendants in this matter have produced nearly 21,000 pages of documents.  Despite this voluminous production, the plaintiffs are still unable to support their claims against RFC under the *Shushan* test.  As has been pointed out consistently throughout this litigation, instead of being forced to specifically plead and identify the actual alleged transgressors, the plaintiffs lump multiple corporate and individual defendants together as "Defendants" without specifying or acknowledging that many of these defendants -- including RFC -- had not contact or relationship with any of the plaintiffs.  This is clearly an attempt by the plaintiffs to downplay their lack of evidentiary support for their claims and instead to increase the number of pockets from which they can attempt to force settlement.  As such, the plaintiffs' motion for conditional certification should be denied.

**b.     The plaintiffs' motion for conditional certification does not pass the *Lisardi* test.**

The plaintiffs' motion for conditional certification should also be denied because the plaintiffs fail to satisfy the requirements set forth under the *Lisardi* test.  As set forth in *Lisardi v. Xerox Corp.*, conditional certification of a collective action is a two-step process.  118 F.R.D. 351 (D. N.J. 1987).  The plaintiffs bear the burden of proven they are "similarly situated" as well as a "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice."  *See Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877-78 (E.D. La. 9/23/08).

**i.     The plaintiffs are not similarly situated.**

"Two requirements must be met to maintain a collective action under the FLSA." *Virgen v. Conrad Indust., Inc.*, 2015 WL 6692120, *4 (W.D. La. Nov. 3, 2015) (*citing Boudreaux v. Schlumberger Tech. Corp.*, 2015 WL 796602, * 2 (W.D. La. Feb. 25, 2015)).

First, "the named representatives and the members of the prospective FLSA class must be similarly situated." *Id.*

"**Plaintiffs bear the burden of establishing that they are 'similarly situated' to the proposed class**." *Id.* (*citing Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, * 5 (E.D. La. 2004)) (emphasis added).

There are two methods courts can use to infer collectivity and, therefore, whether to allow allegedly similarly situated plaintiffs to proceed as a collective action under the FLSA. *See Xavier,* 85 F.Supp.2d at 876.

Under the *Lisardi* approach, the court must first determine whether the plaintiffs are similarly situated.  *Id.* at 876.  This decision is typically based on the plaintiffs' pleadings and affidavits.  *Id.* at 877.

The first step in the *Lisardi* approach is subject to a "fairly lenient standard."  *Id*. However, the **plaintiffs are required to have "substantial allegations that the potential members 'were together the victims of a single decision, policy, or plan ….'"** *Id*. (*quoting Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 at n.4 (5th Cir. 1995)) (emphasis added).

"While the plaintiffs' burden at this stage is not onerous, neither is it invisible." *Songer v. Dillon Res., Inc.*, 569 F.Supp.2d 703, 707 (N.D. Tex. 2008) (citations omitted).

"A factual basis for the allegations is needed to satisfy this first step [in the *Lisardi* analysis]." *Xavier,* 585 F.Supp.2d at 877.  (*citing Hall v. Burk*, 2002 WL 413901, * 3 (N.D. Tex. 2002)).

"Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." *Id*. (*quoting Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)).

> Although the "similarly situated" standard is lenient at the notice stage, general allegations that the employer violated the FLSA are insufficient.  Even at the notice stage, "a showing that employees are 'similarly situated' entails more than just a matching of job responsibilities."

*Id*.  (*quoting Hunter v. Sprint Corp.*, 346 F.Supp.2d 113, 119 (D.D.C. 2004)).

"[A]t least some evidence beyond unsupported factual assertions of a single decision, policy, or plan should be presented."  *Id*. (*citing Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007)).

"[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiffs at the defendant's expense."  *Id*. at 898 (*quoting Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 668-69 (N.D. Tex. 2007)).[2]

---

[2]     *See also H & R Block,* 186 F.R.D. at  400 (*quoting D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889, 894 (D. Md. 1995) (holding that "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense."); *Villegas v. Grace Disposal Sys., LLC,* 2014 WL 793977, at *3 (S.D. Tex. 2014) (holding that too much leniency at the notice stage can lead to a frivolous fishing expedition conducted by plaintiff at employer's expense and can also result in conditional

"Vague assertions, unsupported by evidence, are insufficient to permit the court to conclude that other similarly situated plaintiffs exist who would desire to opt-in to the suit." *Id.* at 8 (*citing H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)).

The plaintiffs' motion for conditional certification seeks to certify a class composed of the following:

> All individual who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project in New Orleans, Louisiana during the previous three years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 or minimum wages pursuant to the FLSA, 29 U.S.C. §206 and who did not receive full overtime or minimum wage compensation.

See Rec. Doc. 62-2 at page 6.

As an initial matter, it is important to note that although the plaintiffs make a variety of allegations against RFC in the actual motion for conditional certification, not a single one of the affidavits submitted by the plaintiffs references RFC.[3]   Thus, the plaintiffs' unsupported allegations that RFC somehow "bankrolled" or provided managerial support to CCT on the project, in additional to being completely inaccurate, are also woefully unsupported.

As has been the practice of the plaintiffs throughout this matter, the plaintiffs' second amended collective action complaint generically lumps all of the "defendants" -- RAC, Travelers, RFC, CCT, CC Labor, Brent Isaacks, Paul Isaacks, and Brandon Isaacks -- together as though each of these separate and distinct individuals and entities are not entitled to be recognize as independent entities or persons.[4]

---

certification that must later be revoked at the eve of trial); *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941 (W.D. Ark. 2003); *Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, at *4 (D. Minn. 2009) ("neither the remedial purposes of the FLSA nor the interests of judicial economy would be advanced if we were to overlook facts which generally suggest that a collective action is not proper.")

[3]    See Rec. Doc. 62.

[4]    In addition to failing to recognize each of the separate and distinct corporate entities lumped together as defendants, the plaintiffs also improperly seek to hold The Isaacks individually liable without first

7

As noted in RFC's pending motion to dismiss (Rec. Doc. 69), the plaintiffs' treatment of RFC and the other defendants in this matter is eerily similar to another collective action complaint filed by the same plaintiff's attorney in the Western District of Louisiana, s*ee Virgen, supra*, wherein the Court denied the plaintiffs' motion for conditional certification.

The Court should disregard the declarations submitted by the plaintiffs because those declarations are self-serving, conclusory, and rely on no evidence except hearsay.

In *H & R Block, supra*, the Court held that the plaintiffs' affidavits were conclusory and insufficient to show a widespread plan or policy. *See H & R Block*, 186 F.R.D. at 400.  The plaintiffs in H & R Block submitted conclusory affidavits which stated, "that they believe other workers were discriminated against in similar ways." *Id*.  The Court in *H & R Block* held that such declarations were insufficient to for collective action certification purposes as the plaintiffs had made no "factual showing, nor do they go beyond the level of making unsupported factual assertions." *Id*.  As such, the Court in *H & R Block* denied the plaintiffs' motion for conditional certification based on its determination that the plaintiffs' affidavits were vague, unsupported, and insufficient. *Id*.

Here, the plaintiffs also submit vague and unsupported affidavits in support of their motion for conditional certification.  For instance, although a few of the affidavits name individuals who the affiants allegedly worked alongside -- Flor, Anna, Pamela -- none of these women are included in the laundry list of potential plaintiffs, none of the women have last names or other identifying characteristics, and none of the affiants are able to state what work these women allegedly performed despite the fact that nearly every one of the affidavits includes the following cookie cutter sentence:  "We all worked the same shifts and we all took breaks at the

---

establishing that the Isaacks were the alter ego of either CCT or CC Labor or that CCT and CC Labor were somehow operating as a single business enterprise.

same time."[5]  Therefore, the plaintiffs' vague assertions that they supposedly worked with these women is unsupported and unreliable.

The plaintiffs' supporting affidavits also state unequivocally that "I can say for certain that we worked at least five hours of overtime per week."[6]  Yet, there is no corroborating evidence presented beyond the plaintiffs' own self-serving (and unusually uniform) declarations.

In point of fact, the supporting affidavits are striking similar to those filed by the same plaintiffs' counsel in *Virgen*, where the Court denied the motion for conditional certification. Once again the plaintiffs' affidavits are speculative as to the hours allegedly worked by the putative collective action plaintiffs.  None of the affiants even attempts to explain how they possess information as to how they and others may have allegedly been paid, although they all admit that the only entity with which any of them ever directly communicated or contacted was CCT.  The affiants even go so far as speculate about practices by CCT on other construction projects in Florida, South Carolina, Texas, and Mississippi where there is no support, evidence, or corroboration and certainly no mention of RFC as having any knowledge or involvement with other possible projects whatsoever.

Quite the contrary, the affiants rely solely on their conversations (inadmissible and unsupported hearsay) with other claimed CCT "employees" to bolster their shaky claims. Essentially, the affiants would have the Court believe that, based on their own self-serving allegations and conversations, that what they know about themselves was applicable uniformly to the putative class.

---

[5]       See Rec. Doc. 62-6 at ¶5; Rec. Doc. 62-7 at ¶ 5, Rec. Doc. 62-8 at ¶ 5, Rec. Doc. 62-9 at ¶ 6, Rec. Doc. 61-11 at ¶ 5, Rec. Doc. 62-12 at ¶ 6, Rec. Doc. 62-13 at ¶ 6, Rec. Doc. 62-14 at ¶ 5.

[6]       See Rec. Doc. 62-6 at ¶ 6, Rec. Doc. 62-7 at ¶ 6, Rec. Doc. 62-8 at ¶ 6, Rec. Doc. 62-9 at ¶ 7, Rec. Doc. 62-11 at ¶ 7, Rec. Doc. 62-12 at ¶ 7, Rec. Doc. 62-13 at ¶7, Rec. Doc. 62-14 at ¶ 6.

None of the affiants have any information or allegation in their affidavits that indicates that RFC had any knowledge or involvement in the plaintiffs' wage calculations.

Based on the foregoing, the plaintiffs do not meet even the lenient standard available at this juncture for showing that they are similarly situated to the putative collective action class, and the Court should deny the plaintiffs' motion for conditional certification.

### ii.     The plaintiffs were not the victims of a single decision, policy, or plan.

Even if the plaintiffs were able to establish that the putative class members were similarly situated (which they are not), the plaintiffs' motion for conditional certification should still be denied because the plaintiffs have not and cannot proffer evidence sufficient to show that the plaintiffs were the victim of a common unlawful plan or policy.

"A plaintiff who seeks conditional certification of a collective action against an employer must do more than show that some employees were paid less than the FLSA required." *Thompson v. Speedway SuperAmerica, LLC*, 2009 WL 130069, at * 1 (D. Minn. 2009).

"It is not sufficient for plaintiffs simply to allege that a single decision, policy, or plan has injured all members of the putative class; instead, plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations."  *Id*. (quotations and citations omitted).

There are no substantial allegations that the plaintiffs were the "victims" of a single policy, decision, or plan.  *See Xavier*, 585 F.Supp.2d at 876.  In fact, there is no allegation whatsoever that there was a uniform or systematic practice by RFC to deprive the plaintiffs of wages or overtime pay.  Once again, there is no mention of RFC whatsoever in any of the supporting affidavits.

The plaintiffs attach documentation that purports to show a difference between clock-in/our reports and time card reports.  The plaintiffs claim in their motion (not supporting affidavits) that they were "paid according to the times reflected in the time card reports, not the time reflected in the clock-in and clock-out reports."  See Rec. Doc. 62-2 at pg. 14.  Yet, none of the affiants is able to testify as to how many hours they allegedly worked or how much they were allegedly paid (or not paid) or whether the amount they were paid was based on clock-in/out reports or time card reports.

In fact, the one affiant who is specifically mentioned in relation to the claimed differences between the clock-in/out reports and the time card reports -- Beatriz Lopez -- makes no mention of how her time was allegedly kept or maintained by CCT or any of the other named defendants, including RFC.

The plaintiffs, therefore, base their claims on a selective (and narrow) "sampling" of claimed differences in time reports without any proof or testimony as to whether the difference is actually relevant to how the putative class was actually paid.

Moreover, as forth in the plaintiffs' second amended collective action complaint, the plaintiffs allegedly worked different jobs, at different times, for different rates of pay, and for no less than five (5) separate and distinct entities.

These are not claims of plaintiffs that are similarly situated.

Therefore, the submitted evidence does not, as the plaintiffs suggest, show that RFC had some plan or policy wherein it would avoid paying the plaintiffs.  In fact, there is no evidence presented that RFC had anything whatsoever to do with the plaintiffs payments (or lack thereof).

The plaintiffs propose a collection of what could potentially amount to hundreds of workers who (most likely) worked on multiple job sites even while allegedly working at 225 Baronne Street, and who had no direct relationship with RFC regarding their compensation. That alone shows just how variable the plaintiffs' claims are.[7]

As such, the plaintiffs have failed to establish that a common plan or policy existed such that there is no basis for this Court to conclude that the action should be certified as a class under Section 216(b) of the FLSA.

### c.   The suggested class directly conflicts with the scope of the class set forth in the second amended collective action complaint.

In the plaintiffs' second amended collective provides that the action was brought on behalf of the plaintiffs and a putative FLSA class consisting of:

> [A]ll current and former employees of the Defendants who are or have been employed by Defendants during the three years immediately precedeing the filing of this suit as hourly or non-exempt employees working at the 225 Baronne Project and who, during that period, (1) failed to receive overtime pay for all hours worked in excess of forty in any particular workweek, OR (2) failed to receive any pay at all for any time or hours worked, OR (3) both.[8]

As discussed above, the term "Defendants" is used by the plaintiffs in the second amended collective action complaint as an omnibus term for RAC, Travelers, RFC, CCT, CC Labor, and the Isaacks.

However, the plaintiffs' motion for conditional certification diverges from the putative class set forth in the second amended collective action complaint and seek certification of a class consisting of:

> All individuals who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project in

---

[7]   This does not even take into account the various state law claims related to the plaintiffs' liens and how each of those liens would need to be proved individually, as discussed more thoroughly in RFC's motion to dismiss.  Rec. Doc. 69.

[8]   Rec. Doc. 48 at pg. 9, ¶ 45.

New Orleans, Louisiana during the previous three years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 or minimum wages pursuant to the FLSA, 29 U.S.C. §206 and who did not receive full overtime or minimum wage compensation.

As it apparent from a simple comparison of these two proposed classes, the putative class set forth in the plaintiffs' second amended collective action complaint diverges significantly from that set forth in the plaintiffs' motion for conditional certification.

RFC is entitled to fair notice regarding the plaintiffs' claims.  The plaintiffs have already amended their collective action complaint twice and are essentially amending again through their motion for conditional certification.

There is no evidence in the plaintiffs' affidavits that RFC hired, fired, supervised, or paid the plaintiffs.  In fact, there is no mention of RFC whatsoever in any of the plaintiffs' supporting affidavits.

As such, the plaintiffs' motion for conditional certification should be denied.

> **d.      RFC objects to the proposed six (6) month opt-in period.**

The plaintiffs propose an opt-in period of six (6) months.  This proposed opt-in period is unreasonable and excessive.  Cases across various federal court jurisdictions afford potential opt-in plaintiffs a period of thirty (30) to ninety (90) days from the date of notice to file consent to joint forms.  *See Johnson v. Am. Airlines, Inc.*, 531 F.Supp. 957 (N.D. Tex. 1982); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420 (D.D.C. 1984); *King v. ITT Cont'l Baking Co.*, 1986 WL 2628 (N.D. Ill. 1996); *Watkins v. Milliken & Co.*, 613 F.Supp. 408 (W.D.N.C. 1984).

The plaintiffs have not demonstrated any basis or legal authority for a six-month opt-in period.  Thus, the proposed six-month period for potential opt-in plaintiffs to file their consent to join forms is unreasonable, especially considering the plaintiffs' own delays in seeking

certification.  An opt-in period of this length will be needlessly expensive for all parties, and unnecessarily time consuming for the Court.

As such, to the extent the Court grants the plaintiffs' motion for conditional class certification (which RFC strongly opposes), RFC requests that the Court exercise its discretionary authority and order an opt-in cut-off date between thirty (30) and ninety (90) days. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 173 (1989) (stating that establishing a reasonable cut-off date serves the legitimate goal of expediting disposition of the action).

## III.    CONCLUSION

Based on the foregoing, the plaintiffs have offered only conclusory assumptions that do not in any way implicate RFC.  The plaintiffs have offered no evidence of a common policy, decision, or plan.  As such, the plaintiffs' motion for conditional certification should be denied.

Respectfully submitted,


/s/      *Tamara J. Lindsay*
Daniel Lund III (La. Bar No. 19014)
Clyde H. Jacob III (La. Bar No. 7205)
Tamara J. Lindsay (La. Bar No. 35207)
Imtiaz A. Siddiqui (La. Bar No. 35321)
Amanda W. Goldman (La. Bar No. 30800)
Gillian B. Gibbs (La. Bar No. 35790)
Aaron J. Hurd (La. Bar No. 34601)
COATS | ROSE, PC
365 Canal Street, Suite 800
New Orleans, Louisiana 70130
Telephone:  (504) 299-3070
Facsimile:  (504) 299-3071
Email: tlindsay@coatsrose.com

Attorneys for Ronald Franks Construction Co., LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify the foregoing pleading has been electronically filed with the Court to be served on all counsel of record via the Court's CM/ECF system, this 12th day of July, 2016.


/s/      *Tamara J. Lindsay*