## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NANCY MURILLO, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3641** |
| **CORYELL COUNTY TRADESMEN, LLC, et al.** | **SECTION: "G"(1)** |

## <u>ORDER</u>

In this litigation, Plaintiffs, individuals hired to perform general labor and construction tasks in the construction and renovation project located at 225 Baronne Street in New Orleans, Louisiana, seek unpaid minimum wages and unpaid overtime wages, as well as liquidated damages, for violations of the Federal Labor Standards Act ("FLSA").[1] Plaintiffs allege that their employers failed to pay them for all hours worked and failed to pay them 1.5x their hourly rate for all hours worked in excess of forty in a workweek.[2] Plaintiffs also bring a cause of action under the Louisiana Private Works Act.[3] Pending before the Court is Plaintiffs' "Motion for Conditional Class Certification."[4] Having considered the motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b) and notice shall be sent to: "All individuals who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the

---

[1] Rec. Doc. 48.

[2] *Id.*

[3] *Id.* at 10.

[4] Rec. Doc. 62.

1

225 Baronne Street construction project in New Orleans, Louisiana during the previous two years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 or minimum pages pursuant to the FLSA, 29 U.S.C. § 206 and who did not receive full overtime or minimum wage compensation."

## I. Background

### A.    *Factual Background*

Plaintiffs allege that this lawsuit arises from the renovation of a luxury hotel and apartment building in downtown New Orleans named "The Strand" at 225 Baronne Street.[5] They allege that the mostly migrant workers who performed the renovation work were paid no overtime for grueling 70-hour workweeks and their recorded hours were often "adjusted" to reflect shorter work periods so that Defendants Coryell County Tradesmen ("CCT"), CC Labor, LLC, Paul Isaacks, Brandon Isaacks, Brent Isaacks, Roy Anderson Corp. ("RAC"), and Ronald Franks Construction Co., LLC ("Ronald Franks Construction") could pay them less.[6] Furthermore, Plaintiffs allege that they were forced to wait in long lines just to punch out of work each evening and were not compensated for that time.[7]

Defendants CCT and CC Labor, LLC are alleged to be two family-run construction companies owned by Defendants Paul Isaacks, Brandon Isaacks, and Brent Isaacks.[8] Plaintiffs

---

[5] Rec. Doc. 48 at 3.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.* at 5.

allege that CCT was one of the subcontractors that employed Plaintiffs on the 225 Baronne Street project.[9] Defendant Ronald Franks Construction is alleged to be another one of the subcontractors that employed Plaintiffs during the construction.[10] Defendant RAC is alleged to be one of the general contractors that employed Plaintiffs, and Defendant Travelers Casualty and Surety Company of America ("Travelers") is alleged to have contracted to pay the obligations of Defendant RAC with respect to the work done on the construction project at issue in this case.[11]

**B.      *Procedural Background***

Plaintiffs Nancy Murillo, Evelyn Mejia, Ambrocio Benito Castro, and Mechlor Acevedo filed a complaint on August 19, 2015 against Defendants Coryell County Tradesmen, LLC, CC Labor, LLC, Brandon Isaacks, Brent Isaacks, and Paul Isaacks.[12] With leave of Court, on February 18, 2016, Plaintiffs filed an amended complaint, adding more than 150 plaintiffs and adding as defendants Ronald Franks Construction, RAC, and Travelers.[13] Plaintiffs filed a second amended complaint, with leave of Court, on May 13, 2016.[14]

Plaintiffs filed the instant motion on June 10, 2016.[15] RAC and Travelers filed an

---

[9] *Id.*

[10] *Id.* at 6.

[11] *Id.* at 6–7.

[12] Rec. Doc. 1.

[13] Rec. Doc. 19.

[14] Rec. Doc. 48.

[15] Rec. Doc. 62.

opposition on July 12, 2016.[16] Ronald Franks Construction also filed an opposition on July 12, 2016.[17] No opposition was filed by Defendants Brandon Isaacks, Brent Isaacks, or Paul Isaacks, who are appearing pro se in this action, or by Defendants CCT or CC Labor, LLC, entities that are unrepresented. With leave of Court, Plaintiffs filed a reply on July 20, 2016.[18] On July 21, 2016, the Court heard oral argument on the motion, and only Plaintiffs, RAC, Travelers, and Ronald Franks Construction participated.[19]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of Conditional Class Certification*

Plaintiffs request that the Court certify this case as a "collective action" pursuant to 29 U.S.C. § 216(b) and propose the following class of individuals:

> All individuals who provided labor to Coryell County Tradesman or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project in New Orleans, Louisiana during the previous three years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 or minimum wages pursuant to the FLSA, 29 U.S.C. § 206 and who did not receive full overtime or minimum wage compensation.[20]

In addition to conditional class certification, Plaintiffs request that the Court direct Defendants to provide the names, phone numbers, and last known addresses of potential opt-in plaintiffs so that

---

[16] Rec. Doc. 90.

[17] Rec. Doc. 93.

[18] Rec. Doc. 110.

[19] Rec. Doc. 111.

[20] Rec. Doc. 62-2 at 6.

those individuals can receive notice of the lawsuit.[21]

In support, Plaintiffs have attached several declarations that they assert are a representative sampling of the 160 named Plaintiffs who, they contend, all worked for the Defendants at the jobsite at 225 Baronne Street in New Orleans.[22] Plaintiffs assert that they and other workers were supervised and controlled by CCT employees who made and set Plaintiffs' work schedules.[23] Plaintiffs contend that Defendants failed to pay overtime and additionally "routinely and systematically 'shaved' hours from Plaintiffs' weekly time card reports, resulting in Plaintiffs not being compensated for those hours."[24] Plaintiffs assert that despite clocking-in and clocking-out each day, the time worked, as reflected in the weekly time card reports, did not accurately reflect the clock-in and clock-out records and were actually rounded down without any explanation.[25] Plaintiffs submit comparisons of Plaintiffs' clock-in and clock-out reports with the weekly time cards.[26] Plaintiffs argue that this "time-shaving scheme" resulted in two types of FLSA violations: (1) Plaintiffs were not paid minimum wages for the hours that were shaved from their weekly paycheck and (2) for those Plaintiffs who had completed at least 40 hours of work during the weeks when their hours were shaved, they are owed overtime for those hours.[27]

---

[21] *Id.*

[22] *Id.* at 13; Rec. Docs. 62-6, 62-7, 62-8, 62-9, 62-10, 62-11, 62-12, 62-13, 62-14.

[23] Rec. Doc. 62-2 at 13–14.

[24] *Id.* at 14.

[25] *Id.*

[26] *Id.* at 15; Rec. Docs. 62-15, 62-16, 62-17, 62-18, 62-19, 62-20.

[27] Rec. Doc. 62-2 at 17.

Plaintiffs contend that at this stage of FLSA litigation, they have a lenient burden to show that a class of similarly situated individuals exists.[28] Plaintiffs assert that district courts in the Fifth Circuit have generally employed the two-stage approach to certifying FLSA representative actions described in the Fifth Circuit case *Mooney v. Aramco Services Company*.[29] Plaintiffs contend that under this approach, the first determination is made at the "notice stage," where the court determines whether notice of the action should be given to potential class members and if the court conditionally certifies the class, putative class members are given notice and the opportunity to "opt-in."[30] Plaintiffs aver that defendants then usually file a motion for decertification after discovery is largely complete and the court has more information upon which to base its decision of whether the plaintiffs are similarly situated.[31] Plaintiffs assert that in order to obtain preliminary certification of the class action, they need only make substantial allegations that they and the putative class members are similarly situated and courts have repeatedly held that this requirement must be interpreted broadly to permit workers to collectively pursue their FLSA claims.[32] In order to satisfy this "similarly situated" requirement, Plaintiffs contend that they need not show that their cases are identical to that of the proposed class, but merely similar, where "slight differences in job duties or functions do not run afoul of the similarly situated requirement."[33]

---

[28] *Id.*

[29] *Id.* at 17–18 (citing 54 F.3d 1207, 1213–14 (5th Cir. 1995)).

[30] *Id.* at 18.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 19 (quoting *Boudreaux v. Schlumberger Tech Co.*, No. 14-2257,  2015 WL 796602 (W.D. La. Feb.

Plaintiffs assert that the sworn declarations attached to their motion demonstrate how Plaintiffs contend they were not paid overtime and that the unlawful practices alleged are confirmed by Defendants' own admissions and pay records.[34] Plaintiffs assert that they and the putative class worked as manual laborers for Defendants, they were supervised by CCT's supervisors, they worked the same shifts and took breaks at the same time, they were paid roughly the same amounts, and they often worked more than forty hours per week.[35] Furthermore, Plaintiffs contend that they did not receive overtime and Defendants acknowledge that, as a matter of policy, they classified Plaintiffs as independent contractors who were not entitled to overtime pay.[36]

Plaintiffs also contend that prompt certification and notice will advance the remedial goals of the FLSA and promote efficient resolution of claims.[37] Plaintiffs have drafted a proposed class notice and request an opt-in period of 60 days because "word-of-mouth" is often how many opt-ins are notified of the lawsuits, as many of the putative class members do not speak English.[38] They also request that the Court order Defendants to provide the names and last known addresses of the potential class members.[39]

---

25, 2015)).

[34] *Id.* at 20.

[35] *Id.*

[36] *Id.* at 21.

[37] *Id.* at 22.

[38] *Id.* at 23–24.

[39] *Id.* at 23.

**B.**      ***Defendants RAC and Travelers' Arguments in Opposition to Conditional Class Certification***

RAC and Travelers assert that conditional class certification should be denied regarding the claims against them.[40] First, they assert that collective action is unavailable against Travelers because the only cause of action against it is under the Louisiana Private Works Act.[41] Second, they contend that conditional class certification is not proper as to RAC because Plaintiffs have "utterly failed to present any evidence showing [it] was an employer or joint employer" or "that there was a common policy or scheme of nonpayment in which [it] was involved."[42] Furthermore, they assert that Plaintiffs are seeking to recover damages from RAC for other projects in which RAC had no involvement, necessitating individualized assessments of when each putative class member worked.[43] In the alternative, RAC and Travelers contend that if the Court conditionally certifies a collective action, the proposed notice submitted by Plaintiffs should be limited to two years and redrafted to remove bias.[44]

First, RAC and Travelers argue that collective action is only available under 29 U.S.C. § 216(b) when the party is an "employer" of the putative class members and here, Travelers' only involvement in this case is that it issued the lien bonds that cleared the lien from the mortgage

---

[40] Rec. Doc. 90 at 7.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

record of 225 Baronne Street.[45] Therefore, they assert that, to the extent that Plaintiffs seek to include any claims against Travelers as part of their motion, the motion should be denied.[46] Second, RAC and Travelers contend that neither of them maintained any employment records or had any direct dealings with Plaintiffs and are defending this lawsuit based upon conclusory allegations that they violated the FLSA.[47] Therefore, they contend that the evidentiary requirement of *Shushan v. University of Colorado* should apply, pursuant to which conditional class certification is determined by courts looking at factors similar to those considered in a Federal Rule of Civil Procedure 23(c) case.[48] However, they contend that even if the Court declines to apply the *Shushan* standard, Plaintiffs cannot satisfy their burden under *Lusardi v. Xerox Corp*. either.[49]

RAC and Travelers contend that Plaintiffs present insufficient evidence to show that they are similarly situated, they present no overarching policy or plan of nonpayment that implicates either RAC or Travelers, and general fairness requires that to the extent that the motion applies to RAC, it should be denied.[50] RAC and Travelers contend that they are not the employers or joint employers of Plaintiffs.[51] They further assert that the test of whether the FLSA applies is whether

---

[45] *Id.* at 12.

[46] *Id.* at 13.

[47] *Id.* at 14.

[48] *Id.* at 14–15 (citing 132 F.R.D. 263 (D. Colo. 1990)).

[49] *Id.* at 16 (citing 118 F.R.D. 351 (D.N.J. 1987)).

[50] *Id.* at 17.

[51] *Id.* at 18.

"as a matter of economic fact there is an employer-employee relationship involved."[52] They contend that "[w]hen considering a motion for conditional class certification of a collective action based on allegations of independent contractor misclassification, a court 'must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors.'"[53] RAC and Travelers assert that Plaintiffs in their second amended complaint "purposefully fail to distinguish between [RAC] and Travelers, [Ronald Franks Construction], [Coryell County Tradesmen], CC Labor, or the Isaacks, instead simply referring to all of them collectively."[54] However, they assert that it is clear from the evidence that RAC was not an employer and the "unsupported allegations do not satisfy the minimal showing that there is a reasonable basis for the Plaintiffs' allegations."[55]

RAC and Travelers also contend that Plaintiffs have not presented any evidence that RAC was a joint employer.[56] They assert that the leading case on such an employment relationship under the FLSA is the Second Circuit case *Zheng v. Liberty Apparel Co.*, in which the court emphasized that a joint relationship must be based on the "circumstances of the whole activity."[57] RAC and Travelers assert that the court in *Zheng* articulated seven factors to be used in determining whether

---

[52] *Id.* (quoting *Patel v. Wargo*, 803 F.2d 632, 636 (11th Cir. 1986)).

[53] *Id.* at 19 (quoting *Andel v. Patterson-UTI Drilling*, 280 F.R.D. 287, 289–90 (E.D. Tex. 2012)).

[54] *Id.* at 20.

[55] *Id.*

[56] *Id.*

[57] *Id.* (citing 355 F.3d 61, 71–72 (2d Cir. 2003)).

an entity has "functional control," including: (1) the extent to which the workers perform a discrete line-job forming an integral part of the putative joint employer's integrated process of production or overall business objective; (2) whether the putative joint employer's premises and equipment were used for the work; (3) the extent of the putative employee's work for the putative joint employer; (4) the permanence or duration of the working relationship between the workers and the putative joint employer; (5) the degree of control exercised by the putative joint employer; (6) whether the responsibility under the contract with the putative joint employer passed "without material changes" from one group of potential joint employees to another; and (7) whether the workers had a "business organization" that could or did shift as a unit from one putative joint employer to another.[58]

RAC and Travelers assert that the court in *Zheng* cautioned that in the context of subcontractor-general contractor relationships, courts should take proper care not to apply these factors in a way that would classify nearly all subcontracting relationships as joint employment relationships.[59] They assert that Plaintiffs have made no showing with respect to these factors and that the declarations Plaintiffs submit all show that CCT personnel supervised Plaintiffs.[60] Furthermore, they contend that RAC did not have the power to hire or fire any Plaintiffs, contrary to what Plaintiffs allege in their second amended complaint.[61] In addition, they contend that RAC

---

[58] *Id.* at 21.

[59] *Id.*

[60] *Id.* at 22.

[61] *Id.*

does not have an ownership interest in its subcontractors, does not pay its subcontractors' employees, does not establish wage rates, and does not exercise general authority to hire or fire its subcontractors' employees.[62]

In addition, RAC and Travelers assert that Plaintiffs seek to hold RAC responsible for alleged wage violations for work in which it was not even involved.[63] They contend that RAC signed a contract with the owner of 225 Baronne Street to serve as the general contractor on November 8, 2013; however, they assert that at least 4 of the 9 declarations submitted show that Plaintiffs seek payment of wages either before November 8, 2013, or for construction projects at locations other than 225 Baronne Street.[64] Therefore, RAC and Travelers assert that there will be a need to individually review every putative class member to segregate which defendants, if any, are responsible for specific project-centric allegations of nonpayment and such individualized analysis will overshadow any collective action.[65]

RAC and Travelers also argue that RAC was not part of any widespread policy or misclassification of any laborer's employment status because they did not employ any individual laborers.[66] Furthermore, they assert that Plaintiffs' argument that there was a scheme to shave hours worked fails to recognize that RAC did not keep time records for any Plaintiff or calculate

---

[62] *Id.* at 22–23.

[63] *Id.* at 23.

[64] *Id.*

[65] *Id.* at 24.

[66] *Id.* at 25.

their hours; instead, they simply issued payment to Ronald Franks Construction, which in turn issued payment to CCT and CC Labor.[67] In addition, they contend that they paid overtime.[68] RAC and Travelers also contend that general fairness weighs against certification.[69]

In the alternative, RAC and Travelers assert that the proposed notice should be limited as Plaintiffs have failed to establish the willfulness necessary for a three-year time period for the certified class.[70] They contend that Plaintiffs have already stated in an email between counsel for the parties that Defendants' conduct was not willful for the purposes of 29 U.S.C. 255(a), and therefore there is no need to have a three-year time period, and assert that a three-year period would jeopardize the efficiency of any conditionally certified class.[71] RAC and Travelers also argue that the class notice is misleading and biased and fails to warn potential claimants that they will be jointly and severally liable for taxable costs under 28 U.S.C. § 1920 if Defendants prevail.[72] In addition, they contend that the proposed notice does not contain contact information for defense counsel and fails to inform potential class members that they may contact an attorney of their choosing to discuss the case.[73]

---

[67] *Id.* at 26.

[68] *Id.*

[69] *Id.*

[70] *Id.* at 27.

[71] *Id.* at 28 (citing an email dated June 28, 2016 between counsel for Plaintiffs and Ronald Franks Construction and Travelers).

[72] *Id.* at 29.

[73] *Id.*

Finally, RAC and Travelers assert that there is no need to force Defendants to produce the current addresses of any putative class members because: (1) RAC has no employment records other than the weekly global timesheets; (2) Ronald Franks Construction has already produced all of those records to Plaintiffs; (3) CCT has also produced the employment records that it claims is has in its possession; and (4) Plaintiffs have shown that they have the greater ability to contact the putative class members as demonstrated by the opt-in forms that they have already submitted.[74]

**C.**   ***Ronald Franks Construction's Arguments in Opposition to Conditional Class Certification***

Ronald Franks Construction contends that Plaintiffs' motion should be analyzed pursuant to the *Shushan* test for conditional class certification because there is no evidence of a relationship between it and Plaintiffs and this indicates that Plaintiffs "may be engaged on an unwarranted fishing expedition or efforts to force corporate parties such as [Ronald Franks Construction] to settle claims that are factually unsupported."[75] Ronald Franks Construction contends that because Plaintiffs propose a collective action of individuals who never directly worked for Ronald Franks Construction, they should be required to offer evidentiary proof that it was aware of or engaged in any wrongdoing.[76] Even if the Court applies the *Lusardi* test, Ronald Franks Construction contends, Plaintiffs fail to satisfy the standard for conditional class certification because Plaintiffs are not similarly situated and were not the victims of a single decision, policy, or plan.[77]

---

[74] *Id.*

[75] Rec. Doc. 93 at 3.

[76] *Id.* at 4.

[77] *Id.* at 5, 10.

Ronald Franks Construction notes, as an initial matter, that although Plaintiffs make various allegations against it, none of the affidavits Plaintiffs submitted references Ronald Franks Construction.[78] Therefore, it contends that Plaintiffs' "unsupported allegations that [Ronald Franks Construction] somehow 'bankrolled' or provided managerial support to [CCT] on the project, in additional [sic] to being completely inaccurate, are also woefully unsupported."[79] Furthermore, Ronald Franks Construction asserts that the Court should disregard Plaintiffs' declarations because they are self-serving, conclusory, and rely on only hearsay evidence.[80] In support, they cite *H&R Block, Ltd. v. Houdsen*, an Eastern District of Texas case, where the court denied the motion for conditional class certification based upon its determination that the plaintiff's affidavits were vague, unsupported, and insufficient.[81] Ronald Franks Construction argues that here, Plaintiffs' supporting affidavits state generally that Plaintiffs worked with other women, but the affidavits list only first names without any other identifying characteristics, and although the affidavits state that Plaintiffs worked at least five hours of overtime per week, they do not provide any corroborating evidence.[82]

Ronald Franks Construction asserts that even if Plaintiffs were able to establish that the putative class members were similarly situated, Plaintiffs' motion for conditional class

---

[78] *Id.* at 7.

[79] *Id.*

[80] *Id.* at 8.

[81] *Id.* (citing 186 F.R.D. 399, 400 (E.D. Tex. 1999)).

[82] *Id.* at 9.

certification should be denied because Plaintiffs have not and cannot present evidence to show that they were the victims of a common unlawful plan or scheme.[83] It contends that the affiants are not able to testify regarding the hours they allegedly worked, how much they were allegedly paid or not paid, or whether the amount they were paid was based on clock-in/out reports or time card reports.[84] Moreover, Ronald Franks Construction contends that Plaintiffs worked different jobs, at different times, for different rates of pay, for no less than five separate and distinct entities and therefore are not similarly situated.[85] Furthermore, it argues that the evidence presented does not demonstrate that Ronald Franks Construction had anything to do with Plaintiffs' payments.[86] Finally, Ronald Franks Construction asserts that the suggested class directly conflicts with the scope of the class set forth in Plaintiffs' second amended complaint and therefore the motion should be denied.[87]

In the alternative, should the Court grant conditional class certification, Ronald Franks Construction objects to the proposed six-month opt-in period on the grounds that it is unreasonable and excessive.[88] It asserts that Plaintiffs have delayed in filing the motion for conditional class certification and the six-month opt-in period will be needlessly expensive and unnecessarily time-

---

[83] *Id.* at 10.

[84] *Id.* at 11.

[85] *Id.*

[86] *Id.*

[87] *Id.* at 12–13.

[88] *Id.* at 13.

16

consuming for the Court.[89] Ronald Franks Construction requests that the Court order an opt-in period between thirty and ninety days.[90]

**D.      *Plaintiffs' Arguments in Further Support of Conditional Class Certification***

In reply, Plaintiffs contend that they are unable to locate any case in this District or in the Fifth Circuit applying the *Shushan* approach to a conditional class certification motion and therefore, the Court should use the *Lusardi* approach.[91] However, even if the Court were to use the *Shushan* approach, Plaintiffs assert that this case meets, as *Shushan* would require, all of the factors pursuant to Federal Rule of Civil Procedure 23(a), including numerosity, adequacy, typicality, and common questions of law and fact.[92]

Turning to the *Lusardi* approach, Plaintiffs assert that their claims are corroborated by Defendants' own records and admissions.[93] They contend that Defendants' arguments that Defendants were not "employers" under the FLSA is premature as Defendants are conflating their liability defenses with the relevant standard in FLSA class certifications.[94] Plaintiffs argue that, at this stage, the question is not whether Defendants were "employers" under the FLSA, but whether Plaintiffs are "similarly situated" for the purposes of proceeding on a class basis.[95] Furthermore,

---

[89] *Id.* at 13–14.

[90] *Id.* at 14.

[91] Rec. Doc. 110 at 2.

[92] *Id.* at 3–4.

[93] *Id.* at 5.

[94] *Id.*

[95] *Id.*

Plaintiffs contend that although Defendants argue that Plaintiffs have failed to explain how they are liable for the "common policy, practice, or plan" of not paying overtime, Defendants misconstrue Plaintiff's burden.[96] Plaintiffs assert that "common policy, practice, or plan" is a term of art developed by courts to further define the phrase "similarly situated" as it appears in 29 U.S.C. § 216(b), and here, Plaintiffs are "similarly situated" individuals who did not receive overtime.[97]

Plaintiffs also assert that they seek conditional class certification, which allows for the use of representative testimony, and although Defendants object to conditional class certification, they do not provide any alternative for how they anticipate litigating a 160-plaintiff trial.[98] Plaintiffs also clarify that they only seek to conditionally certify a class of individuals who worked on the construction project at 225 Baronne Street, and nowhere else.[99]

As for their request that the Court order Defendants to provide contact information for putative Plaintiffs, Plaintiffs contend that Defendants must provide this information if the Court approves the class.[100] Plaintiffs also assert that their proposed notice is "virtually identical" to a notice that has been approved by this Court, as well as five other sections of the Eastern District of Louisiana.[101] Furthermore, they assert that a six-month opt-in period is appropriate as this case presents unique challenges because the defendant most likely to have contact information for the

---

[96] *Id.* at 6.

[97] *Id.*

[98] *Id.* at 7.

[99] *Id.* at 7–8.

[100] *Id.* at 8.

[101] *Id.* (citing *Rendon v. Global Tech. Solutions*, No. 15-242 (Brown, J.)).

18

putative plaintiffs is unrepresented and located outside of the state, and many of the putative plaintiffs have already relocated outside the state.[102]

### III. Applicable Law

Under § 216(b) of the FLSA, one or more employees can pursue a class action in a representative capacity on behalf of similarly situated employees.[103] Such collective actions allow similarly situated plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact."[104] A plaintiff may proceed collectively under the FLSA unless "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice."[105] There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit.[106] This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure.[107]

The FLSA does not define the requirements for employees to be deemed "similarly

---

[102] *Id.* at 9.

[103] 29 U.S.C. § 216(b) ("An action to recover the liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").

[104] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[105] *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (Zainey, J.) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

[106] 29 U.S.C. § 216(b).

[107] *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

situated." Instead, a two-step method is routinely utilized, which was originally articulated in *Lusardi v. Xerox Corporation*[108] and described in detail by the Fifth Circuit in *Mooney v. Aramco Services, Co.*[109] Under this approach, a court first determines at the "notice stage" whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[110] Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[111] Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[112]

At the notice stage, the burden is on the plaintiff to demonstrate that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[113] The burden to show that plaintiffs are similarly situated rests on the plaintiff,[114] but that burden may be satisfied by

---

[108] 118 F.R.D. 351 (D.N.J. 1987).

[109] 54 F.3d at 1213–14.

[110] *See id.*

[111] *Id.* at 1214.

[112] *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[113] *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.) (quoting *Morales v. Thang Hung Corp.*, 4:08–2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug. 14, 2009)).

[114] *See England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *Kenyatta-Bean v.*

demonstrating only a reasonable basis for the allegation that a class of similarly situated persons may exist.[115] "Plaintiffs need not be identically situated, and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities."[116] "Whether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."[117] Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[118]

"At the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[119] If it is later determined, after a more extensive discovery process, that a plaintiff failed to carry his burden of establishing that he and members of the proposed class are similarly situated, an employer may

---

*Hous. Auth. of New Orlean*s, No. 04-2592, 2005 WL 3543793, at *6 (E.D. La. Nov. 18, 2005) (Lemmon, J.).

[115] *See Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (Fallon, J.) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996)).

[116] *Chapman v. LHC Grp., Inc.*, No. 13-6384, 2015 WL 5089531, at *5 (E.D. La. Aug. 27, 2015) (Brown, J.) (citing *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992); *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21-22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

[117] *Donohue v. Francis Serv., Inc.*, No. 04-170, 2004 WL 1161366, at * 2 (E.D. La., May 24, 2004) (citations omitted) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations). "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement." *Id.* at *3.

[118] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[119] *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734, at *4 (E.D. La. Aug. 10, 2015) (Lemelle, J.).

file a motion to decertify the class.[120]

The more lenient *Lusardi* approach is not the only recognized method for conditional collective action certification,[121] although it is the more common approach and routinely used by courts in this District.[122] Moreover, the *Lusardi* approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed. R. Civ. P., and the collective action provided by FLSA."[123] In *Mooney*, the Fifth Circuit discussed a second methodology referred to as the "*Shushan*" or "spurious class action" approach, in which the court conducts an inquiry similar to that outlined in Federal Rule of Civil Procedure 23.[124] The *Shushan* approach has been described as "more stringent" than the "two-stage" approach.[125] Under the *Shushan* analysis, plaintiffs must prove the existence of a definable, manageable class, and that plaintiffs are proper representatives of the class.[126]

---

[120] *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

[121] *Mooney* did not state which of the two procedures is the proper approach, although the "two stage" *Lusardi* approach is more commonly used by district courts.

[122] *See, e.g., Johnson v. Big Lots Stores, In.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008) (Vance, J.) (describing the *Lusardi* approach as the "prevailing method"); *Basco v. Wal-Mart Stores*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (Duval, J.) ("Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reached on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis . . . ."); *see also* 7B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1807 (3d ed. 2002) (stating that "most courts in collective actions follow a two-stage certification process").

[123] *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 4591088 (M.D. La. Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).

[124] *See Mooney*, 54 F.3d at 1214 (citing *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990)).

[125] *See, e.g., Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 670 (N.D. Tex. 2007).

[126] *Shushan*, 132 F.R.D. at 268.

# IV. Analysis

## A.    *Conditional Class Certification*

Defendants Ronald Franks Construction, RAC, and Travelers all assert that the Court should use the *Shushan* approach rather than the *Lusardi* approach in evaluating class certification.[127] The *Lusardi* approach is the more common approach and is the one that this Court has used in evaluating past motions for conditional class certification.[128] Defendants' arguments for using the *Shushan* approach appear to be based on "general fairness" grounds, as well as the fact that Plaintiffs do not differentiate in their complaint between Defendants in making their allegations. As the Court will discuss below, these arguments appear to be merits-based arguments more appropriately addressed at a later stage rather than on a motion for conditional class certification. Furthermore, Defendants do not cite a single case in which a court actually applied the *Shushan* approach instead of the *Lusardi* approach, other than *Shushan* itself. Therefore, because Defendants have given the Court no reason or authority to support deviating from the prevailing approach for evaluating motions for conditional class certification, the Court will use the *Lusardi* approach.

At the notice stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[129]

---

[127] Rec. Doc. 90 at 13; Rec. Doc. 93 at 3.

[128] *Marshall v. Louisiana*, No. 15-1128, 2016 WL 279003, at *7 (E.D. La. Jan. 22, 2016) (Brown, J.); *Rendon v. Global Tech. Sols.*, LLC, No. 15-242, 2015 WL 8042169, at *7 (E.D. La. Dec. 4, 2015) (Brown, J.); *Johnson v. Big Lots Stores, In.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008) (Vance, J.).

[129] *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995).

Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[130] As an initial matter, Defendants argue that collective action is not proper against them because they are neither Plaintiffs' employer nor a joint employer.[131] Ronald Franks Construction, RAC, and Travelers do not argue that the FLSA is inapplicable to Plaintiffs in this case, but rather that Plaintiffs have not presented any evidence that they specifically qualify as "employers" pursuant to 29 U.S.C. § 216(b).[132] Defendants correctly note that Plaintiffs, in their second amended complaint, do not differentiate between Defendants in their allegations. In Plaintiffs' second amended complaint, Plaintiffs allege that all Defendants managed and controlled Plaintiffs' work schedule, recorded Plaintiffs' hours, and maintained employment records and payroll documents.[133] Plaintiffs allege that CCT, Ronald Franks Construction, and RAC are all "employers" for the purposes of the FLSA.[134] Although Defendants assert that the Court has a "responsibility to refrain from stirring up unwarranted litigation" and that "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense," this action does not appear to present frivolous claims.

In *Lima v. International Catastrophe Solutions, Inc.*, another section of the Eastern District

---

[130]*Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[131] Rec. Doc. 90 at 18; Rec. Doc. 93 at 7.

[132] Rec. Doc. 90 at 18.

[133] Rec. Doc. 48 at 7.

[134] *Id.* at 10.

of Louisiana addressed a similar situation where the plaintiffs had brought claims against two companies and a subcontractor, alleging that they had remained joint employees of all three companies.[135] The plaintiffs sought a more expansive class that included employees of other subcontractors that were not included as defendants, despite the fact that the affidavits only pertained to one subcontractor.[136] The plaintiffs argued that they were improperly classified as independent contractors and it was reasonable to assume that the general contractor entered into similar contracts with other subcontractors.[137] Therefore, the plaintiffs argued, it was likely that the general contractor also negotiated with other subcontractors that the workers be paid a straight time rate and that Defendants should have records of all hours worked by potential class members, regardless of the subcontractor.[138] The plaintiffs in *Lima* also argued that the main issue in litigation against the general contractor defendant would focus on whether they were joint employers of the workers with the subcontractors, and therefore must comply with FLSA overtime requirements.[139] The court concluded that although there were no affidavits of workers employed by subcontractors other than the present defendant, a review of the pay records and agreements to subcontract would reveal whether a common plan existed to improperly pay overtime salaries and that it was "appropriate to certify the collective action at th[at] time and revisit the question later

---

[135] 493 F. Supp. 2d 793, 796 (E.D. La. 2007).

[136] *Id.* at 798–99.

[137] *Id.* at 799.

[138] *Id.*

[139] *Id.*

after some discovery."[140]

District courts have concluded that the FLSA's definition of employer is so broad that a case may proceed even where there exist threshold questions regarding employment status.[141] The Court need not decide at this juncture the exact nature of the employment relationship between Plaintiffs and Defendants.[142] Here, Plaintiffs have alleged that CCT, Ronald Franks Construction, and RAC all managed and controlled their work, managed their work schedules, and recorded their time, employment files, and payroll documents.[143] Given Plaintiffs' low burden at this stage and the fact that Defendants' arguments appear to go the merits of the litigation, rather than whether the class should be conditionally certified, as in *Lima*, conditional class certification is appropriate. However, because Plaintiffs do not make any allegation that Travelers was Plaintiffs' employer and Plaintiffs conceded at oral argument that Travelers was not Plaintiffs' employer for the purposes of the FLSA, conditional class certification against Travelers is not proper.

Defendants also oppose conditional class certification on the grounds that Plaintiffs are not similarly situated.[144] RAC and Travelers argue that Plaintiffs are seeking compensation for time on projects at other locations that they were not involved in and there will be a requirement to

---

[140] *Id.*

[141] *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 69346047, at *3 (E.D. La. Dec. 30, 2011) (Brown, J.); *Fernandes da Silva v. Royal Constr. of La., LLC*, No. 08–4021, 2009 U.S. Dist. LEXIS 100692, at * 8–9, (E.D. La. Oct. 29, 2009) (Lemmon, J.) (granting a motion for conditional class certification although questions existed regarding whether the defendant was an employer or joint employer of plaintiffs).

[142] *Lang*, 2011 WL 693460447, at *3.

[143] Rec. Doc. 48 at 7.

[144] Rec. Doc. 90 at 17; Rec. Doc. 93 at 5.

individually review each putative class member in order to segregate which defendants are responsible for the allegations of non-payment.[145] However, Plaintiffs' proposed class includes only "individuals who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project in New Orleans, Louisiana . . . ."[146] Furthermore, at oral argument and in their reply brief,[147] Plaintiffs clarified that they were only seeking relief in connection with allegations arising out of the 225 Baronne Street project and not in any other location. Therefore, there is no need for individual review regarding any allegations arising out of work at other locations.

RAC and Travelers also assert that there is no evidence to link them to any alleged scheme of non-payment.[148] Ronald Franks Construction asserts that Plaintiffs were not the victims of a single decision, policy, or plan.[149] "At the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[150] Plaintiffs allege that RAC, Ronald Franks Construction, and CCT were Plaintiffs' employer, that Plaintiffs they were improperly classified as independent contractors not entitled to overtime, and that there was a "time shaving" scheme.[151] In support, they submit affidavits from

---

[145] Rec. Doc. 90 at 23–24.

[146] Rec. Doc. 62-2 at 6.

[147] Rec. Doc. 110 at 7.

[148] *Id.* at 26.

[149] Rec. Doc. 93 at 10.

[150] *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734, at *4 (E.D. La. Aug. 10, 2015) (Lemelle, J.).

[151] Rec. Doc. 110 at 5.

nine of the plaintiffs, as well as time card reports, which indicate that the amount that Plaintiffs were paid did not correlate exactly with the hours that they worked each day.[152]

Ronald Franks Construction, citing an Eastern District of Texas case, *H & R Block, Ltd., v. Housden*, contends that the Court should disregard the declarations submitted by Plaintiffs because they are "self-serving, conclusory, and rely on no evidence except hearsay."[153] Ronald Franks Construction contends that in *Housden*, the plaintiffs submitted conclusory affidavits in which they stated that they "believe other workers were discriminated against in similar ways."[154] Ronald Franks Construction asserts that there is no corroborating evidence regarding the overtime hours Plaintiffs assert they worked per week, and although the affidavits identify other individuals who Plaintiffs allege they worked alongside, Plaintiffs do not include last names or other identifying characteristics.[155] This case is distinguishable from the non-binding decision in *Housden*. Here, there are already 160 Plaintiffs who wish to participate in a collective action and there is evidence in the record to corroborate Plaintiffs' allegations that they worked more than forty hours a week, were not paid overtime, and that they were not paid for all of the hours they worked in violation of the FLSA. Therefore, the Court concludes that Plaintiffs' allegations and evidence are sufficient to meet the low burden that Plaintiffs must meet in order to show that they are similarly situated.

---

[152] Rec. Docs. 62-6–62-20.

[153] Rec. Doc. 93 at 8 (citing 186 F.R.D. 399, 400 (E.D. Tex. June 23, 1999)).

[154] *Id.* (citing 186 F.R.D. at 400).

[155] *Id.*

Ronald Franks also challenges Plaintiffs' assertion that they are similarly situated on the grounds that Plaintiffs "allegedly worked different jobs, at different times, for different rates of pay, and for no less than five (5) separate and distinct entities. These are not claims of plaintiffs that are similarly situated."[156] However, "Plaintiffs need not be identically situated, and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities."[157] In the affidavits submitted to the Court, Plaintiffs assert that they were hired by CCT to perform general labor and construction tasks (sheet rockers, framers, cleaners, painters, and finishers[158]), and were paid between $10 and $16 per hour, but were not paid overtime.[159] Plaintiffs allege that they were paid in the same way based upon the ID badges that recorded their hours worked.[160] Therefore, the Court concludes that the variations in job descriptions and slight differences in pay do not undermine the similarities between Plaintiffs for the purposes of conditional class certification.

Ronald Franks Construction also asserts that the motion for conditional class certification should be denied because the suggested class "conflicts with the scope of the class set forth in the

---

[156] Rec. Doc. 93 at 11.

[157] *Chapman v. LHC Grp., Inc.*, No. 13-6384, 2015 WL 5089531, at *5 (E.D. La. Aug. 27, 2015) (Brown, J.) (citing *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992); *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21-22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

[158] Plaintiff Beatriz Lopez alleges that a finisher is someone who applies joint compound to drywall. Rec. Doc. 62-10 at 1.

[159] Rec. Docs. 62-6–62-14.

[160] Rec. Doc. 48 at 8.

29

second amended complaint" and it is entitled to fair notice regarding Plaintiffs' claims. [161] As Plaintiffs correctly note in their reply, Ronald Franks Construction does not cite to any case law to support this argument for denial of the motion.[162] Nor does Ronald Franks Construction articulate how it has been prejudiced by any change in the proposed class. Furthermore, although the language used in the two proposed classes is different, the only substantive difference appears to be that the proposed class has been narrowed in the instant motion to "individuals who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project," rather than "all current and former employees of the Defendants" as the term "Defendants" in the second amended complaint includes RAC, Travelers, Ronald Franks Construction, CCT, CC Labor, LLC, and the Isaacks.[163] Therefore, the Court is not persuaded by Ronald Franks Construction's argument that the fact that Plaintiffs have narrowed their proposed class is a reason to deny conditional class certification.

Finally, RAC and Travelers assert that "general fairness" weighs against conditional class certification.[164] They contend that because there is no evidence that RAC is an employer or joint employer of Plaintiffs, or that there is an overarching policy or plan of nonpayment that includes RAC, and because the case will require individualized considerations, the instant motion should

---

[161] Rec. Doc. 93 at 12.

[162] Rec. Doc. 110 at 8.

[163] Rec. Doc. 48 at 9.

[164] Rec. Doc. 90 at 26.

be denied.[165] The Court has already addressed and rejected each of these arguments above. Accordingly, as Plaintiffs have met their burden of demonstrating that there is a reasonable basis for crediting Plaintiffs' assertion that aggrieved individuals exist, that those individuals are similarly situated to Plaintiffs, and that those individuals want to opt in to the lawsuit,[166] the Court will grant the motion for conditional class certification.

**B.      *Opt-in Period***

Plaintiffs requested a 60-day opt-in period in their motion for conditional class certification.[167] However, their proposed notice lists an opt-in period of six months,[168] and Plaintiffs discuss a six-month opt-in period in their reply brief.[169] When asked at oral argument what opt-in period they suggest that the Court set, Plaintiffs asserted that they request a six-month opt-in period. Ronald Franks Construction objects to a six-month opt-in period as "unreasonable and excessive" and contends that a thirty-to-ninety day opt-in period would be more appropriate.[170]

In *Lima*, another section of the Eastern District of Louisiana set an opt-in period of ninety days given that there were language barriers with the potential plaintiffs and that many individuals

---

[165] *Id.* at 27.

[166] *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.) (quoting *Morales v. Thang Hung Corp.*, 4:08–2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug. 14, 2009)).

[167] Rec. Doc. 62-2 at 24.

[168] Rec. Doc. 62-21.

[169] Rec. Doc. 110 at 8.

[170] Rec. Doc. 93 at 13.

had migrated to other states.[171] In *Marshall v. State of Louisiana*, this Court set an opt-in period of forty-five days where the proposed notice went to individuals performing the duty of sheriff's deputy and working for Marlin Gusman, noting that the plaintiffs had not presented any evidence of a language barrier with potential plaintiffs or an issue of potential plaintiff migration to other states.[172] The Court finds the reasoning in *Lima* persuasive and similarly concludes that a 90-day opt in period is appropriate because Plaintiffs asserted during oral argument that there are migration and language barrier issues at issue in this case. Although Plaintiffs request an opt-in period of six months, because the statute of limitations on putative plaintiffs' claims continues to run and this case has already been pending for close to a year, the Court finds that a 90-day opt-in period would be more appropriate in this matter. Therefore, the Court will set an opt-in period of ninety days.

C.     ***Time Period for Certified Class***

RAC and Travelers argue that Plaintiffs have failed to establish that they willfully withheld overtime or minimum wage payments and therefore a three-year time period for the certified class is inappropriate.[173] Although in their motion, Plaintiffs proposed a time period of three years,[174] during oral argument, Plaintiffs stipulated that two years is appropriate. The applicable statute of limitations period under the FLSA is set forth in 29 U.S.C. § 255. The action must commence

---

[171] *Lima*, 493 F. Supp. 2d at 804.

[172] No. 15-1128, Rec. Doc. 25 (E.D. La. Jan. 22, 2016).

[173] Rec. Doc. 90 at 27.

[174] Rec. Doc. 62-2 at 6.

within two years after the cause of action accrued; however, if the violation is "willful," the cause of action must be commenced within three years after it accrued.[175] As Plaintiffs agree that two years is the appropriate time period, the Court will limit the time period to two years.

**D.    *Whether the Court Should Direct Defendants to Provide the Names, Phone Numbers, and Last Known Addresses of Potential Opt-In Plaintiffs***

Plaintiffs also request that the Court order Defendants to provide the names and last known addresses of potential class members.[176] RAC and Travelers oppose this request, arguing that there is no need to order Defendants to provide this discovery because CCT has already produced the employment records that it possesses and RAC has no employment records other than the weekly global timesheets that Ronald Franks Construction submitted to it, which have already been produced.[177] Furthermore, RAC and Travelers assert that because Plaintiffs have submitted opt-in forms from almost every named Plaintiff, it is evident that Plaintiffs have the ability to contact the individuals who may compose the collective action and can get the information they seek more readily than Defendants.[178] In Plaintiffs' reply, citing the Supreme Court in *Hoffman La-Roche, Inc. v. Sperling* and another section of the Eastern District of Louisiana in *Lima v. International Catastrophe Solutions*, they assert that "Defendants must provide [the contact information for putative Plaintiffs] if the Court approves the class."[179]

---

[175] 29 U.S.C. § 255.

[176] Rec. Doc. 62-2 at 23.

[177] Rec. Doc. 90 at 29.

[178] *Id.*

[179] Rec. Doc. 110 at 8 (citing *Hoffman La-Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Lima v. Int'l Catastrophe Sols.*, 493 F. Supp. 2d 793, 805 (E.D. La. 2007)).

In *Hoffman La-Roche*, the Supreme Court concluded that the district court was correct to permit the discovery of the names and addresses of discharged employees as the discovery was relevant to the subject matter and there were no grounds to limit the discovery.[180] The Supreme Court also stated that "[t]he facts and circumstances of [the] case illustrate the propriety, if not the necessity, for court intervention in the notice process."[181] Here, RAC and Travelers contend that all Defendants have already produced the employment records they have in their possession.[182] Plaintiffs do not respond to this assertion. However, to the extent that any employment records have not been produced, the Court orders Defendants to produce this information.

### E.    Content of the Notice

RAC and Travelers also object to Plaintiffs' proposed notice on the grounds that it is "misleading and biased in Plaintiffs' favor" and additionally fails to warn potential claimants that they will be liable for taxable costs if Defendants prevail or inform potential opt-ins that they may contact any attorney of their choosing to discuss the case.[183] The Court therefore orders that the notice be revised consistent with this Order, and that the parties shall meet and confer regarding the content of the notice. If the parties cannot agree to a joint notice, they should request an expedited status conference with the Court.

---

[180] 493 U.S. at 170.

[181] *Id.*

[182] Rec. Doc. 90 at 29.

[183] Rec. Doc. 90 at 29.

## V. Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Conditional Class Certification."[184] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Notice shall be sent to: "All individuals who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project in New Orleans, Louisiana during the previous two years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 or minimum wages pursuant to the FLSA, 29 U.S.C. § 206 and who did not receive full overtime or minimum wage compensation."

**IT IS FURTHER ORDERED** that the parties meet and confer regarding the form and content of the proposed notice, in keeping with the Court's ruling herein. The parties are ordered to submit a joint proposed notice within 10 days of the date of this Order. If the parties are unable to agree on a proposed notice, the parties shall each submit (1) their proposed notice and (2) their objections, with supporting authority, to the opposing party's notice and/or consent form, within 10 days of this Order, and request an expedited status conference on the matter.

**IT IS FURTHER ORDERED** that to the extent that any employment records of potential class members have not been produced, Defendants must produce this information to Plaintiffs.

---

[184] Rec. Doc. 62.

**IT IS FURTHER ORDERED** that the opt-in period for putative class members shall be 90 days from the date that a final notice is approved by this Court.

**NEW ORLEANS, LOUISIANA** this _20th_ day of September, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**