## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NANCY MURILLO, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3641** |
| **CORYELL COUNTY TRADESMEN, LLC, et al.** | **SECTION: "G"(1)** |

## <u>ORDER</u>

In this litigation, Plaintiffs, approximately 160 individuals hired to work on a construction and renovation project located at 225 Baronne Street in New Orleans, Louisiana, allege that Defendants did not pay overtime wages or minimum wages in violation of the Fair Labor Standards Act ("FLSA").[1] Defendant and Cross-Claim Plaintiff Roy Anderson Corporation ("Roy Anderson"), the general contractor for the underlying construction project in this litigation, has asserted a crossclaim for breach of contract and indemnity against Defendant Ronald Franks Construction Company, LLC ("Ronald Franks"), a subcontractor.[2] Pending before the Court is Ronald Franks' "Motion to Dismiss Crossclaim of Roy Anderson Corp. or, Alternatively, to Stay Proceedings Pending the Outcome of Arbitration."[3] Having considered the motion, the memoranda in support, the memorandum in opposition, and the applicable law, the Court will grant the motion in part to the extent that Ronald Franks requests that the Court stay the litigation of Roy Anderson's

---

[1] Rec. Doc. 48; Rec. Doc. 52-1 at 1.

[2] Rec. Doc. 92 at 15–19.

[3] Rec. Doc. 130.

crossclaim against Ronald Franks pending the outcome of arbitration, and deny the motion in part to the extent that Ronald Franks requests that the Court dismiss the crossclaim in favor of arbitration.

## I. Background

### A.    *Factual Background*

Plaintiffs allege that this lawsuit arises from the renovation of a luxury hotel and apartment building in downtown New Orleans named "The Strand" at 225 Baronne Street ("the Project").[4] They allege that the mostly migrant workers who performed the renovation work were not paid minimum wages or overtime while working "grueling" 70-hour workweeks.[5] Plaintiffs further contend that their recorded hours were often "adjusted" to reflect shorter work periods so that Defendants Roy Anderson, Ronald Franks, Coryell County Tradesmen ("CCT"), CC Labor, LLC ("CC Labor"), Paul Isaacks, Brandon Isaacks, and Brent Isaacks could pay them less.[6]

Defendants CCT and CC Labor are alleged to be two family-run construction companies owned by Defendants Paul Isaacks, Brandon Isaacks, and Brent Isaacks.[7] Defendant Roy Anderson is alleged to be one of the general contractors that employed Plaintiffs, and Ronald Franks and CCT were two of the subcontractors on the Project.[8] Defendant Travelers Casualty and Surety

---

[4] Rec. Doc. 48 at 3.

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.* at 5.

[8] *Id.* at 5–6.

Company of America ("Travelers") is alleged to have contracted to pay the obligations of Roy Anderson with respect to the work done on the construction project at issue in this case.[9]

**B.      *Procedural Background***

Plaintiffs Nancy Murillo, Evelyn Mejia, Ambrocio Benito Castro, and Mechlor Acevedo filed a complaint on August 19, 2015, against Defendants CCT, CC Labor, Brandon Isaacks, Brent Isaacks, and Paul Isaacks.[10] With leave of Court, on February 18, 2016, Plaintiffs filed an amended complaint, adding more than 150 plaintiffs and adding as Defendants Ronald Franks, Roy Anderson, and Travelers.[11] Plaintiffs filed a second amended complaint, with leave of Court, on May 13, 2016.[12]

On July 12, 2016, Roy Anderson filed an answer to Plaintiffs' complaint and a crossclaim and third-party demand against Defendant Ronald Franks and Third-Party Defendant National American Insurance Company ("NAIC"), respectively.[13] Roy Anderson alleges that Ronald Franks breached their contract when it violated its affirmative duty "to pay its subcontractors and suppliers" to ensure no claims, liens, or privileges arose on the Project.[14] Roy Anderson also contends that the contracts were breached when Ronald Franks allegedly failed to indemnify Roy

---

[9] *Id.* at 6–7.

[10] Rec. Doc. 1.

[11] Rec. Doc. 19.

[12] Rec. Doc. 48.

[13] Rec. Doc. 92 at 15.

[14] *Id.* at 18.

Anderson for Plaintiffs' claims.[15] Roy Anderson further alleges that NAIC is liable to Roy Anderson if Roy Anderson is deemed liable for any of Plaintiffs' claims.[16]

On August 23, 2016, Ronald Franks filed the instant motion.[17] On September 6, 2016, Roy Anderson filed an opposition.[18] On October 12, 2016, with leave of Court, Ronald Franks filed a reply.[19]

## II. Parties' Arguments

### A. Ronald Franks' Arguments in Support of Dismissal

In its motion, Ronald Franks requests that this Court either: (1) dismiss Roy Anderson's crossclaim against Ronald Franks for breach of contract; or, in the alternative, (2) stay the proceedings pending the outcome of arbitration.[20] Ronald Franks states that Roy Anderson entered into a "prime contract" with 222 Baronne Complex, LLC, the Project's owner, as the general contractor for the construction project at issue in this litigation.[21] Ronald Franks alleges that on February 13, 2014, Roy Anderson and Ronald Franks entered into three subcontract agreements ("the Subcontracts") to perform certain work and provide certain materials for the Project.[22]

---

[15] *Id.* at 19.

[16] *Id.* at 20.

[17] Rec. Doc. 130.

[18] Rec. Doc. 150.

[19] Rec. Doc. 177.

[20] Rec. Doc. 130-1 at 1.

[21] *Id.* at 2.

[22] *Id.*

4

Ronald Franks further contends that on March 17, 2014, it entered into a "sub-subcontract agreement" with CCT.[23]

According to Ronald Franks, the Subcontracts contain an arbitration clause, which states that all claims and disputes between Ronald Franks and Roy Anderson would be decided by binding arbitration in accordance with the rules and procedures of the American Arbitration Association. Ronald Franks avers that Louisiana law applies to the Subcontracts.[24] Ronald Franks argues that, under Louisiana law, the Subcontracts contain valid and enforceable arbitration provisions.[25] Ronald Franks further asserts that the breach of contract claims contained in Roy Anderson's crossclaim falls within the scope of the arbitration provision contained in the Subcontracts.[26] Thus, Ronald Franks contends that, because the Subcontracts contain a valid and enforceable arbitration provision, and because the claims alleged by Roy Anderson's crossclaim fall within the scope of that provision, Roy Anderson's crossclaim should be dismissed.[27]

Alternatively, Ronald Franks avers that the Court should stay "any and all proceedings related to" the crossclaim pending the outcome of arbitration.[28]

**B.     *Roy Anderson's Arguments in Opposition to Dismissal***

In opposition, Roy Anderson asserts that each of the Subcontracts' arbitration provisions

---

[23] *Id.* at 3.

[24] *Id.* at 5.

[25] *Id.* at 5–6.

[26] *Id.* at 6.

[27] *Id.* at 7.

[28] *Id.* at 8.

stated that "*[e]xcept as otherwise provided herein*, all claims, disputes, or other matters in controversy" between Roy Anderson and Ronald Franks "shall be decided by binding arbitration . . . ."[29] Moreover, Roy Anderson points out that Section 30.2 of the Subcontracts provides that the "locale of any arbitration . . . and the venue of any litigation" shall be in Roy Anderson's "county/parish and state," "unless the Contractor, in its sole discretion designates another locale or venue . . . Any locale or venue designated by the Contractor shall be binding on the Subcontractor."[30] According to Roy Anderson, this provision makes clear that, while arbitration is the default, the Subcontracts leave the "ultimate decision about where proceedings may be brought" to Roy Anderson's sole discretion.[31] Roy Anderson further asserts that the Subcontracts state that Ronald Franks waives its right to a jury for litigation arising out of the Subcontracts and allows the recovery of attorneys' fees.[32]

Roy Anderson argues that Ronald Franks' motion is also procedurally improper, as it is brought pursuant to Federal Rule of Civil Procedure 12(b)(6).[33] Thus, Roy Anderson contends that the Court should deny Ronald Franks' motion to dismiss.[34]

Roy Anderson further asserts that proceedings involving its crossclaim should not be stayed pending arbitration, because Ronald Franks cannot enforce the arbitration provision when

---

[29] Rec. Doc. 150 at 2 (emphasis in original).

[30] *Id.* at 2 (emphasis omitted).

[31] *Id.* at 3.

[32] *Id.*

[33] *Id.* at 5.

[34] *Id.*

Roy Anderson exercises its authority under the Subcontracts to choose the locale or venue to bring a proceeding.[35] Moreover, Roy Anderson alleges that none of the provisions give Ronald Franks a right to compel arbitration.[36] Additionally, Roy Anderson argues that this dispute falls outside the scope of any arbitration provision in the Subcontracts.[37] Roy Anderson avers that it seeks indemnification from Ronald Franks.[38] However, according to Roy Anderson, the arbitration provision only applies to "claims, disputes, or other matters in controversy or question *referenced in this Section*[,]" and the Section does not reference indemnity.[39]

## C.    *Ronald Franks' Arguments in Further Support of Dismissal*

In its reply, Ronald Franks asserts that, in related litigation brought in state court by one of the suppliers on the Project, Roy Anderson asserted the same crossclaim against Ronald Franks based on the alleged breach of the Subcontracts.[40] According to Ronald Franks, it filed a dilatory exception of prematurity and, alternatively, motion to stay the state court proceedings based on the arbitration provision.[41] Ronald Franks represents that on September 15, 2016, the state court granted Ronald Franks' exception and stayed the proceedings pending arbitration.[42] Thus, Ronald

---

[35] *Id.* at 7.

[36] *Id.* at 7–8.

[37] *Id.* at 8.

[38] *Id.*

[39] *Id.*

[40] Rec. Doc. 177 at 1–2.

[41] *Id.* at 2.

[42] *Id.* at 3.

Franks argues that the Court should dismiss Roy Anderson's crossclaim in this matter or stay all proceedings related to the crossclaim pending the outcome of arbitration "just as the state court has done."[43]

Moreover, Ronald Franks argues that the state court decision compelling arbitration must be given full faith and credit by this Court.[44]  According to Ronald Franks, the Louisiana law of res judicata provides for issue preclusion and bars re-litigation of these claims.[45]

### III. Law and Analysis

**A.**   ***Whether Roy Anderson is Precluded from Asserting its Crossclaim against Ronald Franks under the Louisiana Law of Res Judicata***

In its reply memorandum, Ronald Franks avers that a judgment was rendered against Roy Anderson in a related state court case staying Roy Anderson's state court crossclaim against Ronald Franks pursuant to the same Subcontracts' arbitration clauses.[46] Thus, Ronald Franks argues that the Louisiana law of issue preclusion bars Roy Anderson from re-litigating whether its crossclaim should be dismissed or stayed pending the outcome of arbitration.[47]

First, the Court notes that this argument was not asserted in Ronald Franks' original motion, but was instead raised for the first time in Ronald Franks' reply memorandum. Courts in the Fifth Circuit have determined that new arguments raised for the first time in a reply brief need

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 3–4.

[47] *Id.*

not be considered.[48] However, the Fifth Circuit has noted that courts "may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond."[49]

Here, while Ronald Franks' motion was filed on August 23, 2016,[50] and Roy Anderson filed an opposition on September 6, 2016, Ronald Franks could not assert an issue preclusion argument until the state court order allegedly enforcing the arbitration clause was issued on October 4, 2016.[51] Moreover, Roy Anderson has had an adequate opportunity to respond since Ronald Franks' reply was filed, and Roy Anderson has not requested leave to file a sur-reply to address this argument.[52] Accordingly, the Court will consider whether Roy Anderson's issue preclusion argument.

As the Supreme Court has made clear, federal courts must "refer to the preclusion law of the State in which judgment was rendered" to determine the preclusive effect of a state court judgment.[53] The Fifth Circuit has likewise concluded that "[a] federal court asked to give res

---

[48] *See, e.g.*, *Eitzen Bulk A/S v. Capex Indus., Ltd.*, No. 10-395, 2010 WL 5141257, at *3 (E.D. La. Dec. 13, 2010) (Berrigan, J.) (determining that the Court would not consider new arguments regarding the res judicata effect of a prior action because they were raised for the first time in a reply brief); *Cooper v. Faith Shipping*, No. 06-892, 2008 WL 5082890, at *4 (E.D. La. Nov. 25, 2008) (Vance, J.) (declining to consider new arguments presented for the first time in a reply brief "long after" the initial motion was filed). *See also Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008) ("[A]rguments cannot be raised for the first time in a reply brief."); *Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 745–46 (E.D. La. 2012) (Roby, Mag.) ("Courts in the Fifth Circuit have found that a court need not consider new arguments raised for the first time in a summary judgment reply brief.").

[49] *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004).

[50] Rec. Doc. 130.

[51] *See* Rec. Doc. 177 at 3; Rec. Doc. 177-5.

[52] *See Vais Arms, Inc.*, 383 F.3d at 292.

[53] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738); *see*

judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation."[54] Thus, because the judgment at issue was rendered in the Louisiana, Louisiana law determines what preclusive effects, if any, may arise from the state court's judgment.[55]

Louisiana law embraces the broad usage of the term "res judicata" to include both claim preclusion and issue preclusion.[56] With regard to issue preclusion, or "collateral estoppel," Louisiana Revised Statute § 13:4231(3) provides that "[a] [valid and final] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment."[57] "This principle serves the interests of judicial economy by preventing relitigation of the same issue between the same parties."[58] Thus, under issue preclusion, "once a court decides an

---

*also Matter of Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) (holding that courts "must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect").

[54] *Prod. Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996); *see Hugel v. Se. Louisiana Flood Prot. Auth.-E.*, 429 F. App'x 364, 367 (5th Cir. 2011).

[55] *See In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005) (determining that, because the underlying judgment was from a Louisiana state court, Louisiana issue preclusion rules would apply); *Pinkozie v. Ricks*, No. 16-11621, 2017 WL 1056012, at *13 (E.D. La. Mar. 20, 2017) (Brown, J.). *See also* Rec. Doc. 177-5 (Louisiana state court judgment).

[56] *See* La. Rev. Stat. § 13:4231; *Maschek v. Cartemps USA*, 2004-1031 (La. App. 4 Cir. 2/16/05), 896 So. 2d 1189, 1193; *Williams v. City of Marksville*, 2002-1130 (La. App. 3 Cir. 3/5/03), 839 So. 2d 1129, 1131.

[57] *Goodman v. Spillers*, 28,933 (La. App. 2 Cir. 12/23/96), 686 So. 2d 160, 166 ("Even where *claim* preclusion of § 4231(2) does not apply, *issue* preclusion under § 4231(3) may bar a subsequent suit." (emphasis in original)).

[58] La. Rev. Stat. § 13:4231, cmt. (b).

issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties."[59]

The Louisiana Supreme Court has determined that "[t]he doctrine of res judicata cannot be invoked unless all its essential elements are present . . . and each necessary element must be established beyond all question."[60] Louisiana courts have narrowly construed the doctrine's scope, and "any doubt concerning application of the principle of res judicata must be resolved against its application."[61] The party urging the application of res judicata has the burden of proving each essential element by a preponderance of the evidence.[62]

Thus, to determine whether issue preclusion applies such that Roy Anderson is barred from opposing this motion, the Court must consider if the issues raised in the instant motion were "actually litigated and determined" in the state court proceeding and if their "determination was essential to [the state court's] judgment."[63] In the state court proceeding, *AP Interiors, LLC D/B/A/ The Paint Store v. Coryell County Tradesmen, LLC, et al.*, Plaintiff AP Interiors filed a petition against Roy Anderson, Ronald Franks, CCT, Travelers, and NAIC for failure to pay AP Interiors

---

[59] *Williams*, 839 So. 2d at 1131; *see Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp.*, 2001-0993 (La. App. 1 Cir. 8/4/04), 880 So. 2d 129, 136. *See generally In re Keaty*, 397 F.3d 264, 270–71 (5th Cir. 2005) (noting that "[t]he requirements for issue preclusion under Louisiana state law are identical to those recognized by the Fifth Circuit: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment.").

[60] *Hugel*, 429 F. App'x at 368 (quoting *Kelty v. Brumfield,* 633 So.2d 1210, 1215 (La. 1994)) (quotation marks omitted).

[61] *Id. See also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 437 (5th Cir. 2000).

[62] *St. Paul Mercury Ins. Co.*, 224 F.3d at 437 (citing *Greer v. Louisiana*, 616 So.2d 811, 815 (La. App. 2 Cir. 1993)).

[63] La. Rev. Stat. § 13:4231(3).

for materials it provided on the same Project at issue in this case.[64] Roy Anderson brought a crossclaim against Ronald Franks for indemnification against AP Interiors' claim and for Ronald Franks' alleged breach of one of the Subcontracts.[65] Thereafter, Ronald Franks filed a "dilatory exception of prematurity, and alternatively, motion to stay proceedings pending arbitration" ("state court motion"), seeking to dismiss Roy Anderson's crossclaim or stay the proceedings pending arbitration.[66]

According to Ronald Franks, the state court, in a one-page judgment, granted Ronald Franks' state court motion and ordered that "[a]ll claims of Roy Anderson Corp. against Ronald Franks Construction Company, LLC and National American Insurance Company in the captioned matter shall be stayed pending arbitration."[67] The state court judgment did not provide reasons for the court's decision or specify what issues were litigated between the two parties. In support of its argument that this state court judgment should be given issue preclusive effect, Ronald Franks submits to the Court its memorandum in support of its state court motion that was filed in state court ("state court memorandum").[68] As in this motion, Ronald Franks argued in its state court memorandum that the same Subcontracts between Roy Anderson and Ronald Franks for work on the Project at issue in this litigation had binding arbitration clauses, and thus the state court

---

[64] Rec. Doc. 177-1 at 2–3.

[65] Rec. Doc. 177-3 at 4–8.

[66] Rec. Doc. 177-4.

[67] Rec. Doc. 177-5.

[68] Rec. Doc. 177-4 at 4.

crossclaim should be dismissed or stayed pending arbitration.[69]

Pursuant to Louisiana Revised Statute § 13:4231(3), Louisiana law only grants issue preclusive effects to valid and final state court judgments "with respect to *any issue actually litigated and determined* if its *determination was essential* to that judgment." Here, neither party disputes the validity of the Subcontracts or the fact that the Subcontracts contain arbitration provisions. Rather, Roy Anderson argues that: (1) its claim for indemnity against Plaintiffs' claims are not covered by the arbitration agreement; and (2) the Subcontracts give Roy Anderson the sole discretion to choose to forgo arbitration and assert its crossclaim against Ronald Franks in this Court.[70] However, neither the state court judgment nor Ronald Franks' state court memorandum demonstrate that these issues raised in Roy Anderson's opposition to the motion filed in this Court were "actually litigated and determined" in the Louisiana state court or were "essential" to the state court's judgment.[71] That is, because this Court cannot determine the bases on which Ronald Franks' similar state court motion was resolved, the Court cannot find that Roy Anderson is barred from raising these issues in this Court pursuant to Louisiana's law of res judicata.[72] Accordingly, the Court will deny in part Ronald Franks' motion to the extent that it argues Roy Anderson's arguments are barred under the Louisiana law of res judicata, and the Court will proceed to

---

[69] *Id.* at 4–6.

[70] Rec. Doc. 150 at 6–9.

[71] La. Rev. Stat. § 13:4231(3).

[72] *Goodman v. Spillers*, 28,933 (La. App. 2 Cir. 12/23/96), 686 So. 2d 160, 167 ("The record does not reveal precisely how the court in *United Group* reached its directed verdict out of the numerous possible reasons that may be imagined for that court's determination . . . All Bancroft and United have proved is that the directed verdict judgment resolved and disposed of Goodman's entire *claim* based on unfair trade practice and consumer protection laws, not the actual determination of a *single issue.*" (emphasis in original)).

consider the motion.

**B.      *Whether the Federal Arbitration Act Applies to this Dispute***

As a preliminary matter, the Court will first consider whether the FAA applies to this dispute. In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[73] Thus, "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[74] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[75]

In resolving the motion presently before the Court, it is first necessary to determine whether the action falls within the scope of the FAA. On this point, the FAA, as codified at 9 U.S.C. §§ 1–2, provides the basis for the Court's inquiry. Section 2 states that:

> *A written provision* in any maritime transaction or a contract evidencing a transaction involving commerce *to settle by arbitration a controversy thereafter arising out of such contract or transaction*, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.[76]

---

[73] 379 F.3d 159, 166 (5th Cir. 2004) (citations omitted).

[74] *Id.*

[75] *Id.*

[76] 9 U.S.C. § 2 (emphasis added).

14

Section 1 defines "commerce" as meaning "commerce among the several States or with foreign nations."[77] In *Perry v. Thomas*, the United States Supreme Court concluded that the FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause [of the United States Constitution]."[78]

The FAA, as codified at 9 U.S.C. § 3, gives federal courts authority to stay litigation pending arbitration; it provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[79]

As the Fifth Circuit has observed, Section 3 of the FAA is mandatory, providing that federal courts "*shall* on application of one of the parties stay the trial of the action."[80]

Section 4 of the FAA covers motions to compel arbitration, and it provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy

---

[77] 9 U.S.C. § 1.

[78] 482 U.S. 483, 490 (1987). In *Perry*, the Supreme Court held that § 2 of the FAA preempted a California statute that provided a judicial forum for actions seeking to collect wages, notwithstanding any arbitration agreement between the parties. *Id.* at 484, 492.

[79] 9 U.S.C. § 3 (emphasis added).

[80] *Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004) (construing 9 U.S.C. § 3, reasoning that "[t]he grammatical structure of this sentence would seem to make clear that any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement," and ordering the district court to grant a nonsignatory's motion to compel arbitration).

between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.[81]

In this case, the parties do not dispute that the Subcontracts include an arbitration clause or that the FAA applies to this dispute.[82] Ronald Franks contends that Roy Anderson's breach of contract crossclaim is subject to arbitration pursuant to the Subcontract's arbitration provision.[83] The FAA applies to contracts evidencing a transaction involving commerce. Ronald Franks and Roy Anderson entered into a contract as citizens of Tennessee and Mississippi respectively to perform work in Louisiana,[84] which means that the transaction involved interstate commerce and the FAA applies. Accordingly, the Court concludes that the Subcontract's arbitration provision falls within the scope of the FAA. It will therefore consider whether the arbitration clause is enforceable.

## C.  *Whether Roy Anderson's Crossclaim Should be Dismissed or Stayed Pursuant to the Subcontracts' Arbitration Provisions*

In its motion, Ronald Franks argues that the Subcontracts contain valid and enforceable arbitration provisions, and that Roy Anderson's crossclaim falls within the scope of the arbitration provisions.[85] By contrast, Roy Anderson argues that the Subcontract does not permit Ronald

---

[81] 9 U.S.C. § 4.

[82] *See* Rec. Doc. 130-1 at 4 n.4 (Ronald Franks asserting that "[t]he business relationship at issue here is clearly one involving interstate commerce and falls within the scope of the FAA"); Rec. Doc. 150 at 6–7 (discussing the "federal policy favoring arbitration" and citing case law applying the FAA) (citing *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009); *Wash. Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996)).

[83] *See* Rec. Doc. 130-1 at 4; Rec. Doc. 130-3.

[84] *See* Rec. Doc. 92 at 15.

[85] Rec. Doc. 130-1 at 4–7.

16

Franks to enforce the arbitration provision, and that even if it does, the dispute between the two parties does not fall within the purview of these provisions.[86]

The Supreme Court has made clear that there is a strong presumption in favor of arbitrability,[87] and thus, any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.[88] To overcome this presumption, there must be clear evidence that the parties did not intend the claim to be arbitrable.[89] The Fifth Circuit has established a two-step inquiry to determine if an arbitration clause is enforceable.[90] First, a court determines whether the parties agreed to arbitrate.[91] This involves determining both whether there was a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration clause.[92] Second, a court determines whether any legal constraints external to the agreement foreclose the arbitration of claims.[93]

The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds

---

[86] Rec. Doc. 150 at 5.

[87] *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002).

[88] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

[89] *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[90] *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[91] *Id.*

[92] *Id.*

[93] *Id.*

as exist at law or in equity for the revocation of any contract."[94] Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[95] "[T]he strong federal policy favoring arbitration preempts state laws that act to limit the availability of arbitration."[96] More specifically, "the FAA will preempt any state laws that contradict the purpose of the FAA by requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[97]

### 1.   Whether a valid and enforceable agreement to arbitrate exists

Here, both parties agree that the Subcontracts include arbitration clauses, and the parties do not argue that any external legal constraints foreclose the arbitration of the claims.[98] Section 30.1.1 of the parties' Subcontracts provide that, "[e]xcept as otherwise provided herein, all claims, disputes, or other matters in controversy or question referenced in this Section shall be decided by binding arbitration in accordance with the current and applicable rules and procedures of the American Arbitration Association."[99] While Roy Anderson does not dispute the validity of the Subcontracts or dispute that they contain arbitration provisions generally, it argues that the

---

[94] 9 U.S.C. § 2.

[95] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

[96] *Saturn Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 687 (5th Cir. 2003) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).

[97] *Davis v. EGL Eagle Global Logistics L.P.*, 243 F. App'x 39, 44 (5th Cir. 2007) (quotations and citations omitted).

[98] *See* Rec. Docs. 130-1, 150.

[99] Rec. Doc. 130-3 at 9.

18

Subcontracts do not give Ronald Franks the authority to enforce the arbitration provisions.[100] In

particular, Roy Anderson points out that Section 30.2 of the Subcontracts provides:

> The locale of any arbitration of administrative proceeding between the Contractor
> and the Subcontractor and the venue of any litigation shall be in the county/parish
> and state of the Contractor's home office, unless the Contractor, in its sole
> discretion designates another locale or venue to facilitate joinder of Parties,
> consolidation of claims, or other interests of the Contractor. Any locale or venue
> designated by the Contractor shall be binding on the Subcontractor.[101]

Roy Anderson asserts that Section 30.2 of the Subcontracts "grant [Roy Anderson] the election

about whether any disputes should proceed to arbitration."[102]

As a preliminary matter, the Court notes that both parties agree that Louisiana law governs

their Subcontracts,[103] and Section 32.6 of the Subcontracts provides that the "laws of the State in

which the Project is located shall govern this Subcontract."[104] The Project underlying these

Subcontracts was located in Louisiana.[105] Thus, the Court will interpret the Subcontracts in

accordance with Louisiana law.

Under Louisiana law, the purpose of contract interpretation is to determine "the common

intent of the parties."[106] Words and phrases used in the contract are to be given their "plain,

---

[100] Rec. Doc. 150 at 7.

[101] Rec. Doc. 130-3 at 9.

[102] Rec. Doc. 150 at 7.

[103] Rec. Doc. 130-1 at 5 (asserting that Louisiana law applies to the Subcontract); Rec. Doc. 150 at 6 (applying Louisiana law to the Subcontract).

[104] Rec. Doc. 130-1 at 5 (discussing Section 32.6 of the Subcontracts).

[105] Rec. Doc. 130-3 at 1–3.

[106] La. Civ. Code art. 2045.

ordinary and generally prevailing meaning."[107] "[E]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[108] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[109] Extrinsic evidence is only admissible when a contract is ambiguous.[110] "A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used."[111] However, contractual provisions are not considered ambiguous "merely because one party creates a dispute about it."[112]

Here, Roy Anderson argues that Section 30.2 of the Subcontracts grant it the sole discretion to decide if a claim or cause of action should be determined through arbitration. The Court finds this argument unpersuasive. The plain language of Section 30.2 of the parties' Subcontracts indicates that the Section deals with *where* an arbitration action or litigation may proceed, as it allows Roy Anderson to select "*the locale* of any arbitration [or] administrative proceeding . . . and

---

[107] *See Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (quoting *Mayo v. State farm Mut. Auto. Ins. Co.*, 2003-1801, at 3 (La. 2/25/04); 869 So.2d 96, 99)); La. Civ. Code art. 2047.

[108] La. Civ. Code art. 2050.

[109] La. Civ. Code art. 2046; *See Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668–69 (5th Cir. 2012); *Prejean v. Guillory*, 2010-0740, at 6 (La. 7/2/10); 38 So. 3d 274, 279; *see also Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, J.)).

[110] *See Greenwood 950, L.L.C.*, 683 F.3d at 668–69.

[111] *Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 75; *Sequoia Venture No. 2, Ltd. v. Cassidy*, 42,426 (La. App. 2 Cir. 10/10/07), 968 So. 2d 806, 809–10.

[112] *Sequoia Venture No. 2, Ltd.*, 968 So. 2d at 809–10 (citations omitted).

*the venue* of any litigation" if it does not want the arbitration or litigation to proceed in "the county/parish and state of [Roy Anderson's] home office."[113] Thus, Section 30.2 clearly only grants Roy Anderson the authority to determine the location of these proceedings, and does not grant Roy Anderson the unilateral discretion to decide to forgo arbitration entirely. Roy Anderson has not pointed to any other language in the Subcontracts or authority that would support its interpretation of the Subcontracts. Rather, the arbitration provision clearly provides that all claims and disputes between the parties "*shall* be decided by binding arbitration."[114] Accordingly, the Court finds that a valid agreement to arbitrate claims between the parties exists and is enforceable.[115]

### 2.      Whether Roy Anderson's crossclaim falls within the scope of the arbitration agreement

Roy Anderson further contends that, even if the arbitration provision is enforceable by Ronald Franks, the dispute here falls outside the scope of the arbitration agreement.[116] In particular, Roy Anderson points out that the arbitration provision only applies to "all claims, disputes, or other matters in controversy or question *referenced in this Section*."[117] According to Roy Anderson, because indemnification is not referenced in Section 30 of the Subcontracts, Roy Anderson's crossclaim for indemnification and breach of contract falls outside the plain language of the

---

[113] Rec. Doc. 130-3 at 9 (emphasis added).

[114] *Id.*

[115] *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998).

[116] Rec. Doc. 150 at 8.

[117] *Id.* (emphasis added).

provision.[118]

Both the Supreme Court and the Fifth Circuit have explicitly held that disputes over the arbitrability of a claim, *i.e.* "the question of what issues a party can be compelled to arbitrate," is an issue for the court, rather than the arbitrator, to decide.[119] Thus, "[t]he question [of] whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability,*' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[120] By contrast, courts have also determined that it is presumed that the parties intended for arbitrators, and not the courts, to decide disputes regarding "procedural preconditions

---

[118] *Id.*

[119] *Pennzoil Expl. & Prod. Co.*, 139 F.3d at 1066 ("Whether the dispute falls within the arbitration agreement is a determination this court must make . . . ."); *see also BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) (holding that it is presumed that parties intend for the courts, not arbitrators, to decide disputes about "arbitrability," such as "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"); *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994) (noting that the questions of whether a party can be compelled to arbitrate and what issues a party can be compelled to arbitrate are issues for the court to decide). This Court notes that there appears to be some conflicting guidance within the Fifth Circuit as to whether the Court or the arbitrator should decide whether Roy Anderson's crossclaim falls within the scope of the arbitration provision. *See LLOG Expl. Offshore, LLC v. Newfield Expl. Co.*, No. 15-1746, 2016 WL 98618, at *3–5 (E.D. La. Jan. 8, 2016) (Engelhardt, J.) (discussing the differing case law on the question of whether the courts or arbitrators should decide issues of arbitrability). For example, the Fifth Circuit has also held that the question of who determines issues of arbitrability is decided by examining the breadth of the arbitration provision, rather than what the parties are disputing. *See, e.g.*, *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (concluding that, if an arbitration clause is "broad," then the arbitrator should determine whether a dispute falls within the clause, while clauses that are narrow should not be referred to arbitration unless the court determines that the dispute falls within the clause). In *In re Hornbeck*, for instance, the Fifth Circuit determined that, because the arbitration clause was broad, "the district court should have granted the stay under § 3 and permitted the arbitrators to decide, among other things, whether the contribution/indemnification dispute falls within it." *Id.* at 755. However, this Court notes that, in *Pennzoil Expl. & Prod. Co.*, the Fifth Circuit acknowledged that there may be a conflict between their decisions as to who decides issues of arbitrability, but ultimately concluding that questions regarding what issues a party can be compelled to arbitrate should be decided by the court rather than the arbitrator. *Pennzoil Expl. & Prod. Co.*, 139 F.3d at 1066 & n.7. Accordingly, based on both Supreme Court and Fifth Circuit precedent, the Court will proceed to determine whether the arbitration agreement between the two parties applies to Roy Anderson's crossclaim.

[120] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).

for the use of arbitration."[121]

Here, the parties dispute whether Roy Anderson's crossclaim for indemnification and breach of contract falls within the scope of the arbitration agreement. In other words, the parties dispute whether they agreed to arbitrate claims for indemnification and breach of contract, as it is well settled that a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[122] Moreover, neither party has pointed to any language in the Subcontracts indicating that they "clearly and unmistakably" intended for an arbitrator to decide questions of arbitrability rather than the Court.[123] Accordingly, this Court, and not an arbitrator, must resolve the dispute over the arbitrability of Roy Anderson's claims.[124]

There is a strong presumption in favor of arbitrability,[125] and the party resisting arbitration bears the burden of proving that a dispute is not arbitrable.[126] To overcome the presumption in

---

[121] *BG Grp., PLC*, 134 S. Ct. at 1206; *see also Howsam* 537 U.S. at 85 (determining that questions regarding the applicability of a time limit rule is a matter presumptively for the arbitrator, and not the court, to decide); *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 340 (5th Cir. 1987) (discussing the difference between questions of substantive and procedural arbitrability, and determining that procedural questions should be decided by an arbitrator); *Bouchard Transportation Co., Inc. v. Vt Halter Marine, Inc.*, No. 16-11264, 2016 WL 6124328, at *11 (E.D. La. Oct. 20, 2016) (Brown, J.) (finding that questions of timeliness are procedural and thus should be determined by an arbitrator).

[122] *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447*, 815 F.2d at 340.

[123] *Howsam*, 537 U.S. at 83.

[124] *See AT & T Technologies, Inc.*, 475 U.S. at 649 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241–243 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement); *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447*, 815 F.2d at 340 ("The judiciary should determine only whether the parties agreed to submit a grievance to arbitration."). *See* note 199 *supra*.

[125] *See Waffle House*, 534 U.S. at 289.

[126] *See Am. Heritage Life Ins. Co.*, 321 F.3d at 539.

23

favor of arbitrability, there must be clear evidence that the parties did not intend the claim to be arbitrated.[127] Here, Roy Anderson has not met its burden to prove that the instant dispute falls outside the scope of the parties' arbitration agreement, because it has not presented clear evidence that the parties did not intend for Roy Anderson's crossclaim to be arbitrated. Roy Anderson points out that Section 30.1.1 limits the scope of the arbitration provision to those claims, disputes, and other matters in controversy that are "referenced in this Section."[128] However, Section 30.1 explicitly states that "all claims, disputes, and other matters in controversy or question between [Roy Anderson] and [Ronald Franks] *arising out of or relating to this Subcontract, including allegations of breach and claims of tort as well as contract*, shall be decided in accordance with this Section," *i.e.* the mandatory arbitration provision.[129]

Therefore, the Court finds that Roy Anderson's crossclaim for indemnification against Plaintiffs' FLSA claims for unpaid compensation for work done on the Project and for breach of the Subcontracts falls within the scope of the arbitration provision. Roy Anderson's crossclaim seeking indemnification and breach of contract clearly arises out of and relates to the Subcontracts, and the Subcontracts explicitly provide that breach of contract claims are arbitrable. Thus, the Court finds that (1) there was a valid agreement to arbitrate and (2) the dispute in question falls within the scope of the arbitration provisions. Even if Roy Anderson's attenuated interpretation of the Subcontracts was plausible, the dispute must still be submitted to arbitration, because the Fifth

---

[127] *See Moses H. Cone*, 460 U.S. at 24–25.

[128] Rec. Doc. 150 at 8.

[129] Rec. Doc. 130-3 at 9 (emphasis added).

Circuit has instructed that any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.[130]

### 3. Whether Roy Anderson's crossclaim should be dismissed or stayed pending arbitration

Finally, Roy Anderson argues that Ronald Franks' motion to dismiss pursuant to Rule 12(b)(6) is procedurally improper, as Ronald Franks does not challenge the sufficiency of Roy Anderson's allegations and instead contests the forum in which Roy Anderson brings its crossclaim.[131] The Court need not address this argument, as Ronald Franks also requests, in the alternative, a stay pending arbitration. Section 3 of the FAA provides that when claims are properly referable to arbitration, upon application of one of the parties, the Court *shall* stay the trial of the action until the arbitration is complete.[132] That is, when a court finds that one or more issues between parties are referable to arbitration pursuant to a valid arbitration agreement, generally the FAA requires the Court to stay the action until the arbitration is complete.[133] Therefore, the Court finds it appropriate to grant the motion in part to the extent that Ronald Franks requests a stay of the litigation of Roy Anderson's crossclaim against Ronald Franks pending the outcome of its

---

[130] *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002); *see also Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability.")(quotations omittted); *Alfortish v. GreenSky, LLC*, No. 16-15084, 2017 WL 699830, at *7 (E.D. La. Feb. 22, 2017) (Lemelle, J.) ("To determine if a dispute falls within the scope of an arbitration agreement, courts must keep in mind that any doubts should be resolved in favor of arbitration.").

[131] Rec. Doc. 150 at 5.

[132] 9 U.S.C. § 3.

[133] *See Bloxom v. Landmark Pub. Corp.*, 184 F. Supp. 2d 578, 585 (E.D. Tex. 2002).

25

arbitration.[134] Accordingly, the Court will deny the motion in part to the extent that Ronald Franks alternatively requests that the Court dismiss the crossclaim entirely in favor of arbitration.

## IV. Conclusion

Based on the foregoing, the Court concludes that Ronald Franks has not demonstrated that Roy Anderson is precluded from litigating the issues in the instant motion under the Louisiana law of res judicata. Ronald Franks has not shown that the issues raised in its motion were "actually litigated and determined" in a state court or were "essential" to a state court's judgment such that Roy Anderson would be precluded from litigating them now. The Court also finds that Roy Anderson and Ronald Franks entered into valid agreements to arbitrate the instant disputes. Moreover, the Court determines that Roy Anderson's crossclaim falls within the scope of the Subcontracts' arbitration provisions. Therefore, pursuant to Section 3 of the FAA, the Court will grant the motion in part to the extent that Ronald Franks requests a stay of the litigation of Roy Anderson's crossclaim against Ronald Franks pending the outcome of arbitration. By contrast, the Court will deny the motion in part to the extent that Ronald Franks alternatively requests that the Court dismiss the crossclaim entirely in favor of arbitration. Accordingly,

**IT IS HEREBY ORDERED** that Ronald Franks' "Motion to Dismiss Crossclaim of Roy Anderson Corp. or, Alternatively, to Stay Proceedings Pending the Outcome of Arbitration"[135] is **GRANTED IN PART** and **DENIED IN PART.**

---

[134] *See Tai Ping Ins. Co. v. M/V Warschau*, 731 F.2d 1141, 1144 n.2 (5th Cir. 1984) (noting that the district court properly granted a "section 3 motion for a stay of litigation of the cross-claim pending its arbitration").

[135] Rec. Doc. 130.

**IT IS FURTHER ORDERED** that the motion is granted in part to the extent it request a stay of the litigation of Roy Anderson's crossclaim against Ronald Franks pending the outcome of arbitration.

**IT IS FURTHER ORDERED** that the motion is denied in part to the extent that it requests that the crossclaim be dismissed in favor of arbitration.

   **NEW ORLEANS, LOUISIANA** this <u>28th</u> day of March, 2017.


   **NANNETTE JOLIVETTE BROWN**
   **UNITED STATES DISTRICT JUDGE**