| | |
|---|---|
| **NANCY MURILLO, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3641** |
| **CORYELL COUNTY TRADESMEN, LLC, et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiffs, approximately 160 individuals hired to work on a construction and renovation project located at 225 Baronne Street in New Orleans, Louisiana, allege that Defendants did not pay overtime wages or minimum wages in violation of the Fair Labor Standards Act ("FLSA").[1] Pending before the Court is Defendant Ronald Franks Construction Company, LLC's ('Ronald Franks') "Motion for Summary Judgment."[2] Having considered the motion, the memoranda in support and in opposition, and the applicable law, the Court will deny the motion.

## I. Background

### A.    *Factual Background*

This lawsuit arises from the renovation of a luxury hotel and apartment building in downtown New Orleans named "The Strand" at 225 Baronne Street ("the Project").[3] Plaintiffs allege that they are mostly migrant workers who performed the renovation work and were not paid

---

[1] Rec. Doc. 48; Rec. Doc. 52-1 at 1.

[2] Rec. Doc. 259.

[3] Rec. Doc. 48 at 3.

minimum wages or overtime wages while working "grueling" 70-hour workweeks.[4] Plaintiffs further contend that their recorded hours were often "adjusted" to reflect shorter work periods so that Defendants Roy Anderson Corporation ("Roy Anderson"), Ronald Franks, Coryell County Tradesmen ("CCT"), CC Labor, LLC ("CC Labor"), Paul Isaacks, Brandon Isaacks, and Brent Isaacks could pay them less.[5]

Defendants CCT and CC Labor are alleged to be two family-run construction companies owned by Defendants Paul Isaacks, Brandon Isaacks, and Brent Isaacks.[6] Defendant Roy Anderson is alleged to be one of the general contractors that employed Plaintiffs, and Ronald Franks and CCT were two of the subcontractors on the Project.[7] Defendant Travelers Casualty and Surety Company of America ("Travelers") is alleged to have contracted to pay the obligations of Roy Anderson with respect to the work done on the construction project at issue in this case.[8]

## B.    *Procedural Background*

Plaintiffs Nancy Murillo, Evelyn Mejia, Ambrocio Benito Castro, and Mechlor Acevedo filed a complaint on August 19, 2015, against Defendants CCT, CC Labor, Brandon Isaacks, Brent Isaacks, and Paul Isaacks.[9] With leave of Court, on February 18, 2016, Plaintiffs filed an amended complaint, adding additional plaintiffs and adding Ronald Franks, Roy Anderson, and Travelers

---

[4] *Id.* at 3–4.

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *Id.* at 5–6.

[8] *Id.* at 6–7.

[9] Rec. Doc. 1.

as Defendants.[10] Plaintiffs filed a second amended complaint, with leave of Court, on May 13, 2016.[11]

On July 12, 2016, Roy Anderson filed an answer to Plaintiffs' complaint and a crossclaim and third-party demand against Defendant Ronald Franks and Third-Party Defendant National American Insurance Company ("NAIC"), respectively.[12] On December 8, 2016, Roy Anderson and Travelers filed a counterclaim against Plaintiffs.[13]

On December 20, 2016, Ronald Franks filed its first motion for summary judgment.[14] On December 27, 2016, Plaintiffs filed an opposition pursuant to Federal Rule of Civil Procedure 56(d), in which Plaintiffs requested that the Court defer ruling on Ronald Franks' motion for summary judgment to allow Plaintiffs more time to conduct discovery.[15] On January 19, 2017, the Court denied Ronald Franks' motion for summary judgment without prejudice pursuant to Rule 56(d) of the Federal Rules of Civil Procedure in order to allow the parties additional time to conduct discovery.[16]

On April 24, 2017, Ronald Franks filed the instant motion for summary judgment,[17] in

---

[10] Rec. Doc. 19.

[11] Rec. Doc. 48.

[12] Rec. Doc. 92 at 15.

[13] Rec. Doc. 216.

[14] Rec. Doc. 221.

[15] Rec. Doc. 225.

[16] Rec. Doc. 240.

[17] Rec. Doc. 259.

which it argues that Plaintiffs have conducted the additional discovery requested and that a ruling on Ronald Franks' motion for summary judgment is therefore appropriate.[18] On May 2, 2017, Plaintiffs filed an opposition.[19] On May 9, 2017, with leave of Court, Ronald Franks filed a reply.[20] On May 18, 2017, with leave of Court, Plaintiffs filed a sur-reply.[21] On June 14, 2017, with leave of Court, Ronald Franks filed a supplemental reply.[22] On June 15, 2017, Plaintiffs filed a supplemental reply.[23]

## II. Parties' Arguments

### A. *Ronald Franks' Arguments in Support of the Motion for Summary Judgment*

In its motion, Ronald Franks argues that Plaintiffs cannot prove that Ronald Franks was either the Plaintiffs' employer or joint employer while working on the Project, and therefore summary judgment should be granted dismissing Plaintiffs' FLSA claims against Ronald Franks.[24] According to Ronald Franks, Defendant Roy Anderson, as the general contractor for the 225 Baronne Street Project, entered into three contracts with Ronald Franks to perform certain work on the Project as a subcontractor.[25] Thereafter, Ronald Franks avers that it entered into a sub-

---

[18] Rec. Doc. 259-1 at 3–4.

[19] Rec. Doc. 272.

[20] *See* Rec. Docs. 278, 305.

[21] Rec. Doc. 300.

[22] Rec. Doc. 316.

[23] Rec. Doc. 319.

[24] Rec. Doc. 259-1 at 1.

[25] *Id.* at 2.

subcontract with CCT for the same work set forth in Ronald Franks' subcontracts with Roy Anderson, and that CCT staffed the Project with workers contracted through CC Labor.[26] Ronald Franks asserts that subsequently, Roy Anderson became aware that CC labor did not possess the appropriate insurance for the Project, and so CCT began paying the workers directly rather than paying CC Labor.[27]

Ronald Franks contends that in order to bring a FLSA claim for unpaid overtime or a violation of minimum wage requirements, Plaintiffs must show the existence of an employer-employee relationship between Plaintiffs and Ronald Franks during the time in question.[28] Ronald Franks argues that under the four factor "economic reality" test established by the Fifth Circuit, Plaintiffs cannot show that Ronald Franks was their employer.[29] First, Ronald Franks avers that Plaintiff cannot show that Ronald Franks had the power to hire and fire them.[30] Ronald Franks asserts that it did not hire or fire any of the laborers for whom CCT contracted through CC Labor or another staffing agency, Rimax Contractors, Inc.[31] Ronald Franks points out that Plaintiffs repeatedly state in their Declarations that they were hired by CCT representatives, and do not state

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 5.

[29] *Id.* at 5–6. According to Ronald Franks, the four factors of the "economic reality" test are whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citing *Gray v. Powers*, 673 F.3d at 354–55 (5th Cir. 2012); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014)).

[30] *Id.* at 6.

[31] *Id.*

that Ronald Franks participated in the hiring process.[32]

Second, Ronald Franks asserts that Plaintiffs cannot establish that Ronald Franks supervised or controlled their work schedules or conditions of employment.[33] According to Ronald Franks, Roy Anderson created the master schedule for the Project that was followed by the subcontractors.[34] Ronald Franks contends that the daily start time for Plaintiffs "was dictated by when elevators were made available by the general contractor to take the workers to the floors on which the subcontractor needed to work."[35] Ronald Franks argues that Plaintiffs have no evidence that Ronald Franks participated in scheduling the Project or controlling the elevators, or otherwise supervising or controlling Plaintiffs' work schedules under CCT.[36] Ronald Franks points out that several Declarations filed by Plaintiffs in support of other motions make clear that they were supervised and controlled by CCT employees, and not by Ronald Franks.[37]

Third, Ronald Franks contends that Plaintiffs do not have evidence that Ronald Franks determined how much to pay Plaintiffs or their method of payment.[38] According to Ronald Franks, Defendant Brandon Issacks of CCT stated in his Declaration that Ronald Franks did not set the

---

[32] *Id.*

[33] *Id.* at 7.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 8.

[38] *Id.*

pay rate for workers contracted for by CCT through Rimax and CC Labor.[39] Moreover, Ronald Franks avers that Plaintiffs have testified that payments to all workers were made by CCT.[40] Fourth, Ronald Franks asserts that there is no evidence that it maintained any employment records for Plaintiffs.[41]

Furthermore, Ronald Franks argues that Plaintiffs have not shown that Ronald Franks was a joint employer of Plaintiffs.[42] Ronald Franks avers that the test for joint employer status is also the "economic reality" test, and, as stated *supra*, Ronald Franks contends that Plaintiffs cannot establish any of the four elements to demonstrate that Ronald Franks was a joint employer.[43]

### B. Plaintiffs' Arguments in Opposition to the Motion for Summary Judgment

In opposition, Plaintiffs argue that Ronald Franks' motion for summary judgment should be denied, because Plaintiffs contend that they have presented sufficient evidence that: (1) Ronald Franks was CCT's employer, and therefore was Plaintiffs' employer; and/or (2) that Ronald Franks was Plaintiffs' employer pursuant to the four factor "economic reality" test.[44] Plaintiffs aver that either theory is sufficient grounds to assert a FLSA claim against Ronald Franks and preclude summary judgment here.[45]

---

[39] *Id.*

[40] *Id.* at 9.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 9–10.

[44] Rec. Doc. 272 at 1.

[45] *Id.*

### a.      Ronald Franks as CCT's employer

First, Plaintiffs assert that Ronald Franks fails to recognize that it can be held liable under FLSA if Ronald Franks is found to be CCT's employer.[46] Plaintiffs contend that the Department of Labor published "Administrator's Interpretation No. 2016-1," which Plaintiffs argue recgonizes that an "intermediary employer," like CCT, can be the employee of a "higher-tiered subcontractor" and potential joint employer, like Ronald Franks, and thus all of the intermediary employer's employees are the employees of the potential joint employer too.[47] Plaintiffs argue that in order to determine if CCT is an employee of Ronald Franks, the Court must analyze their relationship under the "economic reality" test.[48]

According to Plaintiffs, Ronald Franks' "domination of the working relationship with CCT was so thorough, so complete," that they constituted CCT's "employer" under FLSA.[49] For example, Plaintiffs point out that Ronald Franks and CCT have worked on five jobs together over a five year period, and during this time Ronald Franks paid for all of CCT's office expenses for its office in Texas where CCT coordinates its jobs, only some of which also involve Ronald Franks.[50] In particular, Plaintiffs argue that Ronald Franks paid for: (1) CCT's office expenses, including office supplies, computer software, water and electric bills, telephones, internet, and trash removal;

---

[46] *Id.*

[47] *Id.* at 6 (quoting Administrator's Interpretation No. 2016-1 (Dep't of Labor Jan. 20, 2016)).

[48] *Id.* at 6–7.

[49] *Id.* at 1.

[50] *Id.*

(2) a salary set by Ronald Franks for CCT management; (3) weekly labor costs for CCT's workers; (4) CCT's general liability, worker's compensation, and health insurance plans; and (5) apartments, airfare, and luggage expenses for CCT.[51]

Plaintiffs also contend that Ronald Franks received a daily email with the clock-in and clock-out times of each Plaintiff and that Ronald Franks had the right to question or reduce the hours of Plaintiffs.[52] According to Plaintiffs, CCT was dependent on Ronald Franks to provide week-to-week infusions of cash without which CCT could not pay Plaintiffs, and that Ronald Franks could determine how often CCT would be paid.[53] Plaintiffs point out that Ronald Franks had the power to command CCT to not bring workers to the jobsite, which Plaintiffs allege was used during disputes between Ronald Franks and Roy Anderson.[54] Plaintiffs aver that CCT would report daily to Ronald Franks' management during the Project at issue, and that Ronald Franks kept their own project manager onsite to also report daily to Ronald Franks' management.[55] Plaintiffs contend that Ronald Franks and CCT also shared attorneys to represent them in issues involving the Project.[56]

Moreover, Plaintiffs argue that none of these items were governed by the subcontract between Ronald Franks and CCT, and that Ronald Franks continued to pay for all of these items

---

[51] *Id.* at 2–3.

[52] *Id.* at 4.

[53] *Id.* at 4–5.

[54] *Id.* at 4.

[55] *Id.*

[56] *Id.* at 5.

"even after the contract price for the 'subcontract' was exhausted" almost one year before the Project was completed.[57] Plaintiffs also aver that CCT did not have a Louisiana contractor's license and thus could not work on the Project without Ronald Franks.[58] Plaintiffs assert that it is immaterial to this issue that Plaintiffs were unaware of Ronald Franks' role in the Project, as it is the relationship between CCT and Ronald Franks that governs whether Plaintiffs can be considered "employees" of Ronald Franks.[59] Thus, Plaintiffs assert that they have produced sufficient evidence to show that Ronald Franks was CCT's employer under the "economic reality" test, and thus Ronald Franks was Plaintiffs' employer.[60]

**b.    Ronald Franks as "joint employer" of Plaintiffs**

Additionally, Plaintiffs argue that Ronald Franks is also liable under the additional "economic reality" theory that Ronald Franks was the "joint employer" of Plaintiffs.[61] First, Plaintiffs assert that although Ronald Franks could not "physically run a Plaintiff [off] the job," Ronald Franks "exerted considerably more influence from afar" on the hiring and firing of Plaintiffs.[62] For example, Plaintiffs point out that Ronald Franks could "simply not pay a particular Plaintiff," and that without Ronald Franks' weekly cash infusions, CCT could not pay any

---

[57] *Id.*

[58] *Id.*

[59] *Id.* at 7–8.

[60] *Id.* at 7.

[61] *Id.* at 8.

[62] *Id.*

Plaintiff.[63] Second, Plaintiffs contend that Ronald Franks' control of the cash flow with CCT created a power to control Plaintiffs' work schedules and conditions of employment.[64] According to Plaintiffs, Ronald Franks "sometimes told CCT to pull all workers off of the job," and that Ronald Franks dictated to CCT when they wanted more manpower on the job.[65] Plaintiffs assert that CCT acknowledged that Ronald Franks could do so because "CCT works for [Ronald Franks]."[66] Plaintiffs allege that Ronald Franks also had a supervisor onsite monitoring the names and number of CCT workers to compare to the daily clock-in and clock-out reports Ronald Franks would receive.[67]

Third, Plaintiffs state that while CCT may have controlled the rate of pay for each Plaintiff, Ronald Franks controlled the weekly budget allocated to CCT and the timing of the payments to Plaintiffs.[68] Plaintiffs point to multiple emails between CCT and Ronald Franks that Plaintiffs argue show that CCT was "constantly at the mercy of [Ronald Franks'] decision to release funding or send checks."[69] According to Plaintiffs, Ronald Franks "also requested the check register for the checks issued to CCT's employees," and CCT could not bankroll the weekly pay of Plaintiffs without

---

[63] *Id.* at 8–9.

[64] *Id.* at 9.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at 10.

Ronald Franks.[70]

Fourth, Plaintiffs contend that Ronald Franks did maintain some employment files on Plaintiffs, as Ronald Franks received daily reports of each Plaintiffs' hours on the job.[71] Moreover, Plaintiffs argue that Ronald Franks received weekly reports outlining Plaintiffs' rate of pay, their hours worked, and their employee ID numbers.[72] Plaintiffs aver that Ronald Franks also dictated how CCT administered their payroll, as evidenced by Ronald Franks' demand that CCT move its employees from working under CC Labor to CCT itself.[73]

In sum, Plaintiffs argue that the Fifth Circuit has recognized that the definition of "employer" is expansive, and that it prevents those who exert actual control over a worker's employment from skirting FLSA by using middlemen and subcontractors to violate wage laws.[74]

**C.      *Ronald Franks' Arguments in Further Support of the Motion for Summary Judgment***

In its reply, Ronald Franks first argues that Plaintiffs failed to properly authenticate most of their exhibits attached to their opposition memorandum, and therefore they should be stricken by the Court.[75] Second, Ronald Franks contends that the Administrator's Interpretation issued by the United States Department of Labor does not create a new theory of liability, but merely

---

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.* at 11.

[75] Rec. Doc. 305 at 1.

addresses issues of joint employment.[76]

### a. Ronald Franks as CCT's employer

Third, Ronald Franks avers that Plaintiffs "scatter around a lot of random facts" but have not established that Ronald Franks was either CCT or Plaintiffs' "employer" under FLSA.[77] According to Ronald Franks, the subcontract between Ronald Franks and CCT required CCT to submit weekly invoices to Ronald Franks for payroll and materials.[78] Ronald Franks asserts that delays on the Project caused the costs of performance to exceed the original contract amount, which forced Ronald Franks to pay for CCT's expenses related to the Project so that CCT could perform the contract and stay in business.[79] If CCT defaulted, Ronald Franks contends, it could have resulted in significantly increased costs to Ronald Franks.[80]

Ronald Franks argues that while it did pay CCT a lump sum amount for its overhead expenses, it did not pay those expenses directly or tell CCT where to obtain its materials and services.[81] Ronald Franks points out that Brandon Isaacks of CCT testified that he was not a W-2 employee of Ronald Franks, and that he was not paid directly by Ronald Franks; rather, Ronald Franks issue a check to CCT, and CCT thereafter issue a check to Brandon Isaacks.[82]

---

[76] *Id.* at 2.

[77] *Id.* at 3.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 3–4.

[81] *Id.* at 4.

[82] *Id.*

### b.    Ronald Franks as "joint employer" of Plaintiffs

Next, with regard to the first factor under the "economic reality" test, Ronald Franks asserts that Plaintiffs acknowledge that Ronald Franks could not hire or fire Plaintiffs, and instead rely on an argument that Ronald Franks could choose to not pay Plaintiffs.[83] However, Ronald Franks argues that there is no evidence that Ronald Franks directly paid any Plaintiffs or ever controlled whether any Plaintiff got paid.[84] According to Ronald Franks, "[w]hile it is correct that [Ronald Franks] paid CCT on a weekly basis for its labor costs incurred, the mere fact that if [Ronald Franks] did not pay CCT, there might not be enough money for CCT to pay its workers, does not mean that RFC had the ability to fire any individual workers."[85] Ronald Franks points to the affidavit of Jaime Franks, a manager of Ronald Franks, and Brandon Issacks of CCT, which Ronald Franks argues shows that it did not have the power to hire or fire Plaintiffs.[86]

With regard to the second factor, Ronald Franks asserts that Plaintiffs have not offered any evidence that Ronald Franks controlled Plaintiffs' work schedules or conditions of employment.[87] Ronald Franks avers that the one situation pointed to by Plaintiffs when Ronald Franks directed CCT to pull its workers off the job was because Roy Anderson had stopped paying Ronald Franks, and Ronald Franks halted work on the Project.[88] Moreover, Ronald Franks contends that the

---

[83] *Id.* at 5.

[84] *Id.* a

[85] *Id.* at 5–6.

[86] *Id.* at 6.

[87] *Id.*

[88] *Id.*

presence of its employee on the Project site to monitor the number of workers does not establish that Ronald Franks controlled the work schedules or employment conditions of Plaintiffs.[89] Ronald Franks argues that Plaintiffs also rely on evidence of emails between CCT and Ronald Franks, but that because these were not properly authenticated, the Court should disregard this evidence.[90]

With regard to the third factor, Ronald Franks contends that Plaintiffs "essentially concede that [Ronald Franks] did not determine the rate and method of pay for" Plaintiffs, and Plaintiffs have not offered any evidence that Ronald Franks established a weekly labor budget for CCT.[91] Rather, Ronald Franks argues that, pursuant to the terms in the subcontract, Ronald Franks merely paid CCT for its labor and materials costs on a weekly basis, and thus Ronald Franks avers it did not, as Plaintiffs suggest, control how often CCT would pay Plaintiffs.[92] Ronald Franks again contends that Plaintiffs rely on a number of unauthenticated emails between Ronald Franks and CCT in support of Plaintiffs' argument that Ronald Franks controlled the rates and methods of pay, and that these exhibits should be stricken.[93]

Finally, Ronald Franks argues that, "[w]hile it is true that . . . [Ronald Franks] received a daily email generated by CCT's time tracking system with clock-in and clock-out reports," this does not constitute maintaining employment files under the fourth prong of the economic realities

---

[89] *Id.* at 7.

[90] *Id.*

[91] *Id.*

[92] *Id.* at 8.

[93] *Id.*

test.[94] Ronald Franks asserts that there is no evidence that Ronald Franks controlled any documents typically associated with employment files, such as job applications, social security cards, IDs, and tax information.[95] Ronald Franks avers that Plaintiffs only offer unauthenticated evidence that Ronald Franks ordered CCT to move its employees from under CC and CCT or that Ronald Franks received weekly reports of Plaintiffs' rate of pay, hours worked, and employee ID numbers, and therefore that evidence should be disregarded.[96]

### D.    *Plaintiffs' Arguments in Further Opposition to the Motion*

In their sur-reply, Plaintiffs point out that Ronald Franks' request to strike Plaintiffs' exhibits relies on an old version of Federal Rule of Civil Procedure 56, and that, following a 2010 amendment, summary judgment evidence no longer needs to be authenticated.[97] According to Plaintiffs, Rule 56 only requires that "materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence."[98] Here, Plaintiffs argue that the evidence to which Ronald Franks objects as unauthenticated, such as emails, text messages, and deposition testimony, can all easily be authenticated at trial by witness testimony and are admissible under Federal Rule of Evidence 901.[99]

Next, Plaintiffs assert that they did not offer the Department of Labor's Administrator's

---

[94] *Id.* at 8–9.

[95] *Id.* at 9.

[96] *Id.*

[97] Rec. Doc. 300 at 1.

[98] *Id.* (citing *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)).

[99] *Id.* at 1–2.

Interpretation as a "new theory," but rather as further authority related to the definition of the ambiguous term "employ" under FLSA.[100] Plaintiffs contend it is appropriate to defer to an agency's reasonable interpretation of ambiguous statutes.[101]

## E.    *Ronald Franks' Arguments in Further Support of the Motion*

In response, Ronald Franks points out that the Department of Labor's Administrator's Interpretation No. 2016-1 cited by Plaintiffs was withdrawn by the Secretary of Labor on June 7, 2017.[102] Moreover, Ronald Franks contends that the Administrator's Interpretation No. 2016-1 was promulgated after this litigation began and does not apply retroactively.[103] Therefore, Ronald Franks argues that it should not be considered by the Court here.[104]

Ronald Franks concedes that Plaintiffs "are correct" that Ronald Franks' arguments on the authentication of evidence relied on the standards for summary judgment used prior to the 2010 amendments to Rule 56.[105] Nonetheless, Ronald Franks argues that even considering Plaintiffs' evidence, Plaintiffs have not shown that Ronald Franks was their employer or joint employer.[106] Ronald Franks contends that Plaintiffs' evidence does not support the propositions asserted by

---

[100] *Id.* at 2.

[101] *Id.* at 3.

[102] Rec. Doc. 316 at 1–2.

[103] *Id.* at 2 (citing *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 401 (5th Cir. 2010)).

[104] *Id.*

[105] *Id.*

[106] *Id.*

Plaintiffs.[107] For example, Ronald Franks avers that in support of Plaintiffs' proposition that Ronald Franks would have a supervisor onsite monitoring the names and numbers of CCT workers and comparing it to the daily clock-in and clock-out reports, Plaintiffs only cite to an email from Ronald Franks that states "our guy on site needs a copy of the sign in sheet daily."[108] Regardless, Ronald Franks argues, this does not show that Ronald Franks controlled Plaintiffs' work schedule or conditions of employment.[109]

Ronald Franks contends that while Plaintiffs' evidence shows that Ronald Franks requested the check register for the checks issued to CCT's employees, it does not show that Ronald Franks ever received the check register, or how this demonstrates that Ronald Franks determined Plaintiffs' rates and method of pay.[110] Similarly, Ronald Franks argues that Plaintiffs' evidence does not support the assertion that Ronald Franks ordered CCT to move employees from CC Labor to CCT, as the email evidence only shows that it was Ronald Franks' understanding that the workers had been switched over to CCT already.[111] Moreover, Ronald Franks avers that this evidence does not show that Ronald Franks maintained employment files for Plaintiffs.[112]

## F.  *Plaintiffs' Arguments in Further Opposition to the Motion*

In response, Plaintiffs assert that the withdrawal of the Department of Labor's 2016

---

[107] *Id.* at 3.

[108] *Id.*

[109] *Id.* at 4.

[110] *Id.*

[111] *Id.* at 5.

[112] *Id.*

Administrator's Interpretation by the current administration does not change Plaintiffs' theory that they were employed by Ronald Franks.[113] Plaintiffs aver that the main reason they cited to one paragraph of a fifteen-page Administrator's Interpretation is because it happened to use a hypothetical example that reflects the exact relationship between CCT and Ronald Franks, *i.e.* "a drywall subcontractor [that] is not actually an independent contractor but is an employee of [a] higher-tier contractor."[114] Plaintiffs assert that this one paragraph discussed the idea of a single shared employer rather than a joint employer, and thus the withdrawal of an Administrator's Interpretation that dealt with joint employment does not affect Plaintiffs' arguments here based on Fifth Circuit case law.[115]

For example, Plaintiffs assert that in *Castillo v. Givens*, the Fifth Circuit found that a farm owner who had contracted with a separate individual to provide the farm owner with laborers was the employer of the laborers too.[116] There, Plaintiffs argue that the Fifth Circuit held that if the middleman was the employee of the farm owner, then the plaintiff field workers were also the farm owner's employees.[117] According to Plaintiffs, the Fifth Circuit noted that the farm owner did not pay the middleman enough for the middleman himself to pay the workers' minimum wage: "The economic reality of the situation was that the workers were dependent upon defendant—not [the

---

[113] Rec. Doc. 319 at 1.

[114] *Id.*

[115] *Id.* at 2.

[116] *Id.* (citing *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983)).

[117] *Id.* at 3.

middleman]—to pay them the minimum wage."[118]

Here, Plaintiffs argue that they have presented evidence that CCT was powerless to pay Plaintiffs without Ronald Franks' funds, and thus if Ronald Franks did not pay overtime, then CCT could not either.[119] According to Plaintiffs, Ronald Franks could also immediately demand that all CCT laborers halt work on the Project, and without Ronald Franks' contractor's license, CCT could not have worked on the Project.[120] Plaintiffs assert that Ronald Franks' argument disputing the interpretations of the evidence provided underscores the fact that there are disputed issues of material fact here precluding summary judgment. [121]

### III. Law and Analysis

*A.*    *Legal Standard for Motions for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[122] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[123] All reasonable inferences are drawn in favor of the nonmoving party,

---

[118] *Id.*

[119] *Id.* at 4.

[120] *Id.*

[121] *Id.*

[122] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[123] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[124] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[125] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[126]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[127] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[128] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[129] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by

---

[124] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[125] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[126] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[127] *Celotex*, 477 U.S. at 323.

[128] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[129] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

"unsubstantiated assertions," or "by only a scintilla of evidence."[130] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[131]

## B.    Analysis

In its motion for summary judgment, Ronald Franks argues that Plaintiffs cannot demonstrate that Ronald Franks was Plaintiffs' "employer" under the "economic reality" test, and therefore Plaintiffs' claims under FLSA against Ronald Franks should be dismissed.[132] In opposition, Plaintiffs argue that they have presented sufficient evidence to create genuine issues of material fact under two applicable theories that, according to Plaintiffs, permit them to assert a FLSA claim against Ronald Franks: (1) that Ronald Franks was the employer of CCT and therefore was also the employer of Plaintiffs; and/or (2) that Ronald Franks was Plaintiffs' employer for purposes of FLSA under the four factor "economic reality" test.[133] As stated *infra*, because the Court finds that Plaintiffs have presented sufficient evidence that Ronald Franks constituted Plaintiffs' employer pursuant to the "economic reality" test to defeat Ronald Franks' motion for

---

[130] *Little*, 37 F.3d at 1075.

[131] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[132] Rec. Doc. 259-1 at 1.

[133] Rec. Doc. 272 at 1.

summary judgment on the same issue, the Court need not address Plaintiffs' additional argument that Ronald Franks constitutes CCT's employer.

Additionally, as a preliminary matter, the Court notes that Ronald Franks initially argued that the exhibits attached to Plaintiffs' opposition are unauthenticated and therefore should not be considered by the Court here.[134] However, as Ronald Franks subsequently conceded,[135] Federal Rule of Civil Procedure 56(c)(2) provides that a party "may object that the material cited to support or dispute a fact cannot be presented *in a form that would be admissible* in evidence."[136] Here, Plaintiffs' exhibits, such as witness depositions and emails between Defendants, could each be authenticated at trial and presented in a form that would be admissible in evidence. Accordingly, the Court finds that consideration of Plaintiffs' exhibits here is proper.

In general, FLSA requires certain covered employers to pay their employees a minimum wage and provide overtime wages.[137] FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee,"[138] and an "employee" as "any

---

[134] Rec. Doc. 305 at 1.

[135] *See* Rec. Doc. 316 at 2 (Ronald Franks acknowledging that "Plaintiffs are correct that" their objections regarding the authenticity of Plaintiffs' exhibits were "based on the standards applicable to summary judgment prior to the 2010 amendments to Federal Rule of Civil Procedure 56").

[136] Fed. R. Civ. P. 56(c)(2) (emphasis added).

[137] *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

[138] 29 U.S.C. § 203(d).

individual employed by an employer."[139] The Supreme Court has instructed that the FLSA's definition of "employer" is to be interpreted expansively.[140]

In the Fifth Circuit, courts apply the "economic reality" test to determine whether an employer/employee relationship exists for the purposes of FLSA.[141] To determine whether an entity is considered an "employer" under FLSA, courts must consider whether the alleged employer: "(1) possessed the power to hire and fire the employees;" (2) "supervised and controlled employee work schedules or conditions of employment;" (3) "determined the rate and method of payment;" and (4) "maintained employment records."[142] The Fifth Circuit has held that the "touchstone of economic reality in analyzing a possible employee/employer relationship for purposes of FLSA is dependency."[143] When more than one potential employer is at issue, the economic reality test is applied to each potential employer individually to determine if that individual or entity satisfies the test.[144] No one factor is necessarily determinative, but the absence of all factors is fatal to the inquiry of whether an employment relationship exists.[145] Whether a

---

[139] 29 U.S.C. § 203(e)(1).

[140] *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

[141] *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)); *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012).

[142] *Gray*, 673 F.3d at 355 (quoting *Williams*, 595 F.3d at 620).

[143] *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979).

[144] *Id.*

[145] *Gray*, 673 F.3d at 357; *Nieto,* 2016 WL 6962513, at *9; *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) ("However, a party need not establish each element in every case."); *Gil v. De Laune Drilling Serv., Ltd.*, No. 16-71, 2016 WL 5394261, at *2 (S.D. Tex. Sept. 27, 2016) (denying motion for summary judgment on the issue of employer

party is an employer for purposes of the FSLA is "essentially a question of fact."[146]  The Court will now proceed to discuss each factor in turn.

### a.      Power to hire and fire the employees

With regard to the first factor of whether Ronald Franks had the power to hire and fire Plaintiffs, Plaintiffs appear to concede that Ronald Franks "may not have been present at the Project to physically run a Plaintiff [off] the job," but argue that Ronald Franks "exerted considerably more influence from afar."[147] In support of this contention, Plaintiffs point to evidence of CCT's dependence on Ronald Franks' weekly cash infusions to pay their overhead and labor costs, which Plaintiffs contend means that Ronald Franks had the power to "simply not pay a particular Plaintiff" or to stop providing CCT with funds each week, "without which no one would be paid."[148] In response, Ronald Franks argues that this "does nothing to establish that [Ronald Franks] had the ability to hire and fire the plaintiffs," and point out that Plaintiffs acknowledged that both Ronald Franks and CCT submitted affidavits stating that Ronald Franks did not have the power to fire Plaintiffs.[149] Ronald Franks avers that "[w]hile it is correct that

---

status when at least two factors under the "economic reality" test support a finding that the defendant was a FLSA employer during the relevant time period).

[146] *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983).

[147] Rec. Doc. 272 at 8.

[148] *Id.* at 8–9.

[149] Rec. Doc. 305 at 5.

[Ronald Franks] paid CCT on a weekly basis for its labor costs incurred," that does not mean that Ronald Franks had the power to fire any individual workers.[150]

Here, the Court notes that Plaintiffs do not provide any direct evidence that Ronald Franks had the power to hire and fire Plaintiffs, and instead appear to rely on the argument that CCT's dependence on Ronald Franks' weekly payments to cover CCT's labor costs supports a finding that Ronald Franks could have fired Plaintiffs by not paying them.[151] However, even assuming Ronald Franks is correct that this is insufficient evidence to create a genuine dispute of material fact on the issue of whether Ronald Franks had the power to hire and fire Plaintiffs, it is not fatal to Plaintiffs' FLSA claims against Ronald Franks, as no one factor in the "economic reality" test is determinative. Rather, as discussed *infra*, Plaintiffs have presented sufficient evidence on the remaining three factors of the "economic reality" test to preclude summary judgment.

### b.  Supervise and control work schedules or conditions of employment

With regard to the second factor, Plaintiffs have pointed to evidence that Ronald Franks had the power to supervise and control Plaintiffs' work schedules or conditions of employment.[152] In particular, Plaintiffs have pointed to evidence that Ronald Franks had the power to demand that all Plaintiffs stop working on the Project.[153] Plaintiffs also attach an email from Brent Isaacks of CCT to Ronald Franks, in which Brent Isaacks informs Ronald Franks that Roy Anderson was

---

[150] *Id.* at 5–6.

[151] *See* Rec. Doc. 272 at 8 (Plaintiffs arguing that Ronald Franks "could simply not pay a particular Plaintiff" or stop paying all of CCT's labor costs).

[152] Rec. Doc. 272 at 9.

[153] *Id.*

requesting that CCT complete additional work that "needs to happen quickly," but that "we work for you so I need direction from you as how to proceed . . . Please advise as I will need to redirect my manpower early Monday morning."[154] Plaintiffs also point to emails from Jaime Franks of Ronald Franks, which states that "[Ronald Franks] is directing CCT to proceed with the correction of the work . . . [if] the owner or the owner's representative issues any compensation or time associated with the work, [Ronald Franks] will then issue a change order to CCT for its equitable portion."[155] Plaintiffs also provide evidence that Ronald Franks had a supervisor onsite on the Project who requested "a copy of the sign in sheet daily."[156]

Plaintiffs further contend that Roy Anderson "reserved the right to dispute the hours of the workers" after reviewing the payroll invoices as compared to its on-site supervisor's notes.[157] Moreover, the Court notes that, in opposition, Ronald Franks concedes that the deposition testimony shows that Ronald Franks directed CCT to pull all its workers off the job during a dispute between Ronald Franks and Roy Anderson, but argues that this does not establish that Ronald Franks controlled the work schedules or conditions of employment for Plaintiffs.[158]

Here, the Court finds that Plaintiffs have pointed to sufficient evidence to create a genuine dispute of material fact regarding whether Ronald Franks had the power to supervise and control

---

[154] *See* Rec. Doc. 272-13 at 1.

[155] Rec. Doc. 272-15 at 1.

[156] Rec. Doc. 272-14 at 1.

[157] Rec. Doc. 272 at 9 n.48.

[158] Rec. Doc. 305 at 6.

Plaintiffs' work schedules or conditions of employment. For example, Plaintiffs have pointed to sufficient evidence that Ronald Franks: (1) had the authority to order Plaintiffs to stop working, such as during a separate dispute between Ronald Franks and Roy Anderson; (2) determined what work CCT and Plaintiffs would do and if Plaintiffs would complete new assignments requested by Roy Anderson; and (3) monitored Plaintiffs on the job and their daily sign-in and sign-out times. While Ronald Franks disputes the weight or importance of the evidence Plaintiffs have cited, the Court cannot weigh evidence or make credibility determinations on a motion for summary judgment.[159] Thus, the Court finds that Plaintiffs have produced sufficient evidence to permit a reasonable fact finder to determine that this factor weighs in favor of a finding that Ronald Franks was Plaintiffs' "employer" for the purposes of FLSA.

### c. Determine the rate and method of payment

With regard to the third factor, Plaintiffs have also presented sufficient evidence that Ronald Franks determined the rate and method of payment to Plaintiffs. In particular, Plaintiffs have presented evidence that Ronald Franks covered all of CCT's labor costs on the Project, which includes Plaintiffs' work, and that CCT was dependent on receiving Ronald Franks' weekly cash infusions before CCT could pay Plaintiffs for their labor as required by FLSA.[160] For example, Plaintiffs point out that Brandon Isaacks stated in his deposition that CCT could not cover any payroll for the Project without Ronald Franks' financial assistance.[161] Likewise, Plaintiffs attach

---

[159] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[160] Rec. Doc. 272 at 9–10.

[161] Rec. Doc. 272-2 at 23.

email correspondence between representatives of Ronald Franks and CCT, in which Ronald Franks raised concerns that CCT is "overbilling [Ronald Franks] for labor" and requested a "check register for labor checks written as well as a breakdown of each employee's check amount," and that "[a]ll of the employees are supposed to be on CCT payroll per the attached email, not subcontracted."[162] Additionally, an email indicates that Ronald Franks required CCT to send "a copy of each check written by CCT for the Baronne project, including for each laborer that is on the project, and that verification of the checks delivered to the jobsite be performed by [Ronald Franks'] representative on site . . . I am requesting prior to paying this week's labor invoice and future invoices that [Ronald Franks'] on-site representative visually inspect and manually calculate the total amount of the checks . . . this will be required to be done prior to [Ronald Franks] issuing this week's check. Also, please provide the hourly wage for each employee that is paid hourly."[163] In Plaintiffs argue that this shows that CCT was "constantly at the mercy of [Ronald Franks'] decision to release funding or send checks," and that "CCT was not able to bankroll the weekly pay of Plaintiffs itself."[164]

In response, Ronald Franks argues that Plaintiffs "essentially concede" that CCT controlled the rate of pay of Plaintiffs, and that there is "no evidence in the record that could be fairly characterized" that Ronald Franks determined how often CCT would be paid.[165] Rather, Ronald

---

[162] Rec. Doc. 272-16 at 1.

[163] *Id.*

[164] Rec. Doc. 272 at 10.

[165] Rec. Doc. 305 at 7.

Franks contends that the subcontract required Ronald Franks to pay CCT's labor and materials costs on a weekly basis.[166] However, considering the evidence presented by Plaintiffs, the Court finds that Plaintiffs have pointed to sufficient evidence to create a genuine issue of material fact regarding whether Ronald Franks determined the rate and method of payment to Plaintiffs. In particular, the Court notes that Plaintiffs have presented evidence that Ronald Franks controlled the funds provided to CCT and paid all labor costs for Plaintiffs' work, disputed some of CCT's requests for labor costs, and required CCT to provide the daily sign in sheets to their on-site supervisor, reviewed the requested hours of each Plaintiff against their own notes, and required CCT to gain Ronald Franks' approval of each check issued to Plaintiffs prior to paying Plaintiffs and before Ronald Franks would pay CCT.[167] In other words, Plaintiffs' evidence supports their argument that Ronald Franks was substantially involved in compensating Plaintiffs and ultimately determining when and how much Plaintiffs were paid by reviewing Plaintiffs' hours, clock-in and clock-out times, and check amounts, as well as controlling the dispersal of the very funds that were used to pay Plaintiffs.

Indeed, the Court finds the Fifth Circuit's analysis in *Castillo v. Givens* analogous here.[168] In *Castillo*, the Fifth Circuit found a farm owner to be an "employer" under FLSA despite his claim that a third party hired and paid the laborers and that the farm owner did not control the farm

---

[166] *Id.* at 7–8.

[167] *See* Rec. Doc. 272 at 10.

[168] *Castillo v. Givens*, 704 F.2d 181, 188 (5th Cir. 1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

workers' pay or hours.[169] The Fifth Circuit opined that "[o]f particular importance is the fact that [the farm owner] did not pay [the third party] enough for [the third party] himself to pay the workers minimum wage; it was therefore impossible for [the third party] to comply with the FLSA . . . The economic reality of the situation was that the workers were dependent upon [the farm owner]—not [the third party]—to pay them the minimum wage."[170] Similarly here, Plaintiffs have presented sufficient evidence that Ronald Franks exercised significant control over Plaintiffs' compensation for the hours they worked, and that, if Ronald Franks did not pay CCT's labor costs, CCT would have been unable to compensate Plaintiffs for their labor.[171] Thus, the Court finds that Plaintiffs' evidence could permit a reasonable fact finder to determine that this factor weighs in favor of a finding that Ronald Franks was Plaintiffs' "employer" for the purposes of FLSA.

### d.     Maintain employment records

With regard to the fourth factor, Plaintiffs have also presented sufficient evidence that Ronald Franks maintained at least some employment records for Plaintiffs. Plaintiffs point out that Ronald Franks received daily reports of each Plaintiffs' hours on the job, and a weekly report outlining Plaintiffs' rate of pay, hours worked, and employee ID numbers.[172] Plaintiffs also point to emails from Ronald Franks requesting that CCT provide a check register for labor checks and a breakdown of each Plaintiffs' check amount, and emails from Ronald Franks stating that "[a]ll of

---

[169] *Id.* at 183–84, 188–89.

[170] *Id.* at 192.

[171] *See* Rec. Doc. 272-2 at 23.

[172] *Id.*

the employees are supposed to be on CCT payroll per the attached email, not subcontracted," and that it was Ronald Franks' "understanding from the attached letter that all employees had been transferred to CCT by 9/12/14."[173] Plaintiffs argue that this demonstrates that Ronald Franks maintained employment files and directed CCT on how to administer their payroll.[174]

In response, Ronald Franks argues that passively receiving reports does not constitute maintaining employment files, and Ronald Franks contends that Plaintiffs have not pointed to evidence that Ronald Franks "maintained any of [the] documents typically associated with employment files, such as job applications, social security cards, identification, employment eligibility verifications, requests for taxpayer identification numbers, state and federal tax withholding forms, etc."[175] However, Ronald Franks provides no case law or authority that Plaintiffs must point to these specific documents to establish that Ronald Franks maintained employment records on Plaintiffs. Instead, Ronald Franks' argument appears to go to the weight and credibility of Plaintiffs' evidence, rather than showing that there is no genuine dispute of material fact that Ronald Franks did not maintain any employment files for Plaintiffs.

Here, considering the evidence presented by Plaintiffs under the standards appropriate for a Rule 56 motion for summary judgment, the Court finds that Plaintiffs have pointed to sufficient evidence to create a genuine issue of material fact regarding whether Ronald Franks maintained employment records here. In particular, the Court notes that Plaintiffs have presented evidence

---

[173] *See* Rec. Docs. 272-16, 272-20.

[174] Rec. Doc. 272 at 10.

[175] Rec. Doc. 305 at 9.

that Ronald Franks requested and received documents on a daily and weekly basis for each Plaintiff, including daily sign-in and sign-out times, rate of pay, hours worked, employee ID numbers, and breakdowns of each Plaintiff's check amounts, and that Ronald Franks used the daily reports provided by CCT to "compare the names" against other reports created by the onsite supervisor using the sign in sheets,[176] all of which could be considered by a factfinder as evidence that Ronald Franks maintained "employment records." Thus, the Court finds that Plaintiffs' evidence could permit a reasonable fact finder to determine that this factor weighs in favor of a finding that Ronald Franks was Plaintiffs' "employer" for the purposes of FLSA.

### e. Dependence on Ronald Franks

Finally, the Court notes that, as stated *supra*, the Fifth Circuit has held that the "touchstone of economic reality in analyzing a possible employee/employer relationship for purposes of FLSA is dependency."[177] Indeed, the Fifth Circuit has further held that an individual is an employer if he "independently exercised control over the work situation."[178] Here, Plaintiffs have pointed to sufficient evidence in support of their argument that Ronald Franks exercised considerable control and power over Plaintiffs' work situations, schedules, assignments, compensation, certain employment records, and employment generally such that Plaintiffs could be considered dependent on Ronald Franks for purposes of the employee-employer analysis under FLSA.

---

[176] *See, e.g.*, Rec. Doc. 272 at 9; Rec. Doc. 272-3 at 12–13.

[177] *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979).

[178] *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)),

In sum, the Court finds that Plaintiffs have provided sufficient evidence on the four factor "economic reality" test to show that there are genuine issues of material fact regarding whether Ronald Franks was Plaintiffs' "employer" for purposes of FLSA.[179] By contrast, Ronald Franks has not shown that all the factors of the "economic reality" test are absent here or that they each weigh against a finding of an employee-employer relationship. In other words, Ronald Franks has not shown that there are no genuine disputes of material fact that Ronald Franks is not Plaintiffs' "employer" under FLSA such that summary judgment on this issue is proper. Indeed, the Court notes that many of Ronald Franks' arguments go to the weight or credibility of Plaintiffs' evidence, rather than the absence of genuine disputes of material fact.[180] Therefore, because Plaintiffs have pointed to sufficient evidence to show that an employment relationship existed between Plaintiffs and Ronald Franks, the Court hereby denies Ronald Franks' motion for summary judgment.

## IV. Conclusion

Based on the foregoing, the Court concludes that Plaintiffs have pointed to sufficient evidence on at least three of the four factors of the "economic reality" test to show that there are genuine issues of material fact regarding whether Ronald Franks was Plaintiffs' "employer" for

---

[179] *Gray*, 673 F.3d at 357 (noting that not all factors are required to establish that a defendant is an employer for purposes of FLSA; *Nieto*, 2016 WL 6962513, at *9 (same); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) ("However, a party need not establish each element in every case."); *Gil v. De Laune Drilling Serv., Ltd.*, No. 16-71, 2016 WL 5394261, at *2 (S.D. Tex. Sept. 27, 2016) (denying motion for summary judgment on the issue of employer status when at least two factors under the "economic reality" test support a finding that the defendant was a FLSA employer during the relevant time period).

[180] *See, e.g.*, *Guyton v. Legacy Pressure Control*, No. 15-1075, 2017 WL 244868, at *5 (W.D. Tex. Jan. 18, 2017) (denying cross motions for summary judgment when the parties' arguments would require the court to weigh the evidence to determine whether the defendants should be considered employers under FLSA) .

purposes of FLSA. By contrast, Ronald Franks has not shown that there are no genuine disputes of material fact that Ronald Franks is not Plaintiffs' "employer" under FLSA or that no fact finder could determine that an employment relationship existed between Ronald Franks and Plaintiffs. Accordingly,

**IT IS HEREBY ORDERED** that Ronald Franks' "Motion for Summary Judgment"[181] is **DENIED**.

**NEW ORLEANS, LOUISIANA** this 27th day of June, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[181] Rec. Doc. 259.