| | |
|---|---|
| **NANCY MURILLO, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3641** |
| **CORYELL COUNTY TRADESMEN, LLC, et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiffs, approximately 160 individuals hired to work on a construction and renovation project located at 225 Baronne Street in New Orleans, Louisiana, allege that Defendants did not pay overtime wages or minimum wages in violation of the Fair Labor Standards Act ("FLSA").[1] Pending before the Court is Defendant Roy Anderson Corporation's ("Roy Anderson") "Motion for Summary Judgment" arguing that Roy Anderson was not Plaintiffs' employer or joint employer under FLSA.[2] Having considered the motion, the memoranda in support and in opposition, and the applicable law, the Court will deny the motion.

## I. Background

### A.    *Factual Background*

This lawsuit arises from the renovation of a luxury hotel and apartment building in downtown New Orleans named "The Strand" at 225 Baronne Street ("the Project").[3] Plaintiffs allege that they are mostly migrant workers who performed the renovation work and were not paid

---

[1] Rec. Doc. 48; Rec. Doc. 52-1 at 1.

[2] Rec. Doc. 285.

[3] Rec. Doc. 48 at 3.

minimum wages or overtime wages while working "grueling" 70-hour workweeks.[4] Plaintiffs further contend that their recorded hours were often "adjusted" to reflect shorter work periods so that Defendants Roy Anderson, Ronald Franks Construction Company, LLC ("Ronald Franks"), Coryell County Tradesmen ("CCT"), CC Labor, LLC ("CC Labor"), Paul Isaacks, Brandon Isaacks, and Brent Isaacks could pay them less.[5]

Defendants CCT and CC Labor are alleged to be two family-run construction companies owned by Defendants Paul Isaacks, Brandon Isaacks, and Brent Isaacks.[6] Defendant Roy Anderson is alleged to be one of the general contractors that employed Plaintiffs, and Ronald Franks and CCT were two of the subcontractors on the Project.[7] Defendant Travelers Casualty and Surety Company of America ("Travelers") is alleged to have contracted to pay the obligations of Roy Anderson with respect to the work done on the construction project at issue in this case.[8]

**B.    *Procedural Background***

Plaintiffs Nancy Murillo, Evelyn Mejia, Ambrocio Benito Castro, and Mechlor Acevedo filed a complaint on August 19, 2015, against Defendants CCT, CC Labor, Brandon Isaacks, Brent Isaacks, and Paul Isaacks.[9] With leave of Court, on February 18, 2016, Plaintiffs filed an amended complaint, adding additional plaintiffs and adding Ronald Franks, Roy Anderson, and Travelers

---

[4] *Id.* at 3–4.

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *Id.* at 5–6.

[8] *Id.* at 6–7.

[9] Rec. Doc. 1.

as Defendants.[10] Plaintiffs filed a second amended complaint, with leave of Court, on May 13, 2016.[11]

On July 12, 2016, Roy Anderson filed an answer to Plaintiffs' complaint and a crossclaim and third-party demand against Defendant Ronald Franks and Third-Party Defendant National American Insurance Company ("NAIC"), respectively.[12] On December 8, 2016, Roy Anderson and Travelers filed a counterclaim against Plaintiffs.[13]

On May 9, 2017, Roy Anderson filed a motion for summary judgment, which was set for submission on May 24, 2017.[14] Pursuant to this Court's Scheduling Order, all non-evidentiary pretrial motions must be filed and served in sufficient time to permit hearing thereon no later than May 24, 2017. [15] On May 10, 2017, the Clerk of Court marked Roy Anderson's motion as deficient, as Roy Anderson had not requested leave to file a pleading over the Court's page limit. On May 10, 2017, Roy Anderson filed the instant motion for summary judgment, which was originally set for submission on June 7, 2017, [16] as well as a motion for leave to file a memorandum in excess of the Court's page limit[17] and a motion to expedite so that the instant motion could be heard by the

---

[10] Rec. Doc. 19.

[11] Rec. Doc. 48.

[12] Rec. Doc. 92 at 15.

[13] Rec. Doc. 216.

[14] Rec. Doc. 285.

[15] Rec. Doc. 169 at 1.

[16] Rec. Doc. 285.

[17] Rec. Doc. 286.

Scheduling Order's May 24, 2017 deadline.[18] On May 12, 2017, the Court granted Roy Anderson's motion for leave to file a memorandum in excess of the Court's page limit and Roy Anderson's motion to expedite consideration of the instant motion for summary judgment, and set the motion for submission on May 24, 2017, at 10:00 a.m.[19] On May 16, 2017, Plaintiffs filed an opposition.[20] On May 26, 2017, with leave of Court, Roy Anderson filed a reply.[21]

## II. Parties' Arguments

### A. *Roy Anderson's Arguments in Support of the Motion for Summary Judgment*

In its motion, Roy Anderson argues that Plaintiffs cannot demonstrate that Roy Anderson was either the employer or joint employer of Plaintiffs, and therefore summary judgment dismissing Plaintiffs' FLSA claims against Roy Anderson is proper.[22] Roy Anderson argues that under the four factor "economic reality" test used to determine if an employment relationship exists for purposes of FLSA, Roy Anderson does not constitute Plaintiffs' "employer."[23]

#### a. **Power to hire and fire Plaintiffs**

First, Roy Anderson asserts that it did not have the power to either hire or fire Plaintiffs.[24] According to Roy Anderson, the three subcontracts between Roy Anderson and Ronald Franks

---

[18] Rec. Doc. 287.

[19] Rec. Docs. 288, 289.

[20] Rec. Doc. 295.

[21] Rec. Doc. 309.

[22] Rec. Doc. 285-1 at 1.

[23] *Id.* at 16–17.

[24] *Id.* at 17.

make clear that Ronald Franks was a "bona fide independent contractor," and states that Ronald Franks "has exclusive responsibility and sole charge of determining the means, methods, staffing, and procedures for performance of the Subcontract Work . . . ."[25] Roy Anderson avers that the subcontracts also state that while Ronald Franks' work "shall be performed under the general oversight and direction" of Roy Anderson, Ronald Franks was "fully responsible for and having full authority over its workforce, including hiring, firing, work assignment, staffing, and promotions."[26] Roy Anderson contends that Ronald Franks had the exclusive liability for all its employees' wages and for maintaining any employment records.[27]

Additionally, Roy Anderson points out that several Plaintiffs testified that they were hired by CCT, and not Roy Anderson, and that CCT was responsible for firing employees.[28] Roy Anderson avers that CCT personnel also admitted that Roy Anderson did not make any hiring decisions for CCT.[29] Roy Anderson further asserts that one Plaintiff testified in her deposition that he never had any communication with Roy Anderson.[30]

**b.      Supervision and control of Plaintiffs' employee work schedules or conditions of employment**

Second, Roy Anderson argues that it was not involved in the supervision, control,

---

[25] *Id.* at 8.

[26] *Id.* at 8, 17.

[27] *Id.* at 8–9.

[28] *Id.* at 17.

[29] *Id.*

[30] *Id.*

scheduling, or employment conditions of Plaintiffs.[31] Roy Anderson points out that several Plaintiffs testified in their depositions and declarations that only CCT supervised and controlled its own workers.[32] Roy Anderson avers that both Ronald Franks and CCT representatives testified that Roy Anderson did not supervise Plaintiffs.[33]

Furthermore, Roy Anderson contends that CCT directly set Plaintiffs' work schedules, and not Roy Anderson.[34] Roy Anderson asserts that it only issued a global "completion" schedule for the Project, whereas "the real question" under FLSA is who "directly set Plaintiffs' work schedule."[35] Moreover, Roy Anderson points out that a CCT representative stated in his deposition that CCT could have worked whenever it wanted on the "open access" Project, so the Project's global schedule did not dictate Plaintiffs' hours.[36] Roy Anderson also argues that it did not determine Plaintiffs' conditions of employment, as they brought their own tools and equipment to the Project and any additional material was provided by CCT.[37] According to Roy Anderson, CCT also provided the electronic badges used by Plaintiffs to clock-in on a daily basis.[38]

---

[31] *Id.* at 18.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 18–19.

[36] *Id.* at 19.

[37] *Id.*

[38] *Id.*

### c.    Determining the rate and method of payment

Third, Roy Anderson argues that it was not involved in Plaintiffs' payments at all, and that it did not determine Plaintiffs' rates of pay.[39] Roy Anderson avers that CCT determined Plaintiffs' hourly rates and issued the paychecks to Plaintiffs.[40] Roy Anderson argues that it never directly paid any Plaintiffs.[41]

Rather, Roy Anderson asserts that Ronald Franks would submit only two documents to Roy Anderson to receive their monthly payments for Ronald Franks' work on the Project.[42] According to Roy Anderson, the first document would identify the total amount Ronald Franks was owed by Roy Anderson, while the second document, a "Schedule of Values," was a line-item breakdown of all labor and material costs incurred by Ronald Franks without any attached time records or invoices related to any individual Plaintiffs.[43] Roy Anderson argues that it would only issue payment to Ronald Franks based on Ronald Franks' monthly submissions, and Roy Anderson did not issue payments directly to CCT or Plaintiffs.[44] Roy Anderson states that it only received additional documentation when Ronald Franks sought payment for authorized overtime through a written change order issued by Roy Anderson to add or deduct work to the Ronald Franks'

---

[39] *Id.*

[40] *Id.* at 19–20.

[41] *Id.* at 13.

[42] *Id.* at 9.

[43] *Id.*

[44] *Id.* at 10.

subcontracts.[45] Roy Anderson avers that the Ronald Franks' subcontracts require Ronald Franks to seek authorization for any overtime worked by Ronald Franks or anyone on Ronald Franks' behalf.[46]

### d.    Maintaining employment records

Fourth, Roy Anderson asserts that it did not maintain any employment or time records for Plaintiffs.[47] According to Roy Anderson, it did not track Plaintiffs' hours on the Project, maintain or collect any timesheets or invoices related to any individual Plaintiffs, or handle any of Ronald Franks' payroll.[48] Roy Anderson argues that while several Plaintiffs stated in their discovery responses to Defendants' joint interrogatories that Ronald Franks "regularly provided" Roy Anderson with Plaintiffs' timesheets and invoices, one Plaintiff later stated in his deposition that "Roy Anderson had no communication with me. I worked for CCT," and another Plaintiff had no knowledge of whether Roy Anderson regularly received timesheets and invoices.[49]

### e.    Joint employer of Plaintiffs

Next, Roy Anderson contend that it was not a joint employer of Plaintiffs.[50] According to Roy Anderson, under 29 C.F.R. § 791.2(b), a joint employment relationship exists in the following situations: (1) "Where there is an arrangement between the employers to share the employee's

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 20.

[48] *Id.* at 9–11.

[49] *Id.* at 20.

[50] *Id.* at 21.

services;" (2) "Where one employer is acting directly or indirectly in the interest of the other employer in relation to the employee;" or (3) "Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with another employer."[51] However, Roy Anderson argues that none of the three factors listed in 29 C.F.R. § 791.2(b) exist here.[52]

Furthermore, Roy Anderson argues that it does not qualify as a "joint employer."[53] Roy Anderson points out that courts in the Fifth Circuit have used a variety of similar standards to determine whether a party is a joint employer, but regardless of what standard this Court applies, Roy Anderson does not constitute Plaintiffs' "joint employer."[54] For example, Roy Anderson states that they do not constitute Plaintiffs' "joint employer" under the five factor test outlined by the Fifth Circuit in *Wirtz v. Lone Star Steel Co.*[55] First, Roy Anderson asserts that the Project did not take place on Roy Anderson's property.[56] Second, as discussed *supra*, Roy Anderson avers

---

[51] *Id.* at 22.

[52] *Id.* at 22–24.

[53] *Id.* at 21.

[54] *Id.* at 21–22.

[55] *Id.* (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668 (5th Cir. 1968)). According to Roy Anderson, the five factors are: (1) whether or not the employment takes place on the premises of the company; (2) how much control the company exerted over the employees; (3) whether the company has the power to fire, hire, or modify the employment conditions of the employee; (4) whether the employee performs a "specialty job" within the production line; and (5) whether the employee may refuse to work for the company or work for others. *Id.*

[56] *Id.* at 25.

that it did not exert control over Plaintiffs.[57] Third, as argued *supra*, Roy Anderson asserts that it

did not have the power to hire or fire Plaintiffs.[58] Fourth, Roy Anderson points out that Plaintiffs

were not performing a "specialty job on the projection line."[59] Fifth, Roy Anderson argues that

Plaintiffs had the ability to work for other companies, and that some Plaintiffs worked on other

construction projects during the time of the Project.[60] In sum, Roy Anderson contends that there

are no genuine issues of material fact that Roy Anderson was neither Plaintiffs' employer nor joint

employer, and therefore Plaintiffs' FLSA claims against Roy Anderson should be dismissed.

### B.  *Plaintiffs' Arguments in Opposition to the Motion for Summary Judgment*

In opposition, Plaintiffs point out that their deposition testimony and discovery responses

create a disputed issue of material fact on Roy Anderson's status as Plaintiffs' employer that

precludes summary judgment.[61] For example, Plaintiffs assert that Roy Anderson cites to the

declarations of nine Plaintiffs that were submitted with Plaintiffs' "Motion for Conditional Class

Certification" to assert that only CCT supervised Plaintiffs.[62] By contrast, Plaintiffs contend that

at least seventeen Plaintiffs stated in their discovery responses that Rudy Velez and Steven Ball,

who were Roy Anderson's employees and project foremen, were "constantly onsite inspecting

---

[57] *Id.*

[58] *Id.* at 25–26.

[59] *Id.* at 27.

[60] *Id.* at 28.

[61] Rec. Doc. 295 at 1.

[62] *Id.* at 2.

[Plaintiffs'] work."[63]

Plaintiffs also aver that several Plaintiffs stated that they were hired and/or directly supervised by Rudy Velez, and that CCT's employment files show at least one documented occasion where a CCT employee was fired because he failed to abide by the direction of Roy Anderson's employees or foremen.[64] Plaintiffs point to the declaration of Plaintiff Dwayne Smith, who stated that Rudy Velez supervised him and directed him to perform specific tasks such as sweeping, cleaning, and other related activities.[65] According to Plaintiffs, Roy Anderson was also involved in treating injured CCT employees, transporting them to their workers' compensation doctor's appointments, and coordinating their medical care "to ensure the injured employees could get back to work as quickly as possible."[66]

Plaintiffs further contend that Roy Anderson dictated the relationship between Plaintiffs and CCT by directing CCT to reclassify its workers as CCT employees.[67] Plaintiffs cite to an email from Thomas Abernathy, Roy Anderson's senior project manager, to Brent Isaacks of CCT which states: "We would like to proceed as follows: 1. Please move all employees on site over to CCT. From Friday forward we want these to be legitimate CCT employees . . . 2. By 9/19 EOB, we need all payrolls through August, 2014 for CCT only entered into the CCIP system."[68] In a subsequent

---

[63] *Id.*

[64] *Id.* at 3.

[65] *Id.*

[66] *Id.*

[67] *Id.* at 3.

[68] *Id.* at 3 n.11 (citing Rec. Doc. 295-8 at 2).

email, Abernathy informs Brent Isaacks that, "[c]onsidering the information you supplied on Friday, we have a different direction on the manhour reporting that will benefit CC Labor. 1. By 9/19 EOB, we need all payrolls through August, 2014 for CCT and for CC Labor entered into the CCIP system under CCT . . . ."[69] Brent Isaacks responds to Abernathy that he was "confused by #1 . . . are the[] employees now to remain CC Laborer employees? . . . Please help me understand the logic, thank you."[70]

In sum, Plaintiffs argue that not all elements of the "economic reality" test must be met to show that Roy Anderson was Plaintiffs' employer, and here, Plaintiffs contend, the "most critical element of the test," *i.e.* control over Plaintiffs' work, as well as Roy Anderson's ability to hire and fire Plaintiffs, are evident.[71]

**C.      *Roy Anderson's Arguments in Further Support of the Motion for Summary Judgment***

In its reply, Roy Anderson asserts that Plaintiffs do not argue that Roy Anderson is a joint employer, and that Plaintiffs' argument that Roy Anderson was Plaintiffs' employer fails.[72] First, Roy Anderson argues that its general presence on the Project and the fact that Roy Anderson would inspect Plaintiffs' work and order CCT to redo defective work is not the same as day-to-day supervision over Plaintiffs.[73] Roy Anderson contends that it is standard practice in the construction

---

[69] *Id.*

[70] *Id.*

[71] *Id.* at 4.

[72] Rec. Doc. 309 at 2.

[73] *Id.* at 2–3.

industry for the general contractor to ensure all work performed on the Project complies with the Project's owner's specifications.[74] Moreover, Roy Anderson avers that the same discovery responses that Plaintiffs point to in order to argue that Roy Anderson's employees were "constantly onsite inspecting [Plaintiffs'] work" also state that Plaintiffs were hired by CCT and supervised by CCT.[75]

Second, Roy Anderson avers that Plaintiffs "highlight tenuous evidence in their support but purposefully ignore the weight of evidence showing that [Roy Anderson] is not the employer of Plaintiffs."[76] Roy Anderson argues that Plaintiffs use "ambiguous evidence in their favor" but ignore "the weight and breadth of evidence against them."[77] For example, Roy Anderson asserts that all of the Plaintiffs who were deposed before Roy Anderson filed its motion testified that Roy Anderson did not supervise their work, hire them, or pay them.[78] Roy Anderson points out that Plaintiffs cite to five Plaintiffs who claimed in their discovery responses or declarations that they were directly supervised by Roy Anderson's personnel, but Roy Anderson contends that none of them give a specific time period for when the alleged supervision occurred or any indication of its frequency.[79] Roy Anderson asserts that "isolated incidents of supervision" is insufficient to

---

[74] *Id.* at 3.

[75] *Id.* at 2–3.

[76] *Id.* at 2, 4.

[77] *Id.* at 4.

[78] *Id.*

[79] *Id.* at 5.

establish the control necessary to make Roy Anderson an "employer" of Plaintiffs under FLSA.[80] Roy Anderson argues that Plaintiffs' emphasis on a few Plaintiffs' responses is "overshadowed" by the fact that 140 of the approximately 150 Plaintiffs stated that they were directly supervised by CCT, not Roy Anderson.[81] Roy Anderson contends that the "totality of circumstances" must be considered here, and that the "sheer weight of evidence" showing that Roy Anderson was not Plaintiffs' employer "is overwhelming."[82] Thus, Roy Anderson argues that summary judgment remains proper.[83]

Third, Roy Anderson avers that Plaintiffs misconstrue other evidence.[84] For example, Roy Anderson points out that while Roy Anderson employees did help transport an injured laborer to her physical therapy appointments, that laborer was not a Plaintiff.[85] Likewise, Roy Anderson argues that it did not dictate the relationship between CCT and its employees, but rather only told CCT to make CC Labor's employees CCT employees so they would be protected by Roy Anderson's contractor-controlled insurance program.[86] Thus, Roy Anderson asserts that neither fact is relevant to the analysis here.[87]

---

[80] *Id.*

[81] *Id.* at 6.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* at 7.

[86] *Id.*

[87] *Id.*

Additionally, Roy Anderson argues that the two Plaintiffs who claimed they were hired by Roy Anderson were wrong, and their statements are directly contradicted by the tax documents issued by CCT to them.[88] Roy Anderson further contends that it did not fire a Plaintiff, and that the evidence cited by Plaintiffs was a "CCT Work Authorization Form" signed by a CCT supervisor that stated Plaintiff Angel Lozano was terminated for "[n]ot skill enough to do trade and talking to [sic] much to the women, RAC supervisor saw him touching one of the lady's [sic] in the building."[89] According to Roy Anderson, this does not suggest Roy Anderson fired Plaintiff Angel Lozano.[90]

In conclusion, Roy Anderson asserts that the evidence cited by Plaintiffs makes clear that collective action is improper here, as "it is clear that the question of whether [Roy Anderson] is an employer would have to be individualized to each one of the Plaintiffs."[91] Thus, Roy Anderson requests that the Court decertify Plaintiffs' collective action.[92]

### III. Law and Analysis

*A.*     *Legal Standard for Motions for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[88] *Id.*

[89] *Id.* at 8.

[90] *Id.*

[91] *Id.*

[92] *Id.*

as a matter of law."[93] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[94] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[95] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[96] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[97]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[98] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence

---

[93] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[94] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[95] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[96] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[97] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[98] *Celotex*, 477 U.S. at 323.

supports his claims.[99] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[100] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[101] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[102]

## B.    *Analysis*

In its motion for summary judgment, Roy Anderson argues that Plaintiffs cannot demonstrate that Roy Anderson was Plaintiffs' "employer" or "joint employer" under the "economic reality" test, and therefore Plaintiffs' claims under FLSA against Roy Anderson should be dismissed.[103] Because the Court finds *infra* that Plaintiffs have pointed to sufficient evidence to demonstrate that Roy Anderson was Plaintiffs' "employer" for purposes of FLSA, and therefore Roy Anderson's motion for summary judgment on Plaintiffs' FLSA claim against Roy Anderson

---

[99] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[100] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[101] *Little*, 37 F.3d at 1075.

[102] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[103] Rec. Doc. 285-1 at 1.

is denied, the Court need not address Roy Anderson's additional argument that it does not constitute Plaintiffs' "joint employer."

In general, FLSA requires certain covered employers to pay their employees a minimum wage and provide overtime wages.[104] FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee,"[105] and an "employee" as "any individual employed by an employer."[106] The Supreme Court has instructed that the FLSA's definition of "employer" is to be interpreted expansively and that FLSA is to be broadly construed in favor of coverage to accomplish the goals of the statute.[107]

In the Fifth Circuit, courts apply the "economic reality" test to determine whether an employer/employee relationship exists for the purposes of FLSA.[108] To determine whether an entity is considered an "employer" under FLSA, courts must consider whether the alleged employer: "(1) possessed the power to hire and fire the employees;" (2) "supervised and controlled employee work schedules or conditions of employment;" (3) "determined the rate and method of payment;" and (4) "maintained employment records."[109] The Fifth Circuit has held that the

---

[104] *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

[105] 29 U.S.C. § 203(d).

[106] 29 U.S.C. § 203(e)(1).

[107] *See Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296 (1985).

[108] *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)); *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012).

[109] *Gray*, 673 F.3d at 355 (quoting *Williams*, 595 F.3d at 620).

"touchstone of economic reality in analyzing a possible employee/employer relationship for purposes of FLSA is dependency."[110] When more than one potential employer is at issue, the economic reality test is applied to each potential employer individually to determine if that individual or entity satisfies the test.[111] No one factor is necessarily determinative, but the absence of all factors is fatal to the inquiry of whether an employment relationship exists.[112] Whether a party is an employer for purposes of the FSLA is "essentially a question of fact."[113] The Court will now proceed to discuss each factor in turn.

### a. Power to hire and fire the employees

With regard to the first factor of whether Roy Anderson had the power to hire and fire Plaintiffs, Plaintiffs point out that at least two Plaintiffs stated in their discovery responses to Defendants' joint interrogatories that they were hired by Rudy Velez, an employee of Roy Anderson.[114] Plaintiffs also provide evidence that at least one Plaintiff was fired by CCT in part because a "[Roy Anderson] supervisor saw him touching one of the lady's working in the

---

[110] *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979).

[111] *Id.*

[112] *Gray*, 673 F.3d at 357; *Nieto,* 2016 WL 6962513, at *9; *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) ("However, a party need not establish each element in every case."); *Gil v. De Laune Drilling Serv., Ltd.*, No. 16-71, 2016 WL 5394261, at *2 (S.D. Tex. Sept. 27, 2016) (denying motion for summary judgment on the issue of employer status when at least two factors under the "economic reality" test support a finding that the defendant was a FLSA employer during the relevant time period).

[113] *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983).

[114] *See* Rec. Doc. 295 at 4; Rec. Doc. 295-4 at 2, 12.

building."[115] By contrast, Roy Anderson points out that other Plaintiffs were hired by CCT and that one Plaintiff testified that CCT was responsible for firing.[116] According to Roy Anderson, CCT issued the tax documents for the two Plaintiffs who stated they were hired by Roy Anderson.[117] Roy Anderson further contends that its subcontract with Ronald Franks provides that Ronald Franks has full authority and control over hiring and firing its workforce, and that one Plaintiff testified that he never communicated with Roy Anderson.[118]

Here, the Court finds that Plaintiffs have pointed to sufficient evidence to create a genuine dispute of material fact regarding whether Roy Anderson had the power to hire and fire Plaintiffs. Although Roy Anderson points out that some Plaintiffs were hired by CCT, this factor considers whether Roy Anderson had *the power* to hire the employees, rather than which person or entity did in fact do so. While Roy Anderson asserts that Plaintiffs' evidence is "tenuous" and that the "weight and breadth of evidence" is against Plaintiffs,[119] the Court cannot weigh evidence or make credibility determinations on a motion for summary judgment.[120] Indeed, in direct contradiction of Roy Anderson's argument, the Fifth Circuit has made clear that the fact that a movant may appear "more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or

---

[115] Rec. Doc. 295 at 4; Rec. Doc. 295-9 at 1.

[116] Rec. Doc. 285-1 at 17; Rec. Doc. 285-13 at 3.

[117] Rec. Doc. 309 at 7; Rec. Doc. 309-4 at 1–2.

[118] Rec. Doc. 285-1 at 17; Rec. Doc. 285-14 at 7.

[119] Rec. Doc. 309 at 4.

[120] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

decide factual issues."[121] Rather, the Court may only determine, "by resolving all reasonable doubts about the existence of a genuine issue of material fact against the movant, whether a material factual question exists."[122] Here, the Court concludes that Plaintiffs have produced sufficient evidence to demonstrate that material factual questions exist on the first factor.

### b. Supervise and control work schedules or conditions of employment

With regard to the second factor, Plaintiffs have pointed to evidence that Roy Anderson had the power to supervise and control Plaintiffs' work schedules or conditions of employment.[123] In particular, Plaintiffs have pointed out that several Plaintiffs asserted in their responses to Defendants' joint interrogatories that representatives from Roy Anderson supervised them.[124] For example, Plaintiff Leda Diaz stated in response to Defendants' question regarding who supervised their work and in what manner that "Roy Anderson, all the time, Rudy, Steve (el güero), ordered rework all the time after we finished a room."[125] Likewise, Plaintiff Quirino Hernandez stated that he was supervised "by Rudy and he worked for Roy Anderson," and that "Rudy from Roy Anderson would tell me what to do, when to do it. He checked all the work to make sure it was done as he told us, at times told to make corrections and do rework, he would change priorities."[126]

---

[121] *Byrd v. Roadway Exp., Inc.*, 687 F.2d 85, 87 (5th Cir. 1982).

[122] *Id.*

[123] Rec. Doc. 272 at 9.

[124] Rec. Doc. 295 at 2.

[125] Rec. Doc. 295-3 at 16.

[126] Rec. Doc. 295-4 at 4–5. *See also id.* at 9 (Plaintiff Sergio Mancia stating that he was supervised by "Rodolfo (Rudy) he worked for Roy Anderson").

Additionally, a number of other Plaintiffs responded to the Defendants' joint interrogatories that Roy Anderson representatives "were present all the time"[127] or at "various times during the day" to supervise and review their work.[128] For example, Plaintiff Lorenzo Funes asserted that "Roy Anderson was present all the time - Steve, Javier and Rudy. When we would finish a room, they would come inspect and tell CCT what needed to be reworked and which happened almost all the time."[129] Plaintiff Dwayne Smith also stated in a Declaration that he was supervised by "Rudy and Dennis[, who] worked for Roy Anderson," and that they would "tell us what floor to work on each day. They would take us up to the floor and then direct us to perform specific tasks. The tasks they directed us to perform included sweeping, cleaning, removing trash and debris, and demolition work."[130] Smith further asserted that "[t]hroughout the day, Rudy and Dennis would come check on our progress of work and advise us on what else we needed to do."[131]

Plaintiffs also point out that Roy Anderson was involved in coordinating medical care for injured CCT employees, and that Roy Anderson required all of Plaintiffs to be reclassified as CCT employees, rather than CC Labor employees, in order to receive Roy Anderson's contractor-controlled insurance program.[132] For example, Plaintiffs cite to an email from Thomas Abernathy,

---

[127] Rec. Doc. 295-3 at 26, 30, 46; *see also id.* at 35–36 ("Roy Anderson—Steve and Rudy were there every day.")

[128] *See id.* at 41.

[129] *Id.* at 20–21.

[130] Rec. Doc. 295-5 at 2.

[131] *Id.*

[132] *See* Rec. Doc. 295 at 3; Rec. Doc. 309 at 7 (Roy Anderson confirming that it "directed CCT to make CC Labor's employees CCT employees so they would be protected by the insurance program").

Roy Anderson's senior project manager, to Brent Isaacks of CCT which directs CCT to "move all employees on site over to CCT. From Friday forward we want these to be legitimate CCT employees . . . 2. By 9/19 EOB, we need all payrolls through August, 2014 <u>for CCT only</u> entered into the CCIP system."[133] In response, Brent Isaacks emailed Abernathy that he was "confused by #1 . . . are the[] employees now to remain CC Laborer employees? . . . Please help me understand the logic, thank you."[134] Additionally, Roy Anderson concedes that it determined the master completion schedule for the Project.[135] In fact, Roy Anderson attached Thomas Abernathy's deposition to its motion, in which Abernathy states that the schedule "shows a sequence of work" and that "when we entered a new floor it would not be unusual for our superintendent to say start over here framing the walls and go in this direction."[136]

Here, the Court finds that Plaintiffs have pointed to sufficient evidence to create a genuine dispute of material fact regarding whether Roy Anderson had the power to supervise and control Plaintiffs' work schedules or conditions of employment. While Roy Anderson argues that several Plaintiffs stated that they were supervised and controlled by CCT and that CCT confirmed that it supervised its own workers,[137] the Court cannot weigh evidence or make credibility determinations on a motion for summary judgment.[138] Thus, the Court finds that Plaintiffs have produced

---

[133] Rec. Doc. 295-8 at 1–2.

[134] *Id.* at 1.

[135] Rec. Doc. 285-1 at 18–19.

[136] Rec. Doc. 285-17 at 4.

[137] *See* Rec. Doc. 285-1 at 18.

[138] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

sufficient evidence to permit a reasonable fact finder to determine that this factor weighs in favor of a finding that Roy Anderson was Plaintiffs' "employer" for the purposes of FLSA.

### c.     Determine the rate and method of payment

With regard to the third factor, the Court notes that Plaintiffs did not directly address whether Roy Anderson determined the rate and method of payment to Plaintiffs. However, Roy Anderson, who bears the initial burden of showing the absence of genuine issues of material fact,[139] instead points to evidence in its motion that creates a genuine issue of material fact regarding whether it determined the rate and method of payment. For example, in Roy Anderson's motion, Roy Anderson states that Ronald Franks would submit a monthly payment application with a line-item breakdown of all labor costs incurred.[140] Moreover, Roy Anderson points out that the subcontract with Ronald Franks required Ronald Franks to seek authorization for any overtime worked by Ronald Franks or anyone on Ronald Franks' behalf.[141] Roy Anderson confirms that it received additional documentation beyond the general monthly payment applications when Ronald Franks sought payment for authorized overtime through a change order.[142] Indeed, such evidence is relevant to the ultimate disputed question of fact in this case of whether Plaintiffs' "employers" failed to pay them overtime wages in violation of FLSA. By contrast, Roy Anderson also points to evidence that CCT issued the paychecks to Plaintiffs and determined the Plaintiffs' rate of

---

[139] *Celotex*, 477 U.S. at 323.

[140] *See* Rec. Doc. 285-1 at 9.

[141] *Id.* at 10.

[142] *Id.*

pay.[143] Roy Anderson further contends that the subcontract with Ronald Franks made Ronald Franks have exclusive liability for all wages to its employees.[144]

Under Rule 56, the Court "need consider only the cited materials, but it may consider other materials in the record."[145] Here, based on the evidence cited by the parties, the Court finds that there are genuine issues of material fact regarding whether Roy Anderson determined the rate and method of payment for Plaintiffs. In particular, the Court notes that Roy Anderson's evidence appears to show that it was ultimately responsible for approving overtime pay for those who "worked on Ronald Franks' behalf," and that Plaintiffs have sufficiently asserted that they "worked on Ronald Franks' behalf" as its employees under FLSA as well.[146]

### d.  Maintain employment records

With regard to the fourth factor, Plaintiffs also did not directly address whether Roy Anderson maintained employment records for Plaintiffs. However, Roy Anderson, who bears the initial burden of showing the absence of genuine issues of material fact,[147] again points to evidence in its motion that creates a genuine issue of material fact regarding whether it maintained employment records. For example, in Roy Anderson's motion, Roy Anderson points out that several Plaintiffs stated in their discovery responses to Defendants' joint interrogatories that Roy

---

[143] *Id.* at 20.

[144] *Id.* at 8–9.

[145] Fed. R. Civ. P 56(c)(4).

[146] *See* Rec. Doc. 328 (Order denying Ronald Franks' motion for summary judgment on the issue of whether it was Plaintiffs' "employer" under FLSA).

[147] *Celotex*, 477 U.S. at 323.

Anderson was "regularly provided" with their timesheets and invoices.[148] Additionally, in their opposition memorandum, Plaintiffs attached discovery responses for other Plaintiffs who also asserted that Ronald Franks "regularly provided Roy Anderson with timesheets and invoices reflecting the hours worked by me."[149] Moreover, Roy Anderson provides the affidavit of Frank Dudenhefer, III, the Vice President of Roy Anderson, who stated that "*[o]ther than what [Roy Anderson] received from Franks* as backup for Franks' change orders or *as backup for authorized overtime in Franks's payment applications*, [Roy Anderson] did not maintain or collect any timesheets, payroll records, or other data related to the Plaintiffs . . . ."[150] By contrast, Roy Anderson points to other evidence that it did not maintain employment or time records for Plaintiffs or track their hours, and that one Plaintiff testified in her deposition that she did not know whether or not Roy Anderson received timesheets and that she just knows "about the work done over there in the building."[151]

Accordingly, based on the evidence cited by the parties,[152] the Court finds that there are genuine issues of material fact regarding whether Roy Anderson maintained some employment records for Plaintiffs. In particular, the Court notes that Plaintiffs' discovery responses allege that Roy Anderson received timesheets and invoices reflecting the Plaintiffs' hours, and Roy Anderson

---

[148] Rec. Doc. 285-1 at 20; *see* Rec. Doc. 295-3 at 17.

[149] Rec. Doc. 285-19 at 3. *See, e.g.*, Rec. Doc. 295-3 at 3, 9, 14, 19, 24 (numerous Plaintiffs all stating that Roy Anderson received timesheets and invoices reflecting the hours they worked).

[150] Rec. Doc. 285-4 at 4 (emphasis added).

[151] *See* Rec. Doc. 285-1 at 20; Rec. Doc. 285-13 at 6.

[152] Fed. R. Civ. P 56(c)(4).

appears to concede that they received "additional documentation" in support of Ronald Franks' application for overtime hours, all of which could be considered by a factfinder as evidence that Roy Anderson maintained "employment records."

Moreover, the Court notes that, even assuming that Roy Anderson is correct Plaintiffs rely on "ambiguous" or "tenuous" evidence that is insufficient to establish that each of the four factors of the "economic reality" test weigh in favor of finding that Roy Anderson is Plaintiffs' "employer" under FLSA,[153] it is not fatal to Plaintiffs' FLSA claims against Roy Anderson, as no one factor in the "economic reality" test is determinative. Rather, as noted *infra*, Plaintiffs have presented sufficient evidence to create a disputed issue of material fact on whether Roy Anderson constitutes Plaintiffs' employer under the "economic reality" test to preclude summary judgment.

### e.    Dependence on Roy Anderson

Finally, the Court notes that, as stated *supra*, the Fifth Circuit has held that the "touchstone of economic reality in analyzing a possible employee/employer relationship for purposes of FLSA is dependency."[154] Indeed, the Fifth Circuit has further held that an individual is an employer if he "independently exercised control over the work situation."[155] Here, Plaintiffs have pointed to sufficient evidence in support of their argument that Roy Anderson exercised considerable control and power over Plaintiffs' work situations, assignments, supervision, approval of overtime pay,

---

[153] *See* Rec. Doc. 309 at 2, 4.

[154] *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979).

[155] *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)),

and employment generally such that Plaintiffs could be considered dependent on Roy Anderson for purposes of the employee-employer analysis under FLSA.

In sum, the Court finds that Plaintiffs have provided sufficient evidence on the four factor "economic reality" test to show that there are genuine issues of material fact regarding whether Roy Anderson was Plaintiffs' "employer" for purposes of FLSA.[156] By contrast, Roy Anderson has not shown that all the factors of the "economic reality" test are absent here or that they each weigh against a finding of an employee-employer relationship. In other words, Roy Anderson has not shown that there are no genuine disputes of material fact that Roy Anderson is not Plaintiffs' "employer" under FLSA such that summary judgment on this issue is proper. Indeed, the Court notes that Roy Anderson directly argues several times that the "weight and breadth of evidence" is against Plaintiffs' claim that Roy Anderson is their "employer' under FLSA's broad definition of the term. However, the Court may only grant a motion for summary judgment when there is an absence of genuine disputes of material fact.[157]

Additionally, while Roy Anderson contends that "cases on similar facts show the general contractor in [Roy Anderson's] position is not an employer for FLSA purposes," the one case cited

---

[156] *Gray*, 673 F.3d at 357 (noting that not all factors are required to establish that a defendant is an employer for purposes of FLSA; *Nieto*, 2016 WL 6962513, at *9 (same); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) ("However, a party need not establish each element in every case."); *Gil v. De Laune Drilling Serv., Ltd.*, No. 16-71, 2016 WL 5394261, at *2 (S.D. Tex. Sept. 27, 2016) (denying motion for summary judgment on the issue of employer status when at least two factors under the "economic reality" test support a finding that the defendant was a FLSA employer during the relevant time period).

[157] *See, e.g.*, *Guyton v. Legacy Pressure Control*, No. 15-1075, 2017 WL 244868, at *5 (W.D. Tex. Jan. 18, 2017) (denying cross motions for summary judgment when the parties' arguments would require the court to weigh the evidence to determine whether the defendants should be considered employers under FLSA) .

by Roy Anderson is clearly distinguishable.[158] For example, in the case cited by Roy Anderson, *Gonzales v. Sterling Builders, Inc.*, a court in the District of Oregon found that summary judgment was proper when all four factors of the "economic reality" test did not support a conclusion that the defendants were plaintiffs' employers, as the plaintiffs had conceded at oral argument that the defendants: (1) did not have the power to hire or fire the plaintiffs; (2) did not determine the rate and method of payment to Plaintiffs; (3) did not maintain employment records for Plaintiffs; and (4) did not directly set the plaintiffs' work schedule.[159] By contrast, here, Plaintiffs have not conceded that any of the four factors are not met with regard to Roy Anderson, but rather have pointed to sufficient evidence to show that there are disputed issues of fact on whether an employment relationship existed between Plaintiffs and Roy Anderson. Accordingly, the Court hereby denies Roy Anderson's motion for summary judgment.

Finally, the Court notes that, in the penultimate paragraph in its reply brief filed after the Court's deadline for non-evidentiary pretrial motions,[160] Roy Anderson requests for the first time that Plaintiffs' collective action be decertified.[161] Roy Anderson did not request this relief in the underlying motion or brief the issue in its memorandum in support of the motion, and Roy Anderson provides little to no argument or case law as to why decertification is proper.[162] Roy

---

[158] Rec. Doc. 309 at 6 (citing *Gonzales v. Sterling Builders, Inc.*, No. 08-943, 2010 WL 1875620 (D. Ore. 2010)).

[159] *Gonzales*, 2010 WL 1875620, at *4–5.

[160] Rec. Doc. 169 at 1.

[161] Rec. Doc. 309 at 8.

[162] *Id.*

Anderson also does not explain how "the evidence Plaintiffs cite" makes it "clear that collective action is improper" or that the plaintiffs are not similarly situated.[163] Plaintiffs also have not responded to Roy Anderson's new request in its reply brief. Accordingly, the Court cannot determine at this time whether decertification is proper. Therefore, the Court hereby denies Roy Anderson's request to decertify Plaintiffs' collective action in its motion for summary judgment, as it was made for the first time in a reply brief filed after the Court's deadline for non-evidentiary pretrial motions and provides little to no argument or case law as to why decertification is proper.[164]

## IV. Conclusion

Based on the foregoing, the Court concludes that Plaintiffs have pointed to sufficient evidence under the "economic reality" test to show that there are genuine issues of material fact regarding whether Roy Anderson was Plaintiffs' "employer" for purposes of FLSA. By contrast, Roy Anderson has not shown that there are no genuine disputes of material fact that Roy Anderson was not Plaintiffs' "employer" under FLSA during the Project or that no reasonable fact finder could determine that an employment relationship existed between Roy Anderson and Plaintiffs.

---

[163] *Id.*

[164] *See Lamorak Ins. Co. v. Huntington Ingalls, Inc.*, No. 15-6265, 2016 WL 5678559, at *3 (E.D. La. Oct. 3, 2016) (Brown, J.) ("Federal district courts have the inherent power to enforce their scheduling orders . . . .) (citations omitted); *see also Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) ("The second question challenges the district court's ability to establish and enforce deadlines for the filing of motions and other papers. It is plain that they have, and must have this power.");*cf. United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014) ("We generally do not consider arguments made for the first time in a reply brief . . . ."); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) ("Of equal importance is the rule that the nonmovant should be given a fair opportunity to respond to a motion. This principle informs the court's practice of declining to consider arguments raised for the first time in a reply brief.").

Additionally, the Court denies Roy Anderson's request to decertify Plaintiffs' collective action, as it was made for the first time in the penultimate paragraph of its reply brief filed after the Court's deadline for non-evidentiary pretrial motions and provides little to no argument or case law as to why decertification is proper. Accordingly,

**IT IS HEREBY ORDERED** that Roy Anderson Corporation's ("Roy Anderson") "Motion for Summary Judgment"[165] is **DENIED**.

**NEW ORLEANS, LOUISIANA** this ‾29th‾ day of June, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[165] Rec. Doc. 285.