UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NANCY MURILLO, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3641** |
| **CORYELL COUNTY TRADESMEN, LLC, et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiffs, approximately 160 individuals hired to work on a construction and renovation project located at 225 Baronne Street in New Orleans, Louisiana, allege that Defendants did not pay overtime wages or minimum wages in violation of the Fair Labor Standards Act ("FLSA").[1] Before the Court is the parties' "Ex Parte Consent Motion to Dismiss with Prejudice."[2] Having considered the motion, the memorandum in support, the record, and the applicable law, the Court will grant the motion.

## I. Background

Plaintiffs Nancy Murillo, Evelyn Mejia, Ambrocio Benito Castro, and Mechlor Acevedo filed a complaint on August 19, 2015, against Defendants Coryell County Tradesmen ("CCT"), CC Labor, LLC ("CC Labor"), Brandon Isaacks, Brent Isaacks, and Paul Isaacks.[3] With leave of Court, on February 18, 2016, Plaintiffs filed an amended complaint, adding more than 150 plaintiffs and adding Ronald Franks Construction Company, LLC's ("Ronald Franks"), Roy Anderson Corporation ("Roy Anderson"), and Travelers Casualty and Surety Company of

---

[1] Rec. Doc. 48; Rec. Doc. 52-1 at 1.

[2] Rec. Doc. 357.

[3] Rec. Doc. 1.

1

America ("Travelers") as Defendants.[4] Plaintiffs filed a second amended complaint, with leave of Court, on May 13, 2016.[5] On July 12, 2016, Roy Anderson filed an answer to Plaintiffs' second amended complaint and a crossclaim and third-party demand against Defendant Ronald Franks and Third-Party Defendant National American Insurance Company ("NAIC"), respectively.[6]

On June 10, 2016, Plaintiffs filed a motion for conditional class certification pursuant to the FLSA.[7] On September 20, 2016, the Court granted the motion in part and denied in part,[8] ordering that notice be sent to "All individuals who provided labor to Coryell County Tradesmen or CC Labor or Ronald Franks Construction on the 225 Baronne Street construction project in New Orleans, Louisiana during the previous two years and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 or minimum wages pursuant to the FLSA, 29 U.S.C. § 206 and who did not receive full overtime or minimum wage compensation."[9] On October 10, 2017, the parties filed the instant motion for settlement approval.[10]

## II. Parties' Arguments

The parties contend that they have agreed to settle this matter for $283,292.76 in payments to the plaintiffs,[11] $58,944.46 in costs,[12] and $257,762.78 in attorney's fees.[13]

---

[4] Rec. Doc. 19.

[5] Rec. Doc. 48.

[6] Rec. Doc. 92 at 15.

[7] Rec. Doc. 62.

[8] Rec. Doc. 159.

[9] *Id*.

[10] Rec. Doc. 357.

[11] *Id.* at 3–7.

[12] *Id*. at 8.

[13] *Id.*

2

The parties note that Defendants litigated the case ferociously, and the settlement is a compromise of disputed claims.[14] Moreover, the parties contend that the settlement is "a tremendous result for the Plaintiffs."[15] They note that "Plaintiffs were challenged at nearly every phase of litigation," and "Defendant Roy Anderson also filed counterclaims against all Plaintiffs, exposing Plaintiffs to tens of thousands of dollars in sanctions were they to lose at trial."[16] They also note that they engaged in substantial written discovery, depositions, and motions practice before agreeing to the settlement.[17] Furthermore, the parties assert that there was no guarantee that Plaintiffs would prevail in this litigation.[18]

According to the parties, "[t]he settlement fund provides for 90% of the overtime that each Plaintiff alleges he or she was not paid" in addition to substantial costs of the litigation and attorney's fees.[19] The parties represent that the settlement amounts allocated to each Plaintiff were based on the precise amount of overtime they worked on the project and were calculated using each Plaintiff's clock-in/clock-out reports.[20] Hourly rates were determined through testimony of each Plaintiff; this rate was multiplied by 150% to yield each Plaintiff's overtime rate of pay.[21]

Additionally, the parties assert that the requested attorney's fees are reasonable.[22]

---

[14] *Id.* at 2.

[15] *Id.* at 7.

[16] *Id.* at 2.

[17] *Id.*

[18] *Id.* at 7.

[19] *Id.* at 2–3.

[20] *Id.* at 3.

[21] *Id*.

[22] *Id.* at 9.

Specifically, they note that Roberto Luis Costales and William H. Beaumont have been awarded $250 per hour in other FLSA cases, and Emily Westermeier has been awarded $200 per hour in FLSA cases.[23] Moreover, the parties assert that success in this litigation was far from certain, and the attorneys had to expend more than $30,000 before even filing the lawsuit.[24] The parties note that Mr. Costales's fees would be approximately $120,875.00, based on 483.5 hours of work at a rate of $250 per hour, Mr. Beaumont's fees would be $90,450.00, based on 361.8 hours of work at a rate of $250 per hour, and Ms. Westermeier's fees would be approximately $89,420.00, based on 447.1 hours of work at a rate of $200 per hour.[25] Based on these hourly rates, the parties contend that attorney's fees would exceed the proposed amount of $257,762.78.[26]

Finally, the parties assert that costs in this case were $58,944.46.[27] The parties provide a breakdown of the costs as follows: (1) lien filing costs, $34,727.62; (2) lien cancellation costs, $7,500.00; (3) travel costs, $1,401.28; (4) depositions, $10,321.58; (5) court and service of process, $1,130.22; (6) payroll consulting/expert, $3,263.25; and (7) notice and copying, $600.51.[28] The parties thus represent that an award of $257,762.78 in attorney's fees and $58,944.46 in costs is reasonable.[29]

In support of the motion, the parties submitted a "Joint Declaration of Plaintiffs' Counsel"[30]

---

[23] *Id.* at 9, n. 13–15.

[24] *Id.* at 9.

[25] *Id.*

[26] *Id.* at 8.

[27] *Id.*

[28] *Id.*

[29] *Id*.

[30] Rec. Doc. 357-1.

4

executed by Roberto Luis Costales and William H. Beaumont, lead attorneys for Plaintiffs.[31] Through this declaration, the attorneys verified the methods for calculating the wages owed to each plaintiff and stated that each Plaintiff has been consulted and agrees to accept the settlement.[32] The declaration also verifies the accuracy of the costs claimed and hours worked by the attorneys.[33] Finally, the declaration supports the factual allegations of the motion including extensive discovery, numerous hours spent conferring with clients, tremendous expenditure of attorney hours required to litigate this case, and additional staff required to assist with this litigation.[34]

### III. Law and Analysis

*A.     Legal Standard*

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."[35] If the settlement reflects "a reasonable compromise over issues," the court may approve it.[36] In such actions, the court "shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[37]

*B.     Analysis*

    **1.     Unpaid Overtime and Liquidated Damages**

The FLSA provides for actual damages in unpaid overtime wages, as well as an "additional

---

[31] *Id.*

[32] *Id.* at 1, 2.

[33] *Id.* at 2, 3.

[34] *Id.* at 1, 2.

[35] *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982) (citations omitted); *see also* 29 U.S.C. § 216(b).

[36] *Villegas v. Regions Bank*, No. H–11–904, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013).

[37] 29 U.S.C. § 216(b)

equal amount as liquidated damages."[38] "A district court may decline to award liquidated damages if the court finds that the employer acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA."[39]

The settlement agreement provides for payments to Plaintiffs totaling $283,292.76.[40] This amount represents 90% of unpaid overtime wages and is based on the amount of overtime each plaintiff worked.[41] The total overtime hours worked was calculated using each Plaintiff's clock-in and clock-out reports.[42] Based on each Plaintiff's testimony, the regular hourly rate was determined, which was then multiplied by 150% to yield the overtime rate.[43] Each Plaintiff's overtime hours were multiplied by the overtime rate, then reduced by 10%.[44] The result was the settlement award for each Plaintiff.[45] Although Plaintiffs' original claims include "liquidated damages," the settlement amount only "provides for 90% of the overtime that each Plaintiff alleges he or she was not paid," and "for the substantial costs of this litigation, and also attorneys' fees."[46] Thus, the settlement does not contemplate an award for liquidated damages.

The parties recognize that Plaintiffs were not guaranteed to prevail in this litigation.[47] The

---

[38] *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b)); *see also Ransom v. M. Patel Enters, Inc.*, 734 F.3d 377, 387 (5th Cir. 2013) (citing 29 U.S.C. § 216(b)).

[39] *Black*, 732 F.3d at 501 (citation and internal quotation marks omitted).

[40] Rec. Doc. 357 at 7.

[41] *Id.* at 3.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* 2–3.

[47] *Id.* at 7.

6

settlement is a fair compromise of the disputed claims.[48] Moreover, the settlement dismisses Defendants' counterclaims against Plaintiffs, which could have exposed Plaintiffs to tens of thousands of dollars in sanctions were they to lose at trial."[49] The parties also note that the litigation was defended "ferociously" and the parties engaged in substantial written discovery, depositions, and motions practice before agreeing to the settlement.[50] Finally, the declaration of Plaintiffs' attorneys provides that each Plaintiff has been consulted and has agreed to accept the proposed settlement amount.[51]

Accordingly, the Court finds that this negotiated settlement is fair[52] and constitutes "a reasonable compromise over issues."[53] Thus, the Court approves the settlement agreement for payments totaling $283,292.76 to Plaintiffs for unpaid overtime wages.

### 2. Reasonable Attorney's Fees

"Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited."[54] The burden is on the plaintiff to demonstrate the amount of attorney's fees, including any adjustment or enhancement.[55] A court abuses its discretion when it awards attorney's fees without "a reasonably specific

---

[48] *Id.*

[49] *Id.* at 2.

[50] *Id.*

[51] Rec. Doc. 357-1 at 2.

[52] *Lynn's Food Stores, Inc.,* 679 F.2d at 1353; *see also* 29 U.S.C. § 216(b).

[53] *Villegas,* 2013 WL 76719, at *2.

[54] *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 558 (2010) (internal quotations and citations omitted).

[55] *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 225 (5th Cir. 2011).

7

explanation for all aspects of a fee determination, including any award of an enhancement."[56]

Courts in the Fifth Circuit engage in a two-step process to assess attorney's fees arising under the FLSA.[57] First, a lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.[58] "[T]here is a strong presumption that the lodestar figure is reasonable."[59] However, after calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[60] The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account.[61] Such reconsideration is "impermissible double-counting."[62]

A lodestar reduction may be warranted by a plaintiff's failure to demonstrate billing judgment following settlement of a FLSA claim. In *Saizan,* the Fifth Circuit explained:

---

[56] *Perdue*, 559 U.S. at 558.

[57] Traditionally, courts have considered the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorney's fees. In *Perdue,* the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney's fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." 559 U.S. at 550–551. Since *Perdue*, however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in FLSA attorney's fee cases. *See, e.g., Ransom,* 734 F.3d at 388; *Black,* 732 F.3d at 502; *J & J Sports Prods., Ins. V. Evolution Entm't Grp., LLC,* No. 13-5178, 2014 WL 6065601, at *4 (E.D. La. Nov. 12, 2014)(Morgan, J.). Accordingly, this Court does the same. *See Ahmed v. Bros. Food Mart, et al.*, No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014)(Brown, J.).

[58] *Perdue,* 559 U.S. at 546.

[59] *Id.* at 553–54.

[60] *Black,* 732 F.3d at 502 (citing *Johnson,* 488 F.2d at 717–19). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[61] *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted).

[62] *Id.*

8

> [p]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgement.[63]

The parties submit that a calculation of attorney's fees under the lodestar method would exceed $300,745.00.[64] This was calculated by multiplying the number of hours worked by Mr. Costales and Mr. Beaumont, 483.5 and 361.8, respectively, by an hourly rate of $250 and the number of hours worked by Ms. Westermeier, 447.1, by an hourly rate of $200.[65] The parties contend that Mr. Costales, Mr. Beaumont, and Ms. Westermeier have been awarded such hourly rates in other FLSA collective actions.[66] Yet, in this case, the attorney's fee award of $257,762.78 for 483.5 hours worked by Mr. Costales, 361.8 hours worked by Mr. Beaumont, and 447.1 hours worked by Ms. Westermeier is less than the lodestar amount and yields a lower hourly rate than that contemplated in calculating the lodestar amount.

Although Plaintiffs do not point to specific evidence of "billing judgment,"[67] the Court notes that the proposed attorney's fee award is approximately $43,000 less than the lodestar amount. Plaintiffs' counsel also asserts that they will expend an additional 20 hours in drafting and filing lien cancellations, distributing the settlement funds, and drafting and executing

---

[63] *Id.* at 799.

[64] Rec. Doc. 357 at 8.

[65] *Id.* at 9. ($250 X 483.5) + ($250 X 361.8) + ($200 X 447.1) = $300,745.00.

[66] *Id.* at 9, n. 13, n. 14, n. 15.

[67] *See Saizan,* 448 F.3d at 800.

9

disengagement paperwork with each Plaintiff.[68] Thus, it appears that the attorney's fees award contemplated by the parties reflects billing judgment.

Moreover, application of the *Johnson*[69] factors to the facts of this case leads to the conclusion that the attorney's fees proposed are reasonable and do not merit a further reduction. The parties note that it is questionable how many other attorneys would have taken this case on a contingency basis considering that the majority of Plaintiffs are migrant workers whose immigration status is unknown or dubious, making litigation of this matter speculative.[70] Moreover, the breakdown of hours indicates that the Plaintiffs' attorneys spent more than 1292 hours litigating this matter.[71] Plaintiffs' attorneys took the leadership role in designing the class-wide discovery mechanism and the trial plan.[72] The parties agree that the settlement is a "tremendous result for the Plaintiffs" as the theories against the Defendants were speculative and trial would have required Plaintiffs to defend counterclaims.[73] Plaintiffs' counsel also note that they faced tremendous administrative burdens in bringing the case, as meeting and conferring with plaintiffs before instituting litigation took nearly three weeks.[74] Extensive discovery was had including written discovery responses for more than 160 Plaintiffs[75] and eighteen depositions,

---

[68] Rec. Doc. 357 at 8, n. 12.

[69] *Johnson*, 488 F.2d at 717–19.

[70] Rec. Doc. 357 at 9.

[71] *Id.*

[72] *Id.*

[73] *Id.* at 7.

[74] *Id.* at 2.

[75] *Id.*

some occurring in Savannah, Tennessee.[76]

Following the dictates of the Fifth Circuit, the Court presumes that the lodestar amount is reasonable[77] and notes that the amount proposed as attorney's fees, $257,762.78, is less than the lodestar amount. Having considered the *Johnson* factors, the Court finds the proposed attorney's fees to be reasonable and declines to decrease the attorney's fees further.

**3.     Costs**

Finally, the parties assert that costs in this matter total $58,944.46[78] and provide a breakdown of the costs as follows: (1) lien filing costs, $34,727.62; (2) lien cancellation costs, $7,500.00; (3) travel costs, $1,401.28; (4) depositions, $10,321.58; (5) court and service of process, $1,130.22; (6) payroll consulting/expert, $3,263.25; and (7) notice and copying, $600.51.[79]

In an action against an employer for unpaid minimum wages or unpaid overtime wages, the Court "shall . . . allow . . . costs of the action."[80] There being no opposition to the costs claimed by Plaintiffs, the Court approves the award for costs.

## IV. Conclusion

For the reasons stated above, the Court finds that the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute. Therefore, the Court approves the settlement. Accordingly,

---

[76] *Id.*

[77] *See Perdue,* 559 U.S. at 553-54.

[78] Rec. Doc. 357 at 8.

[79] *Id.*

[80] 29 U.S.C. § 216(b)

11

**IT IS HEREBY ORDERED** that the parties' "Ex Parte Consent Motion to Dismiss with Prejudice"[81] is **GRANTED** and the settlement of this lawsuit is hereby approved.

**NEW ORLEANS, LOUISIANA**, this  4th  day of December, 2017.

*[signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[81] Rec. Doc. 357.